# EXHIBIT 3

# ASBURY CARBONS, INC.

# EMPLOYEE STOCK OWNERSHIP TRUST AGREEMENT

## AMENDED AND RESTATED

## EFFECTIVE AS OF JULY 1, 2022

*Prepared by: Stevens & Lee, P.C.*

# TABLE OF CONTENTS


BACKGROUND ..... 1

ARTICLE I - THE TRUST ..... 1
- 1.1 Name ..... 1
- 1.2 The Trust Fund ..... 1
- 1.3 Trustee to Maintain Trust Fund ..... 1
- 1.4 Terms of Plan Incorporated ..... 1
- 1.5 Exclusive Benefit ..... 1

ARTICLE II - INVESTMENT OF TRUST FUND AND ADMINISTRATIVE POWERS OF THE TRUSTEE ..... 2
- 2.1 Investment Policy of Trust ..... 2
- 2.2 Investment in Collective Funds ..... 2
- 2.3 Specific Powers of Trustee ..... 2
- 2.4 Authority of Special Fiduciary ..... 4
- 2.5 Trustee Procedures ..... 4
- 2.6 Allocation and Delegation of Trustee Responsibilities ..... 5

ARTICLE III - COMPENSATION AND INDEMNIFICATION OF TRUSTEE AND PAYMENT OF EXPENSES AND TAXES ..... 5
- 3.1 Compensation of Trustee ..... 5
- 3.2 Indemnification ..... 5
- 3.3 Expenses ..... 6
- 3.4 Taxes ..... 6

ARTICLE IV - ACCOUNTING AND VALUATION ..... 6
- 4.1 Books and Records ..... 6
- 4.2 Annual Accounting ..... 6
- 4.3 Fair Market Value of Company Stock ..... 7

ARTICLE V - INSTRUCTIONS FROM THE PLAN ADMINISTRATOR ..... 7
- 5.1 Identity of Plan Administrator ..... 7
- 5.2 Instructions of Plan Administrator ..... 7
- 5.3 Reliance on Instructions ..... 7
- 5.4 Effect of Plan Termination ..... 7

ARTICLE VI - REMOVAL, RESIGNATION, AND APPOINTMENT OF TRUSTEES ..... 7

ARTICLE VII - MISCELLANEOUS ..... 8
- 7.1 Amendment ..... 8
- 7.2 Bond Not Required ..... 8
- 7.3 Trustee Not Responsible for Trust Obligations ..... 8
- 7.4 Trustee to File Required Reports ..... 8
- 7.5 Trustee May Act For Trust ..... 8
- 7.6 Successors ..... 8
- 7.7 Governing Law ..... 8

ARTICLE VIII - ACCEPTANCE ..... 9

# AMENDED AND RESTATED

# ASBURY CARBONS, INC.
# EMPLOYEE STOCK OWNERSHIP TRUST AGREEMENT

This Trust Agreement ("Agreement"), effective as of July 1, 2022, is entered into by and between Asbury Carbons, Inc., a Delaware corporation (the "Company"), and Neil M. Brozen, acting solely in his fiduciary capacity as trustee (hereinafter referred to as the "Trustee").

## BACKGROUND

**WHEREAS**, the Company has established an employee stock ownership plan for the benefit of the Company's employees, known as the Asbury Carbons, Inc. Employee Stock Ownership Plan (the "**Plan**"), and a trust under the Plan, known as the Asbury Carbons, Inc. Employee Stock Ownership Trust (the "**Trust**"), effective July 1, 1984;

**WHEREAS**, this Agreement amends and restates the prior Trust Agreement in its entirety.

**NOW, THEREFORE**, the Company and the Trustee hereby agree as follows:

## ARTICLE I - THE TRUST

**1.1** **Name**. The Trust continued by this Agreement shall be the "Asbury Carbons, Inc. Employee Stock Ownership Trust." Neil M. Brozen is the trustee of the Trust, and shall serve as Trustee until removal or resignation in accordance with Article VI hereof.

**1.2** **The Trust Fund**. The Trustee agrees accept contributions from the Company from time to time in accordance with the terms of the Plan. The corpus of the trust and all such contributions, together with income thereon and increments thereto, shall constitute the "Trust Fund."

**1.3** **Trustee to Maintain Trust Fund**. It shall be the Trustee's duty to hold and invest the Trust Fund in accordance with the terms of this Agreement.

**1.4** **Terms of Plan Incorporated**. The terms of the Plan are incorporated herein by reference, and this Agreement shall be interpreted consistently with the Plan. All words and phrases defined in the Plan shall have the same meaning when used in this Agreement.

