# EXHIBIT 4

**FIDUCIARY SERVICES AGREEMENT**

**BY AND BETWEEN**

**NEIL M. BROZEN,**
**AN INDIVIDUAL**

**AND**

**ASBURY CARBONS, INC.,**
**A DELAWARE CORPORATION**

**AND**

**Ventura ESOP Fiduciary Services, LLC,**
**A Minnesota Corporation**

**TABLE OF CONTENTS**

ARTICLE I. APPOINTMENT; SCOPE OF SERVICES. .... 1
Section 1.1. Appointment as Fiduciary .... 1
Section 1.2. Scope of Services; Limited Fiduciary Status .... 2
Section 1.3. Retention of Independent Appraiser .... 2

ARTICLE II. COMPENSATION. .... 2
Section 2.1. Professional Fees .... 2
Section 2.2. Professional Fees for Unscheduled Services .... 2
Section 2.3. Expenses and Advances .... 3
Section 2.4. Payments from Trust; Deficiency Amounts .... 3

ARTICLE III. REPRESENTATIONS AND WARRANTIES OF THE COMPANY. .... 3
Section 3.1. Status .... 3
Section 3.2. Power and Authority .... 3
Section 3.3. Enforceability .... 3
Section 3.4. No Violation; Consents and Approvals .... 4
Section 3.5. Litigation .... 4
Section 3.6. Fiduciary Liability Insurance Coverage .... 4
Section 3.7. No Other Representations or Warranties; Non-Reliance .... 4

ARTICLE IV. REPRESENTATIONS AND WARRANTIES OF BROZEN. .... 5
Section 4.1. Capacity .... 5
Section 4.2. Power and Authority .... 5
Section 4.3. Enforceability .... 5
Section 4.4. No Violation; Consents and Approvals .... 5
Section 4.5. Litigation .... 5
Section 4.6. No Other Representations or Warranties; Non-Reliance .... 5

ARTICLE V. COVENANTS OF THE COMPANY. .... 5
Section 5.1. Discharge of Duties .... 5
Section 5.2. Compliance with Laws .... 6
Section 5.3. Information and Documents; Management Personnel .... 6
Section 5.4. Full Disclosure .... 6
Section 5.5. Financial Projections and Forecasts .... 6
Section 5.6. Notification of Claims and Potential Claims .... 6
Section 5.7. Fiduciary Liability Insurance Coverage .... 7
Section 5.8. Favorable Determination Letter .... 7
Section 5.9. Certain Corporate Events .... 7
Section 5.10. Access to Information .... 8

ARTICLE VI. COVENANTS OF BROZEN. .... 8
Section 6.1. Access to Information .... 8
Section 6.2. Confidentiality .... 8
Section 6.3. Books and Records; Trust Assets .... 9

ARTICLE VII. INDEMNIFICATION AND CONTRIBUTION. .... 9
Section 7.1. Survival .... 9
Section 7.2. Indemnification Provisions for the Benefit of the Indemnified Persons .... 9

Section 7.3. Contribution Provisions for the Benefit of the Indemnified Persons ................10
Section 7.4. Indemnification Procedures ................10
Section 7.5. Advancement of Expenses; Undertaking to Repay ................12
Section 7.6. Partial Indemnification ................13
Section 7.7. Indemnification Payments ................13
Section 7.8. Losses Net of Fiduciary Liability Insurance Recovery ................13
Section 7.9. Special Definitions ................13

ARTICLE VIII. FIDUCIARY STATUS; RESIGNATION AND REMOVAL. ................ 14
Section 8.1. Fiduciary Status ................14
Section 8.2. Resignation ................14
Section 8.3. Removal ................14
Section 8.4. Default Successor Trustee ................14

ARTICLE IX. MISCELLANEOUS. ................ 15
Section 9.1. Notice ................15
Section 9.2. Governing Law ................16
Section 9.3. Severability ................16
Section 9.4. Entire Agreement ................16
Section 9.5. Cumulative Remedies ................17
Section 9.6. Equitable Remedies ................17
Section 9.7. Successors and Assigns ................17
Section 9.8. Assignment and Delegation ................17
Section 9.9. Amendment or Modification ................17
Section 9.10. Waiver ................18
Section 9.11. Third-Party Beneficiaries ................18
Section 9.12. Interpretation ................18
Section 9.13. Counterparts and Electronic Signatures ................18
Section 9.14. Service of Process ................19
Section 9.15. Mandatory Choice of Forum ................19
Section 9.16. Waiver of Jury Trial ................19
Section 9.17. Representation by Independent Legal Counsel ................19

**SCHEDULE**

Schedule 1 Scope of Services

# FIDUCIARY SERVICES AGREEMENT

**THIS FIDUCIARY SERVICES AGREEMENT** (this "**Agreement**") is made and entered into as of the 13 day of December, 2021 (the "**Effective Date**"), by and between NEIL M. BROZEN ("BROZEN"), an individual resident of the State of Minnesota (the "**Special Fiduciary**"), Ventura ESOP Fiduciary Services, LLC, a Minnesota limited liability company ("Ventura") and ASBURY CARBONS, INC., a Delaware corporation (the "**Company**").

## RECITALS

**WHEREAS**, the Company sponsors the Asbury Carbons Employee Stock Ownership Trust (the "**Trust**"), which forms a part of the Asbury Carbons Employee Stock Ownership Plan (the "**Plan**," and together with the Trust, the "**ESOP**"), for the benefit of its eligible employees;

**WHEREAS**, the Board desires to appoint Brozen to serve as Special Fiduciary of the Trust and to delegate to him certain fiduciary responsibilities as more fully described in this Agreement (the "**Appointment**");

**WHEREAS**, the Board acknowledges its status as a fiduciary under Section 3(21)(A) of the Employee Retirement Income Security Act of 1974, as amended, and the labor regulations promulgated thereunder ("**ERISA**") insofar as it is responsible for prudently qualifying, selecting and monitoring other fiduciaries of the ESOP; and

**WHEREAS**, Brozen desires to accept the Appointment, subject to the terms and conditions of this Agreement.

## AGREEMENT

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants and agreements set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties, intending to be legally bound, hereby agree as follows:

## ARTICLE I.
## APPOINTMENT; SCOPE OF SERVICES.

Section 1.1. Appointment as Fiduciary. The Company hereby appoints Brozen. to serve as Special Fiduciary of the Trust and Brozen hereby accepts the Appointment, effective as of the Effective Date, subject to the terms and conditions of this Agreement. The Company, pursuant to written resolutions duly adopted by the Board, hereby delegates to Brozen the authority and discretion to manage and control the assets of the Trust, to the extent specified in Schedule 1, as may be amended in writing from time to time. For clarity, during the term of this Agreement, Brozen shall serve only as Special Fiduciary to the Trust and not have the authority to manage, acquire or dispose of the Trust's assets, except to the extent specified in **Schedule 1**, as may be amended in writing from time to time.