**1.5** **Exclusive Benefit**. In no event shall any part of the principal or income of the Trust Fund be used for, or diverted to, purposes other than for the exclusive benefit of Participants and their Beneficiaries prior to the satisfaction of all liabilities under the Plan.

## ARTICLE II - INVESTMENT OF TRUST FUND AND ADMINISTRATIVE POWERS OF THE TRUSTEE

**2.1** **Investment Policy of Trust**.

(a) The investment policy of the Trust shall be primarily to invest in and hold Company Stock for the exclusive benefit of Participants and their Beneficiaries. Except to the extent that a Special Fiduciary shall have been appointed with the power to direct the acquisition or disposition of Company Stock, the Trustee shall have full and complete investment authority and responsibility with respect to the purchase, retention, sale and pledge of Company Stock. The Trustee shall have the authority to contract or otherwise enter into transactions for the purpose of acquiring or selling Company Stock, including transactions with the Company or any Company shareholder, and to borrow money from any lender (including the Company) to finance the acquisition of Company Stock, giving its Note as Trustee, with such reasonable interest and security for the loan as may be appropriate or necessary (provided that such borrowing complies with the Plan). The Trustee may invest and hold up to 100% of the Trust Assets in Company Stock. The Trustee shall invest any balance of the Trust Fund not used to purchase Company Stock in such investments and other property as the Trustee shall deem advisable.

(b) All purchases and sales of Company Stock shall be made at fair market value as determined in good faith by the Trustee or Special Fiduciary. Any purchases or sales of Company Stock that are not readily tradable on an established securities exchange shall be made with the advice of an Independent Appraiser and in accordance with any applicable requirements of the Employee Retirement Income Security Act of 1974, as amended (“ERISA”).

**2.2** **Investment in Collective Funds**. Unless directed otherwise by the Plan Administrator as provided in Section 5.2, the Trustee may from time to time temporarily transfer any assets of the Trust Fund to, or withdraw the same from, any pooled investment fund or group or collective trusts maintained by a bank or trust company (which may be the Trustee or an affiliate of the Trustee) supervised by a state or federal agency, which fund has been determined by the Internal Revenue Service to be a qualified trust or fund exempt from federal income tax under Section 501 (a) of the Internal Revenue Code of 1986, as amended (the “Code”), and which has been established to permit separate pension and profit sharing trusts qualified under Section 401(a) of the Code to pool some or all of their funds for investment purposes. To the extent the Trust Fund is invested in such a pooled fund or group or collective trust, the terms of the instrument establishing such pooled fund or group or collective trust are made a part of this Agreement as fully as if set forth at length herein. The commingling of assets of this Trust Fund with assets or other qualified participating trust in such pooled funds or group or collective trust is specifically authorized.

**2.3** **Specific Powers of Trustee**. In addition to and not by way of limitation upon the fiduciary powers granted to it by law, the Trustee shall have the following specific powers, subject to the limitations set forth in Section 2.1:

(a) to receive, hold, manage, invest and reinvest the money or other property that constitutes the Trust Fund, without distinction between principal and income;

(b) to hold funds uninvested temporarily without liability for interest thereon, and to deposit funds in one or more savings or similar accounts with any banks and savings and loan associations, provided that such accounts are insured by an instrumentality of the federal government;

(c) to invest or reinvest the whole or any portion of the money or other property that constitutes the Trust Fund in Company Stock, money instruments guaranteed by the federal government, and such other investments as the Trustee may deem to be for the best interests of the Trust Fund, consistent with the purposes and terms of the Plan and Trust, and regardless of whether any such investment or property is:

(1) authorized by law regarding the investment of trust funds;

(2) of a wasting asset nature;

(3) temporarily non-income producing; or

(4) within or outside of the State of Delaware or the United States;

(d) to sell, transfer, convey, exchange or otherwise dispose of any investment or property, real or personal, for cash, evidences of indebtedness, or other investments or properties, in such manner and upon such terms and conditions as the Trustee shall deem advisable, and no person dealing with the Trustee shall be under any duty to inquire as to the validity, expedience, or propriety of any such sale or as to the application of the purchase money paid to the Trustee;

(e) to hold any investment or property in the name of the Trustee, with or without the designation of any fiduciary capacity, or in the name of a nominee, or unregistered, or in such other form that title may pass by delivery; provided however, that the Trustee's records always shall show that such investment or property belongs to the Trust and the Trustee shall not be relieved hereby of its responsibility to maintain safe custody of the Trust Fund;

(f) to extend the time for payment of, to modify, to renew, or to release security from any mortgage, note or other evidence of indebtedness, or to take advantage of or waive any default;