Section 1.2. Scope of Services; Limited Fiduciary Status. Brozen shall provide only the services identified on **Schedule 1** and shall not be responsible for provision of any services other than the services identified on **Schedule 1**. Brozen shall not be responsible for those services expressly disclaimed on **Schedule 1**. The status of Brozen as a fiduciary under ERISA Section 3(21)(A) is limited only to the services identified on **Schedule 1**, and he hereby disclaims any fiduciary status with respect to services other than the services identified on **Schedule 1**, including those services expressly disclaimed on **Schedule 1**. In the event of a dispute concerning the scope of services to be provided by Brozen, he may, with five (5) calendar days' prior written notice to the Company, submit the dispute to his legal counsel with experience with employee stock ownership plans and the Company, as primary obligor, shall be responsible for any professional fees and disbursements incurred by him that are not otherwise properly paid by the Trust as allowed under the terms of the ESOP and ERISA in obtaining any such advice from legal counsel in accordance with Section 1.4 and the terms of legal counsel's engagement letter.

Section 1.3. Retention of Independent Appraiser. To facilitate his performance of this Agreement and the provision of the services identified on **Schedule 1**, Brozen shall engage the services of an independent appraiser, as that term is defined in Section 401(a)(28)(C) of the Code, which will report solely to the Brozen and not to the Company. The Company, as primary obligor, shall be responsible for the payment of all professional fees and disbursements charged by the independent appraiser that are not otherwise properly paid by the Trust as allowed under the terms of the ESOP and ERISA in accordance with the terms of this Agreement and the written engagement letter among Brozen, the Company and the independent appraiser.

## ARTICLE II.
## COMPENSATION.

Section 2.1. Professional Fees. In consideration of Special Fiduciary's agreement to provide the services identified in Section 1.2 in accordance with this Agreement, the Company hereby agrees to pay to Special Fiduciary a professional fee in the amount of $25,000. The professional fee shall be paid in two (2) installments. The first installment is due and payable on the Effective Date and the second installment is due when Special Fiduciary has determined the Fair Market Value of the employer securities owned of record by the ESOP for the plan year ended June 30, 2021 (the "**Annual Fee**"). In the event that Brozen resigns or is removed in accordance with ARTICLE VIII, the unearned portion of the Annual Fee will be refunded. For purposes of the immediately preceding sentence, the earned portion of the Annual Fee will equal (a) the product of the Annual Fee and (b) the ratio (expressed as a percentage) of (1) the number of calendar days that have elapsed between January 1 and the effective date of the resignation or removal of Special Fiduciary in accordance with ARTICLE VIII and (2) the number of calendar days in such calendar year .

Section 2.2. Professional Fees for Unscheduled Services. In addition to the professional fees payable under Section 2.1, the Company hereby agrees to pay additional professional fees for services, if any, performed by Brozen, Ventura, or its employees agents or representatives in addition to those services identified in Section 2.1 and on **Schedule 1**, including (a) responding to hostile, contested or unsolicited tender offers for shares of the Company's stock held by the ESOP, (b) evaluating and responding to proposed merger, acquisitions, divestitures, public offerings, reorganizations or similar transactions involving the Company or its affiliates or subsidiaries, and

(c) producing documents or providing testimony or other involvement in connection with informal or formal requests for information, subpoenas, fact-finding investigations, audits, mediations, arbitrations, litigation, appeals or other proceedings arising from this Agreement or the final determination of the Fair Market Value of the employer securities owned of record by the ESOP for the plan year ended June 30, 2021. Brozen will charge for its extraordinary services based on a negotiated fee for the particular matter in question. Fees for all other extraordinary services for which a negotiated fee cannot be reached will be charged at Ventura's hourly rates then in effect. The hourly rates in effect, presently, are Neil M. Brozen, $400; Director Client Services, $250; Administrator, $150, and are subject to adjustment on January 1 of each calendar year. The Company's obligations under this Section 2.2 are in addition to the Company's obligations under ARTICLE VII.

Section 2.3. Expenses and Advances. The Company hereby agrees to reimburse the Brozen, Ventura, and its employees, agents and representatives for all reasonable and documented expenses incurred and advances made by each of them in connection with the performance of their services (including services under Section 2.2), including charges for copying, postage, facsimile transmissions, private express mail deliveries, travel (airfare and mileage), lodging, and meals.

Section 2.4. Payments from Trust; Deficiency Amounts. To the extent that the Company fails to timely pay any amount due to Brozen, independent appraiser or legal counsel in accordance with this Agreement or other written engagement letters with the independent appraiser and legal counsel, the Company hereby authorizes Brozen (a) to pay such unpaid amounts, to the fullest extent permitted by ERISA and other applicable law, from the Trust's assets, and (b) to the extent there is a deficiency, liquidate the Trust's assets, to the fullest extent permitted by ERISA and other applicable law, to the extent reasonably necessary to satisfy such deficiency.

## ARTICLE III.
## REPRESENTATIONS AND WARRANTIES OF THE COMPANY.

As an inducement offered by the Company to Brozen to enter into this Agreement and perform his obligations hereunder, the Company represents and warrants to Brozen, as of the Effective Date, as follows:

Section 3.1. Status. The Company is a corporation duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization.

Section 3.2. Power and Authority. The Company has the requisite corporate power and authority to execute and deliver this Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereby. All acts or proceedings required to be taken by the Company to authorize the execution and delivery of this Agreement and the performance of the Company's obligations hereunder have been properly taken.

Section 3.3. Enforceability. This Agreement has been duly authorized, executed and delivered by the Company, and assuming the due and valid authorization, execution and delivery of this Agreement by Brozen, this Agreement constitutes the legal, valid and binding obligation of the Company, enforceable against the Company in accordance with its respective terms, except as the same may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or

similar laws affecting or relating to creditors' rights generally and general equitable principles (the "**Enforceability Exceptions**").

Section 3.4. No Violation; Consents and Approvals. The execution and delivery of this Agreement by the Company and the consummation by the Company of the transactions contemplated hereby and compliance by the Company with its obligations hereunder will not: (a) violate any provision of the organizational documents of the Company; (b) violate any law applicable to, binding upon or enforceable against the Company; (c) require the consent or approval of any Governmental Authority or other Person other than the Board.

Section 3.5. Litigation. There are no actions pending, threatened in writing, or, to the knowledge of the Company, threatened orally against the Company, at law or in equity, or before or by any Governmental Authority or other Person which reasonably would be expected to affect the legality, validity or enforceability of this Agreement or the transactions contemplated hereby.

Appointment of Special Fiduciary. The appointment of Brozen as Special Fiduciary of the Trust has been duly authorized and approved by the Board or subcommittee thereof and documented in written resolutions adopted by the Board or subcommittee thereof. Brozen has been duly granted full authority to act as Special Fiduciary of the Trust and exercise trust powers thereunder.

Section 3.6. Fiduciary Liability Insurance Coverage. A true and complete copy of a current policy of fiduciary liability insurance coverage has been made available to Brozen or his legal counsel. Such policy is in full force and effect and shall remain in full force and effect (whether by virtue of the endorsement or election of an extended reporting period or otherwise). The Company has not received any written notice of cancellation of, premium increase with respect to, or alteration of coverage under, such fiduciary liability insurance policy. All premiums due on such fiduciary liability insurance policy have either been paid or will be paid in accordance with the payment terms of such fiduciary liability insurance policy. The fiduciary liability insurance policy (a) is valid and binding in accordance with its terms; (b) is provided by a carrier who is financially solvent; and (c) has not been subject to any lapse in coverage. There are no claims pending under such fiduciary liability insurance policy as to which coverage has been questioned, denied or disputed or in respect of which there is an outstanding reservation of rights. The Company is not in default under, or has not otherwise failed to comply with, in any material respect, any provision contained in any such fiduciary liability insurance policy. The fiduciary liability insurance policy is of the type and in the amount customarily carried by Persons conducting a business similar to the Company.