(g) to abandon any property, real or personal that the Trustee considers to be worthless or not of sufficient value to warrant its keeping or protecting; to abstain from the payment of taxes, water, rents, assessments, repairs, maintenance, and upkeep of any such property; to permit any such property to be lost by tax sale or other proceedings, and to convey any such property for a nominal consideration or without consideration;

(h) to employ and compensate agents, investment counsel, custodians, attorneys, valuation consultants, and accountants and to pay any and all expenses incurred in connection with the exercise of any power, right, authority or discretion granted herein;

(i) to employ and consult with any legal counsel, who also may be counsel to the Company, with respect to the meaning or construction of this Trust Agreement, the extent of the Trustee's obligations and duties hereunder, and whether the Trustee should take or decline to take a particular action hereunder, and the Trustee shall be fully protected with respect to any action taken or omitted in good faith pursuant to such advice;

(j) to defend any action or proceeding instituted against the Trust Fund, to institute any action on behalf of the Trust Fund, and to compromise or submit to arbitration any dispute concerning the Trust Fund;

(k) to make, execute, acknowledge and deliver any and all documents of transfer and conveyance and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted;

(l) to vote in person or by proxy all stocks, bonds and other securities held in the Trust; provided that all Company Stock shall be voted in accordance with Section 11.7 of the Plan; and

(m) generally, with respect to all cash, stocks, securities and other property, both real and personal, received or held in the Trust Fund, to exercise the same rights and powers as are or may be lawfully exercised by persons owning such cash, stocks, securities and other property in their own right, and to take any and all other actions, whether or not expressly authorized, that the Trustee may deem necessary or proper for the protection of the Trust Fund.

**2.4 Authority of Special Fiduciary**. Notwithstanding any provisions of this Agreement to the contrary, to the extent a Special Fiduciary has been appointed under the Plan to direct the Trustee with respect to a transaction involving the acquisition or disposition of Company Stock, the Trustee shall follow the proper directions of such Special Fiduciary and in connection therewith the Trustee shall be subject to and governed by the requirements of ERISA Section 403(a) and the regulations promulgated thereunder, applicable to "directed trustee" to the extent it follows the directions of the Special Fiduciary that the Trustee has determined are proper, made in accordance with the terms of the Plan and which are not contrary to ERISA.

**2.5 Trustee Procedures**. If more than one person is serving as Trustee, the Trustees shall hold meetings upon such notice, at such place or places and at such time or times as they may from time to time determine, and a majority of Trustees shall constitute a quorum. The decision of the Trustees at any meeting at which a quorum is present shall be made by a majority vote of the members present. The action of a majority of the Trustees expressed in writing without a meeting shall constitute the action of the Trustees and shall have the same effect for all

purposes as if assented to by all Trustees. No bond or other security shall be required of any Trustee in such capacity in any jurisdiction unless otherwise required by law.

Notwithstanding any other provision to the contrary, any individual serving as a Trustee who is selling Company Stock to the Plan or purchasing Company Stock from the Plan pursuant to Section 2.1(a) hereof shall abstain from voting and not be counted for purposes of establishing a majority vote in any vote of the Trustees on any such matter. Resolutions or actions by the Trustees on any matter involving such a purchase or sale shall be by the vote of the majority of the Trustees who do not abstain.

All findings, determinations and decisions of the Trustee or Trustees shall be reflected in written minutes of a meeting or otherwise reduced to writing.

**2.6 Allocation and Delegation of Trustee Responsibilities**.

(a) Pursuant to Section 405(c) of ERISA, if more than one Trustee is serving, the Trustees may allocate their duties (other than Trustee responsibilities) in any manner they deem appropriate, by a written instrument signed by all Trustees. A copy of any such instrument shall be maintained with the Plan records. In the event the Trustees should so allocate their duties, an individual shall be liable only for those duties specifically allocated to it, him or her under the instrument, and not for those allocated to any other person.

(b) The Trustee may delegate to any person or agent the responsibility to perform any act (other than Trustee responsibilities), including matters involving the exercise of discretion, provided that such delegation shall be subject to revocation at any time at the discretion of the Trustee. A person exercising administrative responsibilities delegated by the Trustee shall be subject to removal at any time, and may resign by delivering written notice to the Trustee. For purposes of this Section, Trustee responsibility means any responsibility provided in this Agreement to manage or control the assets of the Plan, other than the power of a named fiduciary to appoint an investment manager in accordance with Section 402(c)(3) of ERISA.