Section 3.7. No Other Representations or Warranties; Non-Reliance. (a) Except for the express representations and warranties made by the Company in this Agreement, neither the Company nor any of its affiliates or their respective representatives, has made or makes any express or implied representation or warranty, either oral or written, whether arising by law or otherwise, all of which are expressly disclaimed; and (b) the Company has not relied upon any representation or warranty made by Brozen, or any of his affiliates or their respective representatives, except as specifically provided in this Agreement.

## ARTICLE IV.
## REPRESENTATIONS AND WARRANTIES OF BROZEN.

As an inducement offered by Brozen to the Company to enter into this Agreement and perform its obligations hereunder, Brozen represents and warrants to the Company, as of the Effective Date, as follows:

Section 4.1. Capacity. Brozen has all legal capacity to execute and deliver this Agreement, to perform his obligations hereunder and to consummate the transactions contemplated hereunder.

Section 4.2. Power and Authority. Subject to Section 3.6, Brozen is a "fiduciary," as that term is defined in Section 3(21)(A) of ERISA, of the ESOP and is independent of the Company. All acts or proceedings required to be taken by Brozen to authorize the execution and delivery of this Agreement and the performance of Brozen's obligations hereunder have been properly taken.

Section 4.3. Enforceability. This Agreement has been duly authorized, executed and delivered by Brozen and, assuming the due and valid authorization, execution and delivery of this Agreement by the Company, this Agreement constitutes the legal, valid and binding obligation of Brozen, enforceable against Brozen in accordance with its terms, except as enforceability may be limited by the Enforceability Exceptions.

Section 4.4. No Violation; Consents and Approvals. The execution and delivery of this Agreement by Brozen, the consummation by Brozen of the transactions contemplated hereby and compliance by Brozen with his obligations hereunder: (a) will not conflict with or result in a breach or violation of ERISA or the Code, and (b) will not require any prior action, consent, or approval of, or filing with, any Governmental Authority or other Person.

Section 4.5. Litigation. There are no actions pending or, to the knowledge of Brozen, expressly threatened in writing against Brozen, as applicable, at law or in equity, or before or by any Governmental Authority or other Person which reasonably would be expected to affect the legality, validity or enforceability of this Agreement.

Section 4.6. No Other Representations or Warranties; Non-Reliance. (a) Except for the express representations and warranties made by Brozen in this Agreement, neither Brozen nor any of his affiliates or their respective representatives, has made or makes any express or implied representation or warranty, either oral or written, whether arising by law or otherwise, all of which are expressly disclaimed; and (b) Brozen has not relied upon any representation or warranty made by the Company, or any of its affiliates or their respective representatives, except as specifically provided in this Agreement.

## ARTICLE V.
## COVENANTS OF THE COMPANY.

Section 5.1. Discharge of Duties. From and after the Effective Date, the Company shall, and, to the fullest extent permitted by law, shall cause each fiduciary of the ESOP other than Brozen to, discharge its and their respective fiduciary duties with respect to the Plan solely in the

interest of the ESOP participants and beneficiaries, and (a) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the Plan; (b) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; and (c) in accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with ERISA.

Section 5.2. Compliance with Laws. From and after the Effective Date, the Company shall at all times comply with all Federal, state and local laws, ordinances, regulations, and orders that are applicable to this Agreement and the Company's performance hereunder, except to the extent that failure to comply therewith would not, in the aggregate, reasonably be expected to have a material adverse effect on its ability to comply with its obligations under this Agreement.

Section 5.3. Information and Documents; Management Personnel. From and after the Effective Date, the Company shall, or shall cause its affiliates to, timely deliver all information and documents reasonably requested by Brozen, independent appraiser or legal counsel in writing, and shall, and shall cause its affiliates to, provide Brozen, independent appraiser or legal counsel reasonable access to the Company's directors, officers, and key management employees.

Section 5.4. Full Disclosure. From and after the Effective Date, the information and documents provided to Brozen, independent appraiser and legal counsel by the Company and/or its representatives and agents (including advisors), including historical year-end financial statements and interim financial statements shall not (a) make any untrue statement of a material fact or (b) omit to state a material fact necessary to prevent the statements made from being misleading. The Company acknowledges that the ability of Brozen, independent appraiser and legal counsel to perform under this Agreement and the written engagement letters with the independent appraiser and legal counsel is subject to timely receipt of complete and accurate information and documents from the Company and its affiliates.

Section 5.5. Financial Projections and Forecasts. From and after the Effective Date, all financial projections and forecasts provided to Brozen, independent appraiser and legal counsel, as applicable, shall be the good faith estimate of the Company's management of the Company's most likely financial performance using assumptions which are reasonable under the circumstances prevailing at the time such financial projections and forecasts are provided to Brozen, independent appraiser or legal counsel, as applicable.

Section 5.6. Notification of Claims and Potential Claims.

(a) From and after the Effective Date, the Company shall notify Brozen within five (5) Business Days after discovery of any (i) written demand for monetary damages or non-monetary relief; (ii) civil proceeding commenced by service of a complaint or similar pleading; (iii) criminal proceeding commenced by filing of charges; (iv) informal or formal administrative or regulatory proceeding commenced by filing notice of charges, formal investigative order, service of summons, or similar document, including a fact-finding investigation commenced by the U.S. Department of Labor, or any other Governmental Authority; (v) written request to toll or waive a statute of limitations or repose relating to a potential civil or administrative proceeding

(each of the foregoing, a "**Claim**"), against the Company, any of its past, present or future shareholders, officers, directors, employees, agents or representatives, or any past, present or future fiduciary of the ESOP (other than Brozen). The Company shall provide Brozen with written notice of the particulars of the Claim, including all facts relating to the alleged wrongful act, the identity of each Person allegedly involved in or affected by the alleged wrongful act, and the dates of the alleged events as soon as practicable.

(b) From and after the Effective Date, the Company shall notify Brozen within five (5) Business Days after discovery of any fact, circumstance, situation or event that may subsequently give rise to a Claim (each a "**Potential Claim**"). The Company shall provide Brozen with written notice of the particulars of the Potential Claim, including all facts relating to the alleged wrongful act, the identify of each Person allegedly involved in or affected by the alleged wrongful act, the dates of the alleged events, and the reasons for anticipating a Potential Claim as soon as practicable.

Section 5.7. <u>Fiduciary Liability Insurance Coverage</u>. From and after the Effective Date, the Company shall use its best effort to maintain fiduciary liability insurance coverage with commercially reasonable terms and naming the Plan as an insured and naming Brozen as an additional named insured on a primary and noncontributory basis. The Company shall provide Brozen with ten (10) Business Days prior, written notice before terminating or materially modifying such fiduciary liability insurance coverage (whether by non-renewal, failure to pay premium or otherwise). Upon the written request of Brozen, the Company shall, or shall cause its affiliates to, add Brozen as a certificate holder of such fiduciary liability insurance policy. From and after the Effective Date, the Company shall use its best efforts to timely and properly notify the underwriter of such fiduciary liability insurance coverage of any claim for losses incurred by the Trust and potentially recoverable under such fiduciary liability insurance policy. The Company, as the "named organization," "insured entity, "named insured," or functional equivalent under such fiduciary liability insurance policy shall use its best efforts to assist Brozen, as an insured, in connection with making any and all claims by or on behalf of Brozen or the ESOP, as applicable, under the terms of such fiduciary liability insurance policy.