## ARTICLE III - COMPENSATION AND INDEMNIFICATION OF TRUSTEE AND PAYMENT OF EXPENSES AND TAXES

**3.1 Compensation of Trustee**. The Trustee shall receive as compensation and as reimbursement for expenses such amounts as shall be agreed upon from time to time between the Trustee and the Board of Directors of the Company. However, in no event shall any compensation be paid from the Trust Fund to an individual Trustee who receives compensation as an employee of the Company.

**3.2 Indemnification**. Unless a written agreement between the Trustee and the Company provides for indemnification other than as set forth in this Agreement, the Trustee shall be indemnified by the Company to the extent permitted by law against any loss, cost,

expense or other damage, including attorneys' fees (collectively a "Loss") actually and necessarily incurred or paid by the Trustee in connection with the defense of any action, suit or proceeding in any way relating to or arising from the Plan to which the Trustee may be made a party by reason of being or having been a Trustee, or by reason of any action or omission or alleged action or omission in such capacity, and against any amount or amounts that may be paid by the Trustee (other than to the Company) in reasonable settlement of any such action, suit or proceeding, where it is in the interest of the Company that such settlement be made; provided, however, that the forgoing indemnification provisions shall not apply to the extent that any Loss is determined by a court of competent jurisdiction, in a final judgment from which no appeal can be taken, to have resulted from the Trustee's bad faith, fraud, willful or wanton misconduct from any conduct of the Trustee that is a material and substantial departure from prevailing standards of ordinary care, or from violation or breach of any fiduciary duty imposed on the Trustee under ERISA. Any Trustee who receives an advance of costs or expenses from the Company under this provision must make arrangements reasonably satisfactory to the Company to reimburse the Company if it is finally determined that the Trustee was not entitled to indemnification hereunder. The right of indemnification herein provided shall not be exclusive of other rights to which any Trustee may now or hereafter be entitled, shall continue as to a person who has ceased to be a Trustee, and shall inure to the benefit of the heirs, executors and administrators of a Trustee.

**3.3** **Expenses**. All expenses of administering this Trust and the Plan, whether incurred by the Trustee or the Plan Administrator, except for indemnification advances or payments under Section 3.2 above, shall be paid by the Trustee from the Trust Fund to the extent such expenses shall not have been paid by the Company.

**3.4** **Taxes**. All taxes of any kind that may be levied or assessed upon the Trust Fund, its income or assets, shall be paid from the Trust Fund, but the Trustee shall not be obliged to pay such tax so long as the Trustee shall contest the validity of such levy or assessment in good faith and with the advice of counsel.

## ARTICLE IV - ACCOUNTING AND VALUATION

**4.1** **Books and Records**. The Trustee shall maintain accurate and detailed records and accounts of all investments, receipts, disbursements and other transactions of the Trustee with respect to the Trust Fund, and all accounts, books and records relating thereto shall be open at all reasonable times to inspection and audit by the Company or the Plan Administrator.

**4.2** **Annual Accounting**. The Trustee shall render to the Company from time to time, but at least annually, an account of the Trustee's transactions. The Company may approve such account by an instrument in writing delivered to the Trustee. In the absence of the filing in writing with the Trustee by the Company of exceptions or objections to any such account within 60 days after it is rendered, the Company shall be deemed to have approved such account.

**4.3 Fair Market Value of Company Stock**. As of the last day of each Plan Year, the Trustee shall determine the current fair market value of all Company Stock held in the Trust Fund in accordance with Section 5.2 of the Plan. The Trustee shall employ an Independent Appraiser to determine the value of any Company Stock held in the Trust that is not readily tradable on an established securities exchange, and shall report such fair market value to the Plan Administrator.

## ARTICLE V - INSTRUCTIONS FROM THE PLAN ADMINISTRATOR

**5.1 Identity of Plan Administrator**. From time to time the Company shall certify to the Trustee in writing the names of the person or persons serving as the Plan Administrator, and shall furnish to the Trustee specimen signatures of any such persons.

**5.2 Instructions of Plan Administrator**.

The Trustee shall pay such sums to such persons and at such times as shall be set forth in a certificate of instructions given to the Trustee by the Plan Administrator.

**5.3 Reliance on Instructions**. The Trustee shall be fully protected in taking any action based upon a certificate signed by the Plan Administrator or by any person authorized by the Plan Administrator to act on its behalf, and shall have no power, authority, or duty to interpret the Plan or to inquire into the decisions or determinations of the Plan Administrator, or to question the instructions given by the Plan Administrator.

**5.4 Effect of Plan Termination**. Upon termination of the Plan, the Trustee shall continue to disburse funds in accordance with the directions of the Plan Administrator.