Section 5.8. <u>Favorable Determination Letter</u>. The Company has a favorable determination that (a) the ESOP constitutes an "employee stock ownership plan" within the meaning of Code Section 4975(e)(7), the ESOP is qualified under Code Section 401(a), and the Trust is exempt from taxation under Code Section 501(a). The Company shall timely adopt any amendment(s) requested by the Internal Revenue Service as a condition for such determination letter.

Section 5.9. <u>Certain Corporate Events</u>. From and after the Effective Date, the Company shall not effect any merger, reorganization, consolidation, sale of all or substantially all of its assets or other legal succession unless and until the surviving entity of such merger, reorganization, consolidation, sale of all or substantially all of the Company's assets or other legal succession expressly assumes all of the Company's obligations and duties under this Agreement, including the obligations and duties under <u>ARTICLE VII</u>, in a writing duly executed by an authorized agent of such acquirer or surviving entity, as applicable, and delivered to the Company and Brozen. From and after the Effective Date, the Company shall not dissolve or liquidate and shall not distribute a material portion of its assets to its shareholders or to any other third party unless and until

provisions satisfactory to Brozen (in its sole and absolute judgment) have been made to preserve the Company's obligations and duties under this Agreement, including the obligations and duties under ARTICLE VII.

Section 5.10. Access to Information. In order to facilitate the resolution of any claims made by or against or incurred by an Indemnified Person on or after the Effective Date, or for any other reasonable purpose, from and after the Effective Date, the Company shall (a) retain its books and records which relate to this Agreement and the Schedule hereto, and (b) upon reasonable notice, afford each Indemnified Person, its affiliates and their respective representatives reasonable access, during normal business hours, to such books and records; provided, however, that nothing in this Section 5.10 shall be construed to obligate the Company or its affiliates to provide access to books and records that are (a) subject to the attorney-client, work-product or other similar privilege (provided that such party will use commercially reasonable efforts to disclose such information in a manner that does not violate such privilege or, if necessary not to violate such privilege, under a "common interest" agreement which reserves such privilege), (b) prohibited by a written agreement of confidentiality to be disclosed or (c) prohibited by law to be disclosed.

## ARTICLE VI.
## COVENANTS OF BROZEN.

Section 6.1. Access to Information. In order to facilitate the resolution of any claims made by or against or incurred by an Indemnified Person on or after the Effective Date, or for any other reasonable purpose, from and after the Effective Date, Brozen shall (a) retain his books and records which relate to this Agreement and the Schedule hereto, and (b) upon reasonable notice, afford the Company, its affiliates and their respective representatives reasonable access, during normal business hours, to such books and records; provided, however, that nothing in this Section 6.1 shall be construed to obligate Brozen to provide access to books and records that are (i) subject to the attorney-client, work-product or other similar privilege (provided that such party will use commercially reasonable efforts to disclose such information in a manner that does not violate such privilege or, if necessary not to violate such privilege, under a "common interest" agreement which reserves such privilege), (ii) prohibited by a written agreement of confidentiality to be disclosed or (iii) prohibited by law to be disclosed.

Section 6.2. Confidentiality. Brozen shall use the information disclosed to him by the Company or its affiliates only for the purpose of performing the services identified on **Schedule 1**. Brozen shall restrict disclosure of the information that he obtains from the Company to Brozen and his affiliates and their respective directors, officers, managers, employees, agents and representatives (each a "**Restricted Person**") who require knowledge of the information in order to assist Brozen to perform his responsibilities hereunder. No Restricted Person shall disclose confidential information regarding the Company to any third parties, except as may be required under ERISA or other law. No Restricted Person shall be obligated to maintain the confidentiality of confidential information that is publicly available or that becomes publicly available without violation by any Restricted Person of the terms of this Section 6.2. Each Restricted Person's obligations under this Section 6.2 shall be contingent upon the Company's obligation and agreement to pay or reimburse the Restricted Person for any and all costs incurred by the Restricted Person for maintaining such confidentiality and/or resisting any such disclosure. The Restricted Person shall promptly notify the Company of any attempt by a Governmental Authority or other

Person to obtain access to confidential information, but, unless the Company shall confirm (to the Restricted Person's reasonable satisfaction) its obligation and agreement to pay or reimburse the Restricted Person for any and all costs incurred by the Restricted Person for maintaining such confidentiality and/or resisting any such disclosure, the Restricted Person shall be under no further obligation to resist any legal actions or other proceedings to obtain disclosure of confidential information. If Brozen resigns or is removed as Trustee, each Restricted Person shall promptly return to the Company any and all originals and copies of confidential information provided to such Restricted Person; provided, however, each Restricted Person shall be entitled to retain any confidential information that the Restricted Person, in its sole discretion, considers to have become part of its work product or which otherwise supports the actions taken, and/or conclusions reached, by the Restricted Person as a result of its services rendered pursuant to this Agreement or other written engagement letter, and such confidential information shall be retained by the Restricted Person subject to the requirements of this Section 6.2, the Restricted Person's document retention policy and other applicable law. Notwithstanding anything in this Section 6.2 to the contrary, the Company hereby consents to disclosures (including press releases, web postings and other public announcements) of information made by or on behalf of Brozen; provided, however, that in each case, such disclosure must have a valid business purpose and be effected in a manner consistent with customary marketing practices for independent trustees); provided, further, that such disclosure shall not reference the purchase price or any other financial metric.

Section 6.3. Books and Records; Trust Assets. Within thirty (30) calendar days following the resignation or removal of Brozen in accordance with ARTICLE VIII, and upon receipt of written evidence of the Company's appointment of a successor trustee, Brozen shall promptly deliver to such successor trustee all books and records relating to the Trust and shall promptly transfer and deliver any Trust assets to the successor trustee. Brozen may reserve an amount reasonably necessary to provide for the payment of all professional fees, disbursements and taxes then or thereafter chargeable against the Trust, to the extent not paid by the Company. The Company shall reimburse the Trust for any amount reserved by Brozen. Each successor trustee shall succeed to the title to the Trust vested in its predecessor without the signing or filing of any further instrument, but Brozen shall execute all documents and perform all acts reasonably necessary to vest such title or record in any successor trustee.

## ARTICLE VII.
## INDEMNIFICATION AND CONTRIBUTION.

Section 7.1. Survival. The representations and warranties contained in ARTICLE III and ARTICLE IV shall survive the execution and delivery of this Agreement and shall survive indefinitely. The covenants, agreements and obligations of the parties shall survive until fully performed unless a shorter duration is specified in such covenant, agreement or obligation.