## ARTICLE VI - REMOVAL, RESIGNATION, AND APPOINTMENT OF TRUSTEES

The Company may at any time, by action of its Board of Directors, remove any person serving as a Trustee hereunder by giving to such person written notice of removal and, if applicable, the name and address of the successor Trustee. Any person serving as a Trustee hereunder may resign at any time by giving written notice to the Board of Directors of the Company. Any such removal or resignation shall take effect 30 days after such written notice has been given by the Trustee or by the Company, as the case may be. Within those 30 days, the removed or resigning Trustee shall transfer, pay over and deliver any portion of the Trust Fund in the Trustee's possession or control (less an appropriate reserve for any unpaid fees and expenses) and all records pertaining thereto to the remaining Trustee(s) or, if the removed or resigning Trustee was serving as sole Trustee, the successor Trustee or Trustees appointed by the Company. If the Company fails to appoint a successor Trustee within ten (10) days of the receipt by the receiving party of notice of removal or resignation of the Trustee, then the CEO of the Company shall by the terms of this Trust Agreement be appointed to serve as successor Trustee, and the removed or resigning Trustee shall be entitled to treat the CEO as the successor Trustee until such time as it notified, in writing, by the Company, that another successor Trustee has

been duly appointed. Thereafter, the removed or resigning Trustee shall have no liability for the Trust Fund or for its administration by the remaining Trustee(s) or the successor Trustee, but shall render an accounting to the Company of the Trustee's transactions through the date on which the Trustee's service shall have terminated, in the manner described in Section 4.2.

## ARTICLE VII - MISCELLANEOUS

**7.1** **Amendment**. This Trust Agreement may be amended from time to time by an instrument in writing executed by the Company, provided, however, that any amendment increasing the powers or duties of the Trustee must be approved by the Trustee, and provided, further, that no amendment may divert any portion of the Trust Fund to purposes other than the exclusive benefit of the Participants and their Beneficiaries. Any amendment shall apply to the Trust Fund as constituted at the time of the amendment as well as to that portion of the Trust Fund that is acquired subsequent to the date of the amendment.

**7.2** **Bond Not Required**. In the exercise of the Trustee's powers and the performance of the Trustee's duties hereunder, the Trustee shall act in good faith and in accordance with the applicable requirements of ERISA. Except as may be otherwise required by ERISA, the Trustee shall not be required to furnish any bond in any jurisdiction and, if a bond is required despite this provision, no surety shall be required on it.

**7.3** **Trustee Not Responsible for Trust Obligations**. The Trustee shall be under no duty to enforce the payment of any contributions and shall not be responsible for the adequacy of the Trust Fund to meet and discharge any obligations to purchase Company Stock, to make benefit payments or to satisfy any other liabilities under the Plan.

**7.4** **Trustee to File Required Reports**. The Trustee shall file any report which they are required by law to file with any governmental authority with respect to this Trust, and the Plan Administrator shall furnish to the Trustee whatever information is necessary to prepare a report.

**7.5** **Trustee May Act For Trust**. Persons dealing with the Trustee shall be under no obligation to inquire concerning the validity of anything the Trustee purports to do, nor need any person see to the proper application of any money paid or any property transferred upon the order of the Trustee or to inquire into the Trustee's authority as to any transaction.

**7.6** **Successors**. This Trust Agreement shall apply to any person(s) appointed to succeed any person(s) appointed as the Trustee; and any references herein to the Trustee shall be deemed to include any individuals or corporations, or any combination thereof at any time acting as a Trustee hereunder.

**7.7** **Governing Law**. This Trust Agreement shall be interpreted in accordance with the laws of the State of Delaware to the extent those laws are not superseded or preempted by ERISA.

## ARTICLE VIII - ACCEPTANCE

The Trustee hereby accepts this Trust and agrees to hold the current assets, and all additions and accretions thereto, subject to all the terms and conditions of the Plan and this Agreement. In the event that any provision of this Agreement shall be held illegal or invalid for any reason, the illegality or invalidity thereof shall not affect the remaining provisions of this Agreement, but shall be fully severable, and the Agreement shall be construed and enforced as if the illegal or invalid provision had never been included herein.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the __________ day of ______________________, 2022.

**Asbury Carbons, Inc.**

By: ______________________________________

Printed name: ___________________________

Title: ________________________________

**TRUSTEE**

Asbury Carbons, Inc. Employee Stock Ownership Trust

By: **Neil M. Brozen**, solely as trustee of the Asbury Carbons, Inc. Employee Stock Ownership Trust and not in his individual or corporate capacity

______________________________________