Section 7.2. Indemnification Provisions for the Benefit of the Indemnified Persons. From and after the Effective Date, whether or not involving a Third Party Claim, the Company shall release, indemnify and hold harmless, to the fullest extent permitted by law, Brozen; his heirs, executors, administrators, and legal representatives; Ventura; its present and future members, managers, employees, agents and representatives; and the respective successors and permitted assigns of each of the forgoing Persons (each an "**Indemnified Person**," and collectively, the "**Indemnified Persons**"), from and against any and all Loss incurred by an Indemnified Person

based upon, arising out or incurred as a result of, in whole or in part, directly or indirectly, any of the following:

(a) any breach of, or any inaccuracy in, any representation, warranty, statement or certification made by the Company in this Agreement;

(b) any breach or default in performance by the Company of any of its covenants, obligations or agreements contained in this Agreement (including its covenants, obligations or agreements under this ARTICLE VII);

(c) the performance of services by an Indemnified Person in accordance with the terms of this Agreement; and

(d) any matter claimed against the Indemnified Person by reason of his, her or its status as a fiduciary of the ESOP;

provided, however, that the Company shall have no obligation to indemnify or hold harmless an Indemnified Person from and against any Loss that is determined in a Final Judgment to have resulted directly and primarily from the gross negligence or willful misconduct of such Indemnified Person or from a Breach of Fiduciary Duty of such Indemnified Person.

Section 7.3. Contribution Provisions for the Benefit of the Indemnified Persons. If a court of competent jurisdiction shall hold that any payment or award of indemnification pursuant to the terms of this Agreement shall be unavailable to any one or more of the Indemnified Persons from the Company for any reason other than such Indemnified Person's gross negligence or willful misconduct, such Indemnified Person shall nevertheless have a right of contribution against the Company, and the Company shall accordingly reimburse the affected Indemnified Person consistent with this Agreement, but taking into account the basis for the denial of full indemnification by the court.

Section 7.4. Indemnification Procedures.

(a) Third Party Claims. If any Indemnified Person receives notice of the assertion or commencement of a Third Party Claim against such Indemnified Person with respect to which the Company could be expected to be obligated to provide indemnification under this ARTICLE VII, the Indemnified Person shall give the Company reasonably prompt written notice thereof, but in any event not later than ten (10) Business Days after receipt of such notice of such Third Party Claim. The failure to give such prompt written notice shall not, however, relieve the Company of its indemnification obligations, except and only to the extent that the failure to give notice shall actually prejudice any defense or claim available to the Company. Such notice by the Indemnified Person shall describe the Third Party Claim in reasonable detail, shall include copies of all material written evidence thereof and shall indicate the estimated amount, if reasonably practicable, of the Loss that has been or may be sustained or suffered by the Indemnified Person.

(b) Subject to the terms of this Agreement, the Company shall have the right to participate in, or by giving written notice to the Indemnified Person, to assume the defense or

settlement of any Third Party Claim at the Company's expense and by counsel selected by the Company and consented to in writing by the Indemnified Person, and the Indemnified Person shall cooperate in good faith in such defense or settlement; provided, however, that the Company shall not have the right to participate in or assume the defense or settlement of a Third Party Claim if: (i) the Third Party Claim relates to or arises in connection with any matter involving (or potentially involving) criminal or quasi-criminal conduct; (ii) the Third Party Claim seeks an injunction or other equitable relief against the Indemnified Person; (iii) the Company has failed or is failing to vigorously (defend or prosecute) in good faith the Third Party Claim; or (iv) the Company has not delivered to the Indemnified Person a written acknowledgment that the Third Party Claim is subject to indemnification pursuant to this ARTICLE VII and that the Company is liable for all Loss in respect of such Third Party Claim. In the event that the Company assumes the defense or settlement of any Third Party Claim, subject to this Section 7.4(a), it shall have the right to take such action as it deems necessary to avoid, dispute, defend, appeal or make counterclaims pertaining to any such Third Party Claim in the name and on behalf of the Indemnified Person. The Indemnified Person shall have the right to participate in the defense or settlement of any Third Party Claim with counsel selected by it subject to the Company's right to control the defense or settlement thereof. The fees and disbursements of such counsel shall be at the expense of the Indemnified Person; provided, however, that if in the reasonable opinion of counsel to the Indemnified Person, (A) there are legal defenses available to an Indemnified Person that are different from or additional to those available to the Company; or (B) under the applicable standards of professional conduct, there exists a conflict of interest between the Company and the Indemnified Person that cannot be waived, the Company shall be liable for the reasonable fees and expenses of one (1) additional counsel (and one (1) local counsel in any relevant jurisdiction) to the Indemnified Person. Until such time as the Company has delivered a written notice of intent to assume the defense or settlement of a Third Party Claim to the Indemnified Person, the Indemnified Person shall, at the expense of the Company in accordance with Section 7.5, undertake the negotiation, defense or settlement of such Third Party Claim, and shall not settle or compromise such Third Party Claim without the prior written consent of the Company (which in any event shall not be unreasonably withheld, conditioned or delayed) unless the Indemnified Person expressly waives in writing any right to seek or obtain indemnification hereunder or any other remedy against the Company with respect to such Third Party Claim. If the Company exercises its right to control the defense or settlement of a Third Party Claim, the Company shall obtain the prior written consent of the Indemnified Person before entering into any settlement of a Third Party Claim or ceasing to defend such Third Party Claim if, (X) pursuant to or as a result of such settlement or cessation, injunctive or other equitable relief would reasonably be expected to be imposed against the Indemnified Person, (Y) such settlement does not expressly and unconditionally release all Indemnified Persons from all Losses and obligations with respect to such claim without prejudice, or (Z) if such settlement includes any statement as to or an admission of fact, culpability or failure to act by or on behalf of any Indemnified Person. Notwithstanding anything in this Section 7.4(a) to the contrary, in the event of a Third Party Claim consisting of (1) a written request to toll or waive the applicable statute of limitations, or to waive any contractual time bar, relating to a potential claim against an Indemnified Person or (2) a written notice of commencement of a fact-finding investigation by the U.S. Department of Labor, or any similar Governmental Authority, the Company shall not be entitled to assume the defense or settlement of the Third Party Claim, each Indemnified Person shall be entitled to employ separate independent legal counsel to

represent such Indemnified Person, and the Company shall pay the Expenses of such Indemnified Person in accordance with and subject to the limitations of Section 7.5.

(c) Direct Claims. Any action by an Indemnified Person in respect of Loss which does not result from a Third Party Claim (a "**Direct Claim**") shall be asserted by the Indemnified Person giving the Company reasonably prompt written notice thereof, but in any event not later than ten (10) Business Days after the Indemnified Person becomes aware of such Direct Claim. The failure to give such prompt written notice shall not, however, relieve the Company of its indemnification obligations, except and only to the extent that the Company forfeits rights or defenses by reason of such failure. Such notice by the Indemnified Person shall describe the Direct Claim in reasonable detail, shall include copies of all material written evidence thereof and shall indicate the estimated amount, if reasonably practicable, of the Losses that have been or may be sustained or suffered by the Indemnified Person. The Company shall have twenty (20) Business Days after its receipt of such notice to respond in writing to such Direct Claim. The Indemnified Person shall allow the Company and its professional advisors to reasonably investigate the matter or circumstance alleged to give rise to the Direct Claim, and whether and to what extent any amount is payable in respect of the Direct Claim and the Indemnified Person shall reasonably assist the Company's investigation by giving such information and assistance (including access to the Indemnified Person's personnel and the right to examine and copy any accounts, documents or records) as the Company or any of its professional advisors may reasonably request. If the Company does not so respond within such twenty (20) Business Day period, the Company shall be deemed to have rejected such claim, in which case the Indemnified Person shall be free to pursue such remedies as may be available to the Indemnified Person on the terms and subject to the conditions of this Agreement. All negotiations pursuant to this Section 7.4(c) shall be treated as compromise and settlement negotiations for purposes of Rule 408 of the Federal Rules of Evidence and comparable state rules of evidence.

(d) Remedies; Burden of Proof; Presumptions. To the fullest extent permitted by law, the Company shall bear the burden of proving that indemnification or advancement of Expenses is prohibited or otherwise unavailable to an Indemnified Person. Neither the failure of the Company to have made a determination prior to the commencement of a dispute resolution proceeding that indemnification is proper under the circumstances because the Indemnified Person has met the applicable standard of conduct, nor an actual determination by the Company that the Indemnified Person has not met the applicable standard of conduct, shall be a defense to the dispute resolution proceeding or create a presumption that the Indemnified Person has not met the applicable standard of conduct.

Section 7.5. Advancement of Expenses; Undertaking to Repay. In the event that the Company does not assume the defense or settlement of a Third Party Claim under Section 7.4(a), or the Indemnified Person is entitled to separate counsel in accordance with Section 7.4(a), the Company shall advance and pay on behalf of each Indemnified Person all Expenses incurred by or on behalf of the Indemnified Person, as and when incurred and in no event later than 30 calendar days after the Indemnified Person presents to the Company invoices for such Expenses; provided, however, that the advancement and payment of such Expenses incurred by or on behalf of the Indemnified Person shall be made only upon receipt by the Company of (a) a written affirmation of the Indemnified Person's good faith belief that advancement and payment of such Expenses or indemnification is not prohibited under Section 7.2, and (b) a written undertaking by or on behalf

of the Indemnified Person to repay, without interest, all advanced and paid Expenses and indemnification in the event that advancement and payment of such Expenses or indemnification is prohibited under Section 7.2. From and after the Effective Date, Brozen, on behalf of itself, and, to the fullest extent permitted by law, on behalf of each Indemnified Person, shall upon the written request of the Company, reasonably cooperate with the Company to establish a reasonably satisfactory arrangement to ensure prompt repayment of all advanced and paid Expenses and indemnification in the event that such advancement and payment of Expenses or indemnification is prohibited under Section 7.2.

Section 7.6. Partial Indemnification. If an Indemnified Person is entitled under any provision of this Agreement to indemnification or the advancement and payment of Expenses by the Company, but not, however, for the total amount thereof, the Company shall nevertheless indemnify, or make an advance and payment of Expenses to, or on behalf of, such Indemnified Person for the portion thereof to which the Indemnified Person is entitled.

Section 7.7. Indemnification Payments. Once a claim for Losses is agreed to by the Company or finally adjudicated to be payable pursuant to this ARTICLE VII, the Company shall satisfy its obligations within ten (10) Business Days of such agreement or Final Judgment by wire transfer of immediately available funds to an account designated by the Indemnified Person in writing. The parties hereto agree that should the Company not make full payment of any such obligations within such ten (10) Business Day period, any amount payable shall accrue interest from and including the date of agreement of the Company or Final Judgment to, and including, the date such payment has been made at a rate per annum equal to one percent (1%) per month. Such interest shall be calculated daily on the basis of a three hundred sixty-five (365) day year and the actual number of days elapsed, without compounding.

Section 7.8. Losses Net of Fiduciary Liability Insurance Recovery. All Losses hereunder will be calculated net of insurance proceeds actually received by an Indemnified Person in respect of fiduciary liability insurance coverage maintained by the Company (if any) and Brozen will use commercially reasonable efforts to cooperate with the Company in the event the Company elects to pursue such insurance recovery.

Section 7.9. Special Definitions. For purposes of this Agreement, the following terms have their stated meanings:

"**Breach of Fiduciary Duty**" means a breach of the standard of conduct established by ERISA or the decisional law interpreting ERISA.

"**Business Days**" means any day other than a Saturday or Sunday or a day on which commercial banks in New Jersey are authorized by law or executive order to be closed.

"**Expenses**" includes any and all retainers, actual attorneys' fees and expenses and actual experts' fees and expenses (whether the foregoing are incurred in connection with investigation, negotiation, defense, appeal, settlement or otherwise) and any and all dispute resolution costs and expenses, including premiums for appeal, attachment or similar bond.

"**Final Judgment**" means (a) a judgment from a court of competent jurisdiction from which no appeal can be taken, due to the expiration of an appeal period or otherwise, or from which

the parties agree in good faith and in writing not to appeal or (b) a final order from a court of competent jurisdiction approving a settlement between the United States Department of Labor and the Indemnified Person.

"**Loss(es)**" means any and all past, present and future diminutions in value, damages (including punitive, exemplary or multiplied damages, but only to the extent payable to a third party), judgments, settlements, pre-judgment and post-judgment interest, Expenses, penalties (including civil penalties under ERISA Sections 502(i) and 502(l)), excise taxes (including excise taxes under Code Section 4975), fines, and assessments.

"**Third Party Claim**" includes any threatened, pending or completed action, suit, mediation, arbitration, administrative hearing or other proceeding, whether of a civil, criminal or administrative of investigative nature, and any appeal therefrom threatened, asserted, commenced, filed, initiated, or instituted by any Governmental Authority or other Person not a party to this Agreement. For clarity, "**Third Party Claim**" includes any and all (a) informal or formal requests for information (whether made orally or in writing), (b) written requests to toll or waive the applicable statute of limitations, or to waive any contractual time bar, relating to a potential claim, (c) written notices of commencement of a fact-finding investigation by the U.S. Department of Labor, or any similar Governmental Authority, and (d) all actions, suits, mediations, arbitrations, administrative hearings or other proceedings, whether of a civil, criminal or administrative or investigate nature, and appeals therefrom.

## ARTICLE VIII.
## FIDUCIARY STATUS; RESIGNATION AND REMOVAL.

Section 8.1. Fiduciary Status. Brozen's status as a fiduciary (as that term is defined in Section 3(21)(A) of ERISA), shall commence on the Effective Date and continue until the earlier of the resignation or removal of Brozen in accordance with this ARTICLE VIII, or the final determination of the Fair Market Value of the employer securities owned of record by the ESOP for the plan year ended June 30, 2021, at which time Brozen's status as a fiduciary shall terminate.

Section 8.2. Resignation. Brozen, in his sole and absolute discretion, with or without reason, may resign at any time and from time to time by providing at least thirty (30) calendar days' prior, written notice to the Company.

Section 8.3. Removal. The Company may, in its sole and absolute discretion, with or without cause, remove Brozen at any time and from time to time by providing Brozen with at least thirty (30) calendar days' prior, written notice. In the event that the Company removes Brozen, the Company shall provide Brozen with satisfactory, written evidence of the Board's appointment of a successor trustee and the successor trustee's acceptance of such appointment.

Section 8.4. Default Successor Trustee. In the event that Brozen resigns or is removed in accordance with this ARTICLE VIII, or the final determination of the Fair Market Value of the employer securities owned of record by the ESOP for the plan year ended June 30, 2021, then, immediately following such resignation, removal or consummation of the final determination of the Fair Market Value of the employer securities owned of record by the ESOP , as applicable:

(a) the status of Brozen as a fiduciary under ERISA Section 3(21)(A) shall cease and Brozen shall be automatically divested of any and all authority and discretion to manage and control the assets of the Trust delegated by the Company under Section 1.1; and

## ARTICLE IX.
## MISCELLANEOUS.

Section 9.1. Notice. Each party shall deliver all notices, requests, consents, claims, demands, waivers and other communications under this Agreement (each, a "**Notice**") in writing and addressed to the other party at its address set out in this Section 9.1 (or to any other address that the receiving party may designate from time to time in accordance with this Section 9.1). Each party shall deliver all Notices by personal delivery, nationally recognized overnight courier (with all fees prepaid) or e-mail (with confirmation of transmission) or certified or registered mail (in each case, return receipt requested, postage prepaid). Except as otherwise provided in this Agreement, a Notice is effective only (a) upon receipt by the receiving party and (b) if the party giving the Notice has complied with the requirements of this Section 9.1.

If to Brozen or Ventura:

Neil M. Brozen, CPA
719 W. Minnehaha Pkwy
Minneapolis, MN 55419
E-mail: nbrozen@venturaesop.com

If to the Company:

Asbury Carbons, Inc.
Attention: Noah Nicholson, President
405 Old Main Street
PO Box 144
Asbury, NJ 08802
E-mail: nnichelson@asbury.com

With a copy to (which copy shall not constitute Notice):

Stevens & Lee
Attention: Steven B. Greenapple
2201 Wilton Drive, Suite 7
Fort Lauderdale, FL 33305
E-mail: sbg@stevenslee.com

Section 9.2. Governing Law. Except as preempted by Federal law, this Agreement, the Schedule hereto, and all matters arising out of or relating hereto or thereto are governed by, and construed in accordance with, the internal substantive laws of the State of New Jersey applicable to contracts executed and wholly performed within the State of New Jersey, without regard to the principles or rules of conflict of laws of the State of New Jersey or any other jurisdiction to the

extent such principles or rules would require or permit the application of the laws of any jurisdiction other than those of the State of New Jersey.

Section 9.3. Severability.

(a) If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon a determination that any term or provision (other than the terms and conditions specifically addressed in Section 9.3(b)) is invalid, illegal or unenforceable, the parties hereto shall negotiate in good faith to modify this Agreement to effect the original intent of the parties as closely as possible in order that the legal relationship contemplated by this Agreement be maintained as originally contemplated to the greatest extent possible.

(b) Upon a determination by a court of competent jurisdiction that any term or condition of ARTICLE VII is invalid, illegal or unenforceable (whether on the grounds of violating public policy, ERISA Section 410(a), or otherwise), (a) such court shall modify the invalid, illegal or unenforceable term or condition to preserve, to the fullest extent permitted by law, the indemnification and other rights of each Indemnified Person under ARTICLE VII, or (b) to the extent such court is prohibited or unwilling to so modify such invalid, illegal or unenforceable term or condition, the parties hereto shall negotiate in good faith to modify the invalid, illegal or unenforceable term or condition to preserve, to the fullest extent permitted by law, the indemnification and other rights of each Indemnified Person under ARTICLE VII.

Section 9.4. Entire Agreement. This Agreement and the Schedule hereto constitute the sole and entire agreement of the parties with respect to the subject matter hereof, and supersede all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter. In the event of any inconsistency between or among this Agreement and the Schedule hereto, and any other agreement(s) between the parties, this Agreement shall control. Without limiting the generality of Section 3.8 and Section 4.6, the parties have not relied on any statement, representation, warranty or agreement of the other party or of any other Person on such party's behalf, including any representations, warranties, or agreements arising from statute or otherwise in law, except for the representations, warranties, or agreements expressly contained in this Agreement and the Schedule hereto.

Section 9.5. Cumulative Remedies. All rights and remedies provided in this Agreement are cumulative and not exclusive, and the exercise by either party of any right or remedy does not preclude the exercise of any other rights or remedies that may now or subsequently be available at law, in equity, by statute, in any other agreement between the parties or otherwise. For clarity, the indemnification and other rights of each Indemnified Person under ARTICLE VII are non-exclusive and in addition to any and all indemnification or other rights available to such Indemnified Person, whether available at law, in equity, by statute, in any other agreement between the parties (including any purchase agreement or Plan or Trust document) or otherwise.

Section 9.6. Equitable Remedies. Each of the parties agrees that this Agreement is intended to be legally binding and specifically enforceable pursuant to its terms and that the parties

would be irreparably harmed if any of the provisions of the Agreement are not performed in accordance with their specific terms and that monetary damages would not provide adequate remedy in such event. Accordingly, in addition to the remedies available at law, by statute, in any other agreement between the parties or otherwise, a non-breaching party shall be entitled to injunctive relief without the posting of any bond to prevent breaches of this Agreement and to specifically enforce the terms and provisions hereof.

Section 9.7. Successors and Assigns. This Agreement binds the parties and binds and inures to the benefit of the parties' respective heirs, executors, administrators, legal representatives, successors and permitted assigns. For clarity, the preceding sentence does not address, directly or indirectly, whether a party may assign its rights or delegate its performance under this Agreement, which is separately addressed in Section 9.8.

Section 9.8. Assignment and Delegation. Except as otherwise provided in this Section 9.8, no party may assign any of its rights or delegate any of its obligations under this Agreement without the express, prior and written consent of the other party hereto; provided, however, that Brozen (and his heirs, executors, administrators, legal representatives, successors and permitted assigns) may assign any of their rights or delegate any of their obligations under this Agreement, without the express, prior and written consent of any other party, to (a) a successor by consolidation or merger or operation of law, (b) a purchaser of assets, or (c) a lender as collateral security. Except as otherwise provided in the preceding sentence, assignments and delegations prohibited or permitted by this Section 9.8 include the voluntary transfer of rights, the transfer of rights by operation of law, the transfer of rights by consolidation or merger (whether or not such party is the surviving entity), and the assignment of a right to Losses arising out of this Agreement. Any purported assignment or delegation in violation of this Section 9.8 shall be null and void *ab initio*. Unless otherwise agreed to among the parties in writing, no assignment of any rights or delegation of any obligations under this Agreement shall relieve the assigning or delegating party of any of its obligations hereunder.

Section 9.9. Amendment or Modification. No amendment to or modification of this Agreement is effective unless it is in writing, expressly identified as an amendment to or modification of this Agreement and signed by an authorized representative of each party to this Agreement.

Section 9.10. Waiver. No waiver under this Agreement is effective unless it is in writing, identified as a waiver to this Agreement, and signed by an authorized representative of the party waiving its right. Waiver authorized on one occasion is effective only in that instance and only for the purpose stated, and does not operate as a waiver on any future occasion. None of the following constitutes a waiver or estoppel of any right, remedy, power, privilege, or condition arising from this Agreement: (a) any failure or delay in exercising any right, remedy, power, or privilege or in enforcing any condition under this Agreement, or (b) any act, omission, or course of dealing between the parties.

Section 9.11. Third-Party Beneficiaries. Except as provided in this Section 9.11, the parties do not confer any rights or remedies upon any Person other than the parties to this Agreement and their respective successors and permitted assigns. The parties hereby designate each Indemnified Person identified in Section 7.2 a third-party beneficiary of ARTICLE VII and

Section 9.6 and assign to each such Indemnified Person the right to enforce ARTICLE VII Section 9.6 and the other provisions of this Agreement necessary and proper to the interpretation and enforcement of ARTICLE VII and Section 9.6.

Section 9.12. Interpretation. For purposes of this Agreement, (a) the words "include," "includes" and "including" are deemed to be followed by the words "without limitation"; (b) the word "or" is not exclusive; and (c) the words "herein," "hereof," "hereby," "hereto" and "hereunder" refer to this Agreement as a whole. Unless the context otherwise requires, references herein: (x) to Articles, Sections, and Schedules mean the Articles of, Sections of, and Schedules its attached to, this Agreement; (y) to an agreement, instrument or other document means such agreement, instrument or other document as amended, supplemented and modified from time to time to the extent permitted by the provisions thereof; and (z) to a statute means such statute as amended from time to time and includes any successor legislation thereto and any regulations promulgated thereunder. This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted. The Schedule referred to herein shall be construed with, and as an integral part of, this Agreement to the same extent as if they were set forth verbatim herein. All references to "$" or "dollars" mean the lawful currency of the United States of America. Whenever the masculine is used in this Agreement, the same shall include the feminine and whenever the feminine is used herein, the same shall include the masculine, where appropriate. Whenever the singular is used in this Agreement, the same shall include the plural, and whenever the plural is used herein, the same shall include the singular, where appropriate. For purposes of this Agreement, the term "**Governmental Authority**" means the government of the United States of America or any political subdivision thereof, whether at the national, state, territorial, provincial, municipal or any other level, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of, or pertaining to, government. For purposes of this Agreement, the term "**Person**" means any individual, corporation, limited liability company, trust, joint venture, association, company, limited or general partnership, unincorporated organization, Governmental Authority or other entity, including an employee stock ownership plan or employee stock ownership trust.

Section 9.13. Counterparts and Electronic Signatures. This Agreement and any amendment, modification or waiver hereto may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. Signatures delivered via facsimile, electronic mail (including PDF format or any electronic signature complying with the U.S. Federal ESIGN Act of 2000, e.g., *www.docusign.com*) or other transmission method shall be deemed original signatures and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes. The electronic signatures, whether digital or encrypted, of the undersigned affixed to this Agreement and any amendment, modification or waiver hereto, are intended to authenticate this Agreement and to have the same force and effect as manual signatures.

Section 9.14. Service of Process. Service of process, summons, notice or other document by certified mail in accordance with Section 9.1 shall be effective service of process for any suit, action or other proceeding.

Section 9.15. Mandatory Choice of Forum. Each party irrevocably and unconditionally agrees that it will not commence any action, litigation or proceeding of any kind whatsoever against the other party in any way arising from or relating to this Agreement, including the Schedule attached hereto, and the transactions contemplated hereby, including contract, equity, tort, fraud and statutory claims, in any forum other than the United States District Courts sitting in New Jersey or, if such court does not have subject matter jurisdiction, the courts of the State of New Jersey, and any appellate court from any thereof. Each party irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees to bring any such action, litigation or proceeding only in the United States District Court sitting in New Jersey or, if such court does not have subject matter jurisdiction, the courts of the State of New Jersey. Each party agrees that a final judgment in any such action, litigation or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Each of the parties hereby irrevocably and unconditionally waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of venue of any such action, litigation or proceeding of any kind whatsoever brought in any such court referred to in this Section 9.15 and any claim that such action, litigation or proceeding has been brought in an inconvenient forum.

Section 9.16. Waiver of Jury Trial. Each party acknowledges and agrees that any controversy that may arise under this Agreement, including the Schedule attached hereto, including contract, equity, tort, fraud or statutory claims, is likely to involve complicated and difficult issues and, therefore, each such party irrevocably and unconditionally waives any right it may have to a trial by jury about any legal action arising out of or relating to this Agreement, including the Schedule attached hereto, or the transactions contemplated hereby, including contract, equity, tort, fraud or statutory claims. Each party certifies and acknowledges that (a) no representative of the other party has represented, expressly or otherwise, that such other party would not seek to enforce the foregoing waiver in the event of a legal action, (b) such party has considered the implications of this waiver, (c) such party makes this waiver voluntarily, and (d) such party has been induced to enter into this Agreement by, among other things, the mutual waivers and certifications in this Section 9.16.

Section 9.17. Representation by Independent Legal Counsel. Each party acknowledges and represents that such party (a) has either (i) been represented by counsel of such party's own choosing, or (ii) has been advised to seek, and offered the opportunity to obtain, counsel of such party's choosing, and has elected not to so obtain the services of an attorney, to review this Agreement and the Schedule hereto and advise the party about all of the terms, conditions and legal effect of entering into, and being bound by, this Agreement and the Schedule hereto, (b) has fully and carefully read this Agreement and the Schedule hereto prior to its execution, (c) has been, or has had the opportunity to be, fully appraised by such party's attorney, if any, of the legal effect and meaning of this Agreement and the Schedule hereto and all terms and conditions hereof and thereof, (d) has had the opportunity to make whatever investigation or inquiry such party, deemed necessary or appropriate in connection with the subject matter of this Agreement and the Schedule hereto, (e) has been afforded the opportunity to negotiate as to any and all terms hereof, and (f) is executing this Agreement voluntarily, free from any undue influence, coercion, duress, menace, or fraud of any kind.

[Signature Pages Follow]

**IN WITNESS WHEREOF**, the undersigned hereby causes this Agreement to be duly executed and delivered by its authorized officer as of the date first written above.

ASBURY CARBONS, INC.,
a Delaware corporation

Noah Nichelson

Noah Nichelson, President

**IN WITNESS WHEREOF**, the undersigned hereby causes this Agreement to be duly executed and delivered as of the date first written above.

Neil M. Brozen,
an individual

*Neil M. Brozen*

________________________________
Neil M. Brozen

Ventura ESOP Fiduciary Services, LLC
A Minnesota limited liability company

By: *Neil M. Brozen*
Neil M. Brozen, President

**SCHEDULE 1**
**SCOPE OF SERVICES**

[See attached]

The scope of services provided by Brozen in accordance with Section 1.2 of this Agreement consists of the only the following services:

1. Determinations of the fair market value (as such term is defined in ERISA Section 3(18)(B)) of employer securities held of record by the ESOP; and

2. The evaluation, qualification and selection of the independent appraiser (as such term is defined in Code Section 401(a)(28)(C)).

Brozen's scope of services does not consist of, *inter alia*, the following:

1. Serving as a fiduciary in respect of any employee benefit plan or trust implementing or forming a part of any employee benefit plan, other than the Trust.

2. Provision of tax preparation, tax consulting, financial planning, recordkeeping, accounting (including audit, compilation or review services), or other reporting services for the Plan;

3. Provision of investment management, investment advising, financial planning, insurance consulting, securities brokering, or real estate services;

4. Determination of the adequacy of the assets of the Trust to meet and discharge any liabilities under the Plan and Trust;

5. Enforcing payment of any contribution to the Trust and for the timing and amount thereof;

6. Establishing funding standards adopted for the Trust and Plan and for funding any repurchase liability created by the Trust and Plan; and

7. To the fullest extent permitted by ERISA, investigating the acts or omissions of any and all predecessor or successors fiduciaries of the ESOP.