**McDERMOTT WILL & EMERY LLP**
Jessica Greer Griffith
(Bar No. 126432014)
One Vanderbilt Avenue
New York, New York 10017
T: (212) 547-5400
ggriffith@mwe.com

J. Christian Nemeth (*pro hac vice pending*)
444 West Lake Street
Chicago, IL 60606
Tel: (312) 984-3292
jcnemeth@mwe.com

*Attorneys for Defendant Neil Brozen*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LANCE MILLER and LARRY RICHARDSON, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>Plaintiffs,<br><br>-against-<br><br>NEIL BROZEN, ASBURY CARBONS, INC., PATRICK SOOK and ASBURY CARBONS, INC. EMPLOYEE STOCK OWNERSHIP PLAN,<br><br>Defendants. | Case No. 3:23-cv-02540-PGS-DEA<br><br>**Motion Day: November 6, 2023**<br>**Document Electronically Filed**<br>**Oral Argument Requested** |

**DEFENDANT NEIL BROZEN'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# TABLE OF CONTENTS


I. INTRODUCTION ........................................................................................1

II. BACKGROUND ........................................................................................4

A. ESOPs Generally ........................................................................................4

B. The Asbury Carbons ESOP ........................................................................................6

C. The Mill Rock Transaction ........................................................................................7

III. LEGAL STANDARDS ........................................................................................10

IV. PLAINTIFFS FAIL TO ESTABLISH ARTICLE III STANDING.............13

V. PLAINTIFFS FAIL TO STATE A CLAIM AS A MATTER OF LAW......16

A. Plaintiffs' First Cause Of Action Fails Because Brozen Did Not Cause The Transaction To Occur ........................................16

B. Plaintiffs' First Cause of Action Also Fails Because Plaintiffs Have Not Plausibly Alleged That The Valuation At The Time Of The Transaction Was Not For Fair Value ..............................19

C. Plaintiffs' Second Cause Of Action Fails Because ESOP Participants Do Not Have A Right To Vote On Transactions Involving A Stock Sale ........................................................................................20

D. Plaintiffs Fail To Allege A Prohibited Transaction Under ERISA § 406(b)(2) ........................................................................................22

E. Plaintiffs Fail To State A Claim For Co-Fiduciary Liability........................................................................................23

VI. CONCLUSION........................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*,
435 F.3d 396 (3d Cir. 2006) ....................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................11

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d. 87 (2d Cir. 2007) ....................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................11

*Boone v. Carlsbad Bancorporation, Inc.*,
972 F.2d 1545 (10th Cir. 1992) ....................18

*Braden v. Wal–Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ....................17

*Buck v. Hampton Twp. Sch. Dist.*,
452 F.3d 256 (3d Cir. 2006) ....................6

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) ....................12, 20

*Cohn v. SunCoke Energy Partners, L.P.*,
No. 20-3069, 2021 WL 3877885 (3d Cir. Aug. 31, 2021) ....................18

*Donovan v. Cunningham*,
716 F.2d 1455 (5th Cir. 1983) ....................5, 8

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014)....................3, 4, 5, 11

*Henry v. Champlain Enterprises, Inc.*,
445 F.3d 610 (2d Cir. 2006) ....................8

*Hughes v. Northwestern Univ.*,
142 S. Ct. 737 (2022)....................................................................................12

*Keegan v. Steamfitters Local No. 420 Pension Fund*,
174 F. Supp. 2d 332 (E.D. Pa. 2001).................................................................23

*Kindle v. Dejana*,
238 F.Supp.3d 353 (E.D.N.Y. 2017)...................................................................8

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....................................................................................10

*Muransky v. Godiva Chocolatier, Inc.*,
979 F.3d 917 (11th Cir. 2020) (en banc)...........................................................13

*In re NAHC, Inc. Sec. Litig.*,
306 F.3d 1314 (3d Cir. 2002)..........................................................................12

*PBGC. v. White Consol. Indus.*,
998 F.2d 1192 (3rd Cir. 1993)........................................................................12

*Perelman v. Perelman*,
793 F.3d 368 (3d Cir. 2015)...........................................................................13

*Petraglia v. U.S. Bank, N.A.*,
No. CV 17-6325, 2018 WL 355146 (D.N.J. Jan. 9, 2018).............................6, 12

*In re RCN Litig.*,
No. 04-5068, 2006 WL 753149 (D.N.J. Mar. 21, 2006)....................................12

*Schmidt v. Skolas*,
770 F.3d 241 (3d Cir. 2014)...........................................................................12

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)...............................................................................10, 13

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013)...........................................................................11

*Stein v. Smith*,
270 F. Supp. 2d 157 (D. Mass 2003)................................................................23

*Taylor v. KeyCorp.*,
680 F.3d 609 (6th Cir. 2012) .......... 13

*Thole v. U.S. Bank N.A.*,
140 S. Ct 1615 (2020) .......... 2, 13

**Statutes**

29 U.S.C. § 1002(18)(B) .......... 8

29 U.S.C. § 1104(a)(1)(A) .......... 17

I.R.C. 409(e)(3) .......... 21

ERISA 404(a)(1)(D) .......... 3

ERISA § 404(a)(1)(A) .......... 17

ERISA § 404(a)(1)(D) .......... 4, 20

ERISA § 405 .......... 23

ERISA § 406(b) .......... 22

ERISA §406(b)(2) .......... 4, 22

Tax Reform Act of 1976, § 803(h), 90 Stat. 1590 .......... 4

**Other Authorities**

Michael A. Hart, *ESOPs in Corporate Acquisitions: What Every Buyer Should Know about the Target Company's ESOP* .......... 21

Fed. R. Civ. P. 9(b) .......... 9

Fed. R. Civ. P. 12(b)(1) .......... 10

Fed. R. Civ. P. 12(b)(6) .......... 3, 11

# I. INTRODUCTION

Plaintiffs' ERISA claims against Defendant Neil Brozen ("Brozen") and the other named Defendants (the "Company Defendants") arise from a March 24, 2023 transaction in which a formerly-family-owned company, Asbury Carbons, Inc. (the "Company"), through its Board of Directors, decided to sell the Company to a private equity firm, Mill Rock Capital (the "Transaction"). The Transaction, valued at nearly $100 million, provided the Company's shareholders, including the Riddle family and the Asbury Carbons, Inc. Employee Stock Ownership Plan ("ESOP"), significant equity for each share they owned. Brozen served as the independent trustee for the ESOP, which owned ~20% of the Company's stock prior to the Transaction.

As set forth in more detail below, Plaintiffs' ERISA claims are based on the absurd and implausible premise that the Riddle family, which owned the other ~80% of Company stock, intentionally sought to undervalue the Company during the Transaction, costing themselves tens of millions of dollars in the process. Plaintiffs allege that Brozen and the Company Defendants allowed the Transaction to close at this reduced value to the detriment of the ESOP and its participants. In other words, Plaintiffs claim that Brozen and the Company Defendants breached their ERISA duties to the ESOP participants so that the Riddle family could receive substantially *less money* for the Company, which their family had owned for generations.

Nothing could be further from the truth. The Asbury Carbons Board of Directors, led by its Executive Committee, went through a robust process to identify a potential buyer and secure favorable Transaction terms. As Plaintiffs noted in their Complaint, the Company took over two years to ultimately close the Transaction. Plaintiffs do not contest, nor could they, that the review process included significant due diligence, the assistance of an independent Company-side valuation advisor, and multiple rounds of negotiations. As shareholders of the Company, the Riddle family was incentivized to get the best deal they could for themselves and for the ESOP participants, and that is exactly what they did. Brozen, as Trustee for an ESOP holding only ~20% of the Company's shares, had no reason or ability to intercept the patently fair Transaction. Indeed, contrary to the false allegations in the Complaint, Brozen had his own set of valuation advisors which concluded the Transaction was fair to the ESOP.

*For the reasons set forth below, each of the claims against Brozen should be dismissed.*

*First,* Plaintiffs fail to establish Article III standing to pursue their claims. Plaintiffs must allege that they have "suffered an injury in fact that is concrete, particularized, and actual or imminent…" *Thole v. U.S. Bank N.A.*, 140 S. Ct 1615, 1618 (2020). They cannot and have not done so here. Plaintiffs base their claim on the assertion that the Company was worth between $150 to $180 million

(approximately $3,000 per share) in 2020/2021 and Plaintiffs purportedly only received $1,759.87 per share a few years later in 2023. Plaintiffs ignore the fact that all Company shareholders, including the ESOP and its participants, received $1,143 in per share dividend payments in 2022 and 2023 prior to the Transaction. Judicially noticeable documents confirm that these dividend payments, when added to the Transaction sale price, total over $3,000 per share. In other words, even if Plaintiffs are correct that the Company was still worth $3,000 per share in March 2023 (despite the admitted deteriorating market conditions), ESOP participants received the *very amount* Plaintiffs assert they should have received. Because there was no loss to the Plan and no injury to Plaintiffs, Plaintiffs lack Article III standing and their claims must be dismissed.

*Second*, Plaintiffs fail to state a plausible claim against Brozen under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6). Plaintiffs' fanciful theory that Brozen went along with the Riddle family and Company Defendants to artificially depress the value of the stock is implausible and contrary to judicially noticeable facts. And, even if it were somehow true, Brozen had *no ability* to stop the Transaction since the ESOP only owned 20% of the Company's shares.

*Third*, Plaintiffs are wrong to claim that Brozen violated ERISA by failing to give ESOP participants a vote to approve or reject the Transaction. *See* ERISA 404(a)(1)(D). The Transaction was a stock sale that is specifically carved out under

the Internal Revenue Code as a corporate action that does not require a shareholder vote. Nothing in the Plan documents establishes otherwise. Thus, Plaintiffs cannot state a claim against Brozen under ERISA § 404(a)(1)(D).

*Fourth*, Plaintiffs' prohibited transaction claim fails. Plaintiffs cannot state a cause of action for a prohibited transaction under ERISA §406(b)(2) because Brozen is never alleged to have acted on behalf of a party whose interests were not aligned with the Plan. Rather, Brozen acted solely on behalf of the ESOP participants in a transaction involving an independent third-party, Mill Rock.[1] By all accounts, the Complaint should be dismissed against Brozen.

## II. <u>**BACKGROUND**</u>

### A. <u>**ESOPs Generally**</u>

An ESOP is a "bold and innovative method…of bringing about stock ownership by all corporate employees." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 416 (2014) (citing Tax Reform Act of 1976, § 803(h), 90 Stat. 1590). Employees in a company with an ESOP can build wealth by working because the value of their accounts depends on whether the company succeeds. *See* ESOP Nuts and Bolts, Nat'l Ctr. Emp. Ownership, http://www.esopinfo.org/howesops-work,

[1] Plaintiffs also allege Brozen is liable as a co-fiduciary for his knowledge of the other Defendants' breaches of their fiduciary obligations. Because Plaintiffs cannot make out any claims against Brozen or the other Company Defendants, Plaintiffs' cause of action for co-fiduciary liability also fails.

last visited July 28, 2023. For these reasons, Congress has incentivized the creation of ESOPs and "has written into law 'its interest in encouraging' their use." *Dudenhoeffer*, 573 U.S. at 416; *see also Donovan v. Cunningham*, 716 F.2d 1455, 1466 (5th Cir. 1983) (reasoning that Congress has repeatedly expressed its intent to encourage the formation of ESOPs by passing legislation granting such plans favorable treatment and has warned against judicial and administrative action that would thwart that goal).

ESOPs are a type of benefit plan authorized by ERISA whose primary investment is the stock of the plan participants' employer. *Dudenhoeffer*, 573 U.S. at 416. ESOPs typically acquire their employer stock from the company's existing shareholders, who are usually the founders of the business. See How an Employee Stock Ownership Plan Works, Nat'l Ctr. Emp. Ownership, https://www.nceo.org/articles/esop-employee-stock-ownership-plan, (last visited July 22, 2023); *see also Start Here: ESOP Transactions*, NCEO, http://www.nceo.org/article/start-here-esop-transactions (last visited July 22, 2023). Because ESOPs generally do not have assets of their own when created, the ESOP acquires the stock through a loan from the company. *Id*. The company's employees do not invest any of their own money for the ESOP to acquire the stock, are not obligated to provide any money to repay the ESOP loan and have no personal liability if there is a default

on the loan. *See* ESOP Nuts and Bolts, Nat'l Ctr. Emp. Ownership ("NCEO"), http://www.esopinfo.org/how-esops-work/, (last visited July 28, 2023).

In ESOP transactions, an independent trustee represents the interests of the ESOP, and through the governing documents, is granted authority in certain occasions to act on behalf of the ESOP participants. *See supra* Start Here: ESOP Transactions.

### B. The Asbury Carbons ESOP

Asbury Carbons was a family-run graphite company dating back to the 1800s. (Compl. ¶ 1). Founded by Harry M. Riddle, Asbury Carbons was the product of years of hard work by Riddle and his constant pursuit of opportunity. (*Id.* ¶¶ 1, 16). Loyalty and goodwill to its employees has always been at the forefront of the Asbury Carbons mission, which is why the leadership of Asbury Carbons established the ESOP in 2009 as a means to give employees an economic stake in the company's success. (*Id.* ¶ 14). During the relevant period, the ESOP held ~19.7% of the Company's stock and the remaining ~80.3% was held by other shareholders, primarily the Riddle family. (*Id.* at ¶ 2, 46).

The ESOP is governed by a Plan, which was initially enacted in 2009 and restated in 2021. (Ex. 1)[2] During the relevant time, Brozen was the appointed trustee

---

[2] Courts may consider documents specifically referenced in a plaintiff's complaint or central to a plaintiff's complaint on motion to dismiss. *Petraglia v. U.S. Bank, N.A.*, No. CV 17-6325, 2018 WL 355146, at *3 (D.N.J. Jan. 9, 2018); *see also infra*,

of the Plan. (Compl. ¶ 9). The ESOP maintains a Trust Agreement which governs the relationship between the Asbury Carbons ESOP and the Trustee, in this case, Brozen. (Ex. 2) The Trust Agreement provides Brozen with standard responsibilities as a trustee for an ESOP. (*Id.*) Notably, neither the Plan nor the Trust Agreement provides Brozen any independent ability, as trustee for the minority shareholder ESOP, to block an otherwise majority agreed upon Company action. (*See* Ex. 1, 2)

### C. <u>The Mill Rock Transaction</u>

In 2020, the Riddle family began considering its options to sell its shares of the Company. In 2021, the Asbury Board of Directors established an Executive Committee to explore the options for the Company moving forward. (Compl. ¶¶ 22, 27–28). Plaintiff does not contest that the Committee undertook a long-term and extensive process to identify, evaluate, and ultimately select a buyer as evidenced by the two years it took to complete the Transaction. (*Id.*) This was not a sale to garner a quick pay day. (*Id.*) The Company took its time to evaluate its options and

Section III. Relevant here, this includes the ESOP Plan Document and its Amendments, the ESOP Trust Agreement, and the Addendum to Brozen's Fiduciary Services Agreement. Courts can also take judicial notice of publicly available documents on motion to dismiss. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); *see Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006) (reasoning that courts may also take judicial notice of news reports to evaluate "what was in the public realm" at a given time). Relevant here, the ESOP's publicly filed Form 5500s.

the product of its review was a well-advised transaction to Mill Rock Capital. (Compl. ¶ 2).

The Board directed Brozen to conduct an evaluation of the Transaction so that the Board could include the ESOP's shares as part of the sale. (*See* Ex. 3). Brozen's role was narrow. (*Id.*) He had no part in the decision to select Mill Rock as the buyer of the Company and had no role in the negotiations between Mill Rock and the Company regarding the purchase price. (*Id.*) Instead, Brozen was instructed to consider the offer price Mill Rock presented and to determine whether the Transaction represented adequate consideration[3] for the ESOP participants. (*Id.*; *see also* Compl. ¶¶ 9, 11)

[3] Adequate Consideration is a term of art in the ERISA context. Where a transaction would be otherwise prohibited under ERISA, the statute provides an exception for the transaction to proceed if the payment to the ESOP participants is for "adequate consideration." ERISA defines "adequate consideration" as "the fair market value of the asset as determined in good faith by the trustee." 29 U.S.C. § 1002(18)(B) (emphasis added); *see also Henry v. Champlain Enterprises, Inc.*, 445 F.3d 610, 618 (2d Cir. 2006) (citing *Donovan v. Cunningham*, 716 F.2d 1455, 1465 (5th Cir. 1983)). The "'fair market value' and 'good faith' requirements are 'closely intertwined' in that they are 'expressly focused upon the conduct of the fiduciaries'" as opposed to an investment's results. *Kindle v. Dejana*, 238 F.Supp.3d 353, 367 (E.D.N.Y. 2017) (citing *Henry*, 445 F.3d at 619) (additional quotations omitted). Thus, the adequate consideration standard focuses on the trustee's process in approving the transaction. See *Kindle*, 238 F.Supp.3d at 367-68 (reasoning that adequate consideration inquiry focuses on "conduct" rather than "the merits of the transaction in hindsight"). If the trustee engaged in a good faith and prudent process in approving the transaction, the exemption applies.

As explained in more detail by the Company Defendants (*see* Company Defendants' Motion to Dismiss ("Defs. Br.") at 9), the ESOP participants received two types of payments in return for their Company shares in connection with the Transaction. First, participants received a share of the cash proceeds from the Transaction, $18,371,347, or $1,888.50 per share. (*See* Defs. Br. at 9-10). Second, the ESOP participants received two dividend payments: one for $900 per share in April/May 2022 and one for $243 per share immediately preceding the Transaction in 2023. (*Id.*)

As Plaintiffs note in the Complaint, the Company files an annual report with the DOL providing the value of the ESOP's shares at the close of the Plan year; for the Asbury Carbons ESOP, that is June 30. (Compl. ¶ 37). For the Plan year ending June 30, 2020, the ESOP's shares held a value of $23,560,073. (Ex. 7). When the Company was considering options for sale in 2020 and 2021, the Board noted that the Company was holding a significant amount of cash that could make it less appealing to a buyer who would have to garner additional financing to purchase the Company's cash. (Defs. Br. at 9); *see also* Ex. 5 (valuing the Company at $36,364,355). As a result, the Company elected to issue dividends to the shareholders thereby decreasing the Company's cash on hand. (Defs. Br. at 9). Each shareholder thus received a $900 dividend in April/May 2022 (Defs. Br. at 10). That dividend payment, though ignored by Plaintiffs, is reflected in the Company's Form

5500 for the year ending June 30, 2022. (Ex. 6).[4] Immediately preceding the Transaction, the Company elected to distribute another dividend for the same reasons as the prior one. (Defs. Br. at 11). On June 22, 2023, Asbury issued $243 to each of the ESOP participants' accounts (*Id.*). Together, the two dividends totaled an additional $1,143 per share. (*Id.*) All told, Plan participants received at least $3,031 per share between April 2022 and the date of the Transaction, which equates to a total Company value of $150 million. (*Id.*)

Brozen's financial advisor concluded that the Transaction's purchase price was not less than fair value.[5] (Ex. 4). Brozen concurred. Brozen's determination is well-documented by the publicly filed Form 5500s that track the changes in valuation of the ESOP's shares over time.[6] (*See* Exs. 5-7).

## III. <u>LEGAL STANDARDS</u>

Brozen first seeks dismissal pursuant to Rule 12(b)(1) as this court does not have subject matter jurisdiction over this action because plaintiffs failed to allege Article III standing. Fed. Civ. P. 12(b)(2). Plaintiffs have the burden to establish that

[4] Plaintiffs allege that the timing of the ESOP's 2022 Form 5500 indicates the filing was a "sham." (Compl. ¶ 48). Plaintiffs provide no plausible basis to support this false statement. It is also an allegation of fraud that is subject to the heightened Rule 9(b) fraud standards. Plaintiffs' allegations of fraud do not comport with the Rule and therefore this Court can disregard them on a motion to dismiss.

[5] Contrary to Plaintiffs' allegations, Brozen did receive a fairness opinion as part of the Transaction.

[6] *See supra* n. 2.

they have Article III standing: i.e., that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of [Defendants], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), as revised (May 24, 2016). As for the "injury in fact" element, Plaintiffs must plausibly allege that they suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Brozen also seeks dismissal pursuant to Rule 12(b)(6). When determining whether to dismiss a complaint under Fed. Civ. P. 12(b)(6), courts evaluate whether a plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must plead facts that are sufficient to push the claims "across the line from conceivable to plausible." *Id*. This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (citation omitted). A complaint's "factual content" must be more than "merely consistent with" a defendant's liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conduct that is "compatible with, but indeed [is] more likely explained by, lawful" behavior does not state a claim. Id. at 680.

Courts must take "particular care" in evaluating ERISA claims at the pleading stage. *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v.*

*Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013). That is because "the prospect of discovery" in an ERISA class action is "ominous" and "elevates the possibility that a 'plaintiff with a largely groundless claim [will] simply take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value.'" Id. at 719 (alteration in original). Courts therefore must engage in "careful, context-sensitive scrutiny of a complaint's allegations" in ERISA cases. *Dudenhoeffer*, 573 U.S. at 425. Recognizing the "difficult tradeoffs" ERISA fiduciaries face, the Supreme Court has instructed that, at the motion to dismiss stage, "courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 742 (2022).

In deciding a motion to dismiss, a court "may [also] consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public filings with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d. 87, 98 (2d Cir. 2007); *Petraglia v. U.S. Bank, N.A.*, No. CV 17-6325, 2018 WL 355146, at *3 (D.N.J. Jan. 9, 2018); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014); *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (noting that judicial notice properly taken with respect to (1) documents relied upon in the Complaint (including Company's press

releases); (2) documents filed with the SEC; and (3) stock price data compiled by a reliable financial news service); *see also In re RCN Litig.*, No. 04-5068, 2006 WL 753149, at *6 (D.N.J. Mar. 21, 2006) (citing *PBGC. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3rd Cir. 1993)); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (reasoning that courts can consider documents "integral to or explicitly relied upon in the complaint.").

## IV. PLAINTIFFS FAIL TO ESTABLISH ARTICLE III STANDING[7]

Plaintiffs bear the burden of establishing Article III standing to bring their claims. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also Perelman v. Perelman,* 793 F.3d 368, 373 (3d Cir. 2015). That entails pleading an actual, concrete injury-in-fact. *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020); *see also Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924–25 (11th Cir. 2020) (en banc) ("[A]t the pleading stage, the 'litigant must clearly and specifically set forth facts' to satisfy the requirements of Article III."). Plaintiffs' Complaint fails to meet this burden.

As a threshold matter, Plaintiffs do not "automatically satisf[y] the injury-in-fact requirement" solely on the grounds that ERISA provides them with a "statutory right." *Spokeo*, 578 U.S. at 341. "Article III standing requires a concrete injury even

[7] Brozen adopts and incorporates Section IIIB of the Asbury Defendants' Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' Complaint as if set forth herein.

in the context of a statutory violation." *Id*; *Taylor v. KeyCorp.,* 680 F.3d 609, 612-14 (6th Cir. 2012) (reasoning that because the plaintiff must be "injured by defendants' alleged conduct" and the plaintiff "benefit[ed] from defendants' alleged breach of fiduciary duty," the plaintiff did not suffer an actual injury and has no standing).

Plaintiffs' distorted version of the facts does not align with the judicially noticeable documents of this case and cannot establish any injury to the ESOP participants. Plaintiffs allege that the ESOP's shares were worth $25 million on June 30, 2020, grew to $38 million by June 30, 2021, and sometime before June 30, 2022, Brozen and the Defendants contrived a plan to purposefully reduce the value of the ESOP's shares (*and all of the other shares of the Company held by the then-owners*) to prevent the ESOP participants from receiving the true value of their participant shares. (Compl. ¶¶ 39–43). But these allegations are demonstrably false. Plaintiffs were fully compensated for their Company shares, suffered no loss as a result of the Transaction, and thus suffered no injury.

As explained above and in the Company Defendants' separate motion, Plaintiffs *received in their participant accounts a payment equal to the total value that Plaintiffs claim the company had at the time of the transaction*. The Company's Form 5500's track exactly what happened to the value of the ESOP – which had nothing to do with Brozen or the other Defendants. In June 2020, the ESOP's shares

were valued at $23 million. (Ex. 7 at 16). In 2021, as the Company accumulated cash in the pandemic (*see* Defs. Br at 9–10), the value of the shares increased to $36 million. (Ex. 5 at 16). Prior to and in anticipation of the Transaction, the Company issued two dividend payments to all of its shareholders for $900 and $243 per share respectively. (*Id.* and Ex. 6 at 17). The dividend payments are reflected in the ESOP's valuation on its 2021 Form 5500 (*Id.*) The ESOP participants were thus provided $1,143 to their participant account for each share they held *before* the Transaction. Market conditions deteriorated and mergers and acquisitions plummeted. (Compl. ¶ 75). The Company's external market value became less appealing and thus the value of the Company continued to drop. (Defs. Br. at 9–10).

Nevertheless, the Asbury Carbons executive committee was able to negotiate the deal with Mill Rock Capital for just under $100 million, of which the ESOP participants received $18.7 million. (Compl. ¶ 2). The deal entitled ESOP participants to another payment in their account of $1,888.50 per share, resulting in each ESOP participant receiving a total of $3,031.50 per share ($1,888.50 sale price + $900 dividend + $243 dividend). (*See* Defs. Br. at 9-10). With 9,728 shares of the Company's stock, the ESOP participants were thus paid nearly $30 million for the shares of the ESOP's stock between 2022 and 2023. (*Id.*) A value of $30 million for the ESOP's shares puts the Company's value at approximately $150 million, which is exactly the amount Plaintiffs claim they were entitled to as part of the Transaction.

(Compl. ¶ 2). Plaintiffs were thus made whole and cannot allege the requirements of injury-in-fact for Article III standing.

## V. PLAINTIFFS FAIL TO STATE A CLAIM AS A MATTER OF LAW

Plaintiffs have not and cannot allege a plausible claim that Brozen or anyone else violated ERISA. At the outset, Brozen reiterates that Plaintiffs' allegations, on their face, are completely illogical. The underpin of Plaintiffs' allegations is that the Company's Board, some of whom owned shares in the Company themselves, set out to find a buyer that would lowball the Company's value and thereby reduce the amount each shareholder was entitled to as a result of the Transaction. (Compl. ¶ 2, 30-34). It is counterfactual to think that someone whose family owned a Company for generations would be interested in receiving less money for the sale of their own shares to purposefully harm the ESOP participants. But even if the Court accepts Plaintiffs' absurd version of the facts, Plaintiffs allegations do not plausibly make out any cause of action and thus Plaintiffs' Complaint must be dismissed.

### A. Plaintiffs' First Cause Of Action Fails Because Brozen Did Not Cause The Transaction to Occur

Plaintiffs' First Cause of Action – that Brozen breached his ERISA fiduciary duty of prudence and duty of loyalty by permitting the transaction to go forward for inadequate consideration – rests on the premise that Brozen had the legal ability to stop the Transaction from occurring. He did not. In reality, even if Brozen did not feel the consideration for this Transaction was fair, which it was (*see supra* Section

IV), Plaintiffs have not set forth allegations to support how Brozen could have *caused* this purported undervalued Transaction to occur.

ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), provides that fiduciaries must discharge their duties in the sole interest of participants and beneficiaries, for the exclusive purpose of providing them benefits. Like the duty of prudence, this standard is objective; it focuses on the fiduciaries' conduct preceding a challenged decision, rather than the results of that decision. *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009). Both breaches of the duty of prudence and breaches of the duty of loyalty require proving: (1) that the defendants acted as fiduciaries, (2) they breached their fiduciary duties, and (3) the breach caused a loss to the plan. *Id*. at 594. Plaintiffs cannot state a claim for either.

Both the duty of loyalty and duty of prudence require Plaintiff to allege that somehow Brozen caused a loss to the plan. Plaintiffs cannot make out such a claim. As Plaintiffs note numerous times in their Complaint (Compl. ¶¶ 2, 43, 77), the ESOP owned less than 20% of the entirety of the Company's stock. As a minority shareholder to the Company, Brozen did not have the shares to change the trajectory of the Transaction. Whether Brozen elected to vote for or against the Transaction, the decision to sell the Company to Mill Rock rested with the other 80%. And, to the extent there is any doubt that Brozen's "vote" was effectively irrelevant, the

Company reserved the right under the Plan to terminate the ESOP at any time and buy back the shares. (Compl. ¶ 9; Ex. 1 at 2.29).

Cases like the present one, where Plaintiffs allege Brozen should have interfered to somehow stop the Transaction, are hard to locate. This makes sense. It is difficult to see how a plaintiff could be successful in proving that a trustee breached his fiduciary obligations by failing to stop a transaction for which he represented a minority shareholder and had no other legal recourse to interfere. In other contexts, courts routinely reject theories of causation presented by shareholders whose participation was not needed for the corporation action. *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1557 (10th Cir. 1992) (affirming the dismissal of securities law claims because plaintiffs were unable to satisfy the causation requirement where the votes of majority shareholders were sufficient to effect a merger without minority approval); *Cohn v. SunCoke Energy Partners, L.P.*, No. 20-3069, 2021 WL 3877885, at *3 (3d Cir. Aug. 31, 2021) (holding appellees could not make out a causation where the appellant controlled a majority of the shares and "therefore had 'the votes legally required to authorize the action proposed.'"). Like those cases, the Court should find that Brozen could not have *caused* this Transaction and thus Plaintiffs' claim for breach of fiduciary duty fails.

### B. Plaintiffs' First Cause of Action Also Fails Because Plaintiffs Have Not Plausibly Alleged That The Valuation At The Time Of The Transaction Was Not For Fair Value

Plaintiffs' Complaint does not plausibly allege that the consideration paid to the ESOP participants for their shares was below fair value of the Company at the time of the Transaction.

Instead of acknowledging that the deteriorating market conditions (Compl. ¶ 32-33) (and the substantial prior dividend payments) had an impact on the value of the business (as reflected in the Company's 2022 Form 5500), Plaintiffs allege that Brozen should have somehow stopped the Transaction from occurring during the difficult market period. (Compl. ¶ 46) Even if Brozen had authority to stop the Transaction (and he did not), at the time of the Transaction there was no near-term turnaround expected for the acquisitions market (nor has there been today). *See* Kate Marino, Wall Street dealmaking activity dives in Q1, https://www.axios.com/2023/04/03/ merger-activity-decline-q1-2023-wall-street (last visited July 28, 2023). Indeed, by selling the Company when they did, it is likely that the Board of Directors was able to garner a better deal for Asbury Carbons than would be available in the current market. And by approving the consideration to be paid to the ESOP as part of the Transaction, Brozen *significantly reduced the risk of additional decrease in value to the ESOP participants*.

Moreover, Plaintiffs' allegations that Brozen did not receive a fairness opinion as part of this transaction are false. To the contrary, Brozen hired a third-party consultant SC&H Group to evaluate the fairness of the transaction. SC&H concluded that the Mill Rock share price offer was for fair value of the Company at the time of the Transaction (*See* Ex. 4[8] ). Specifically, SC&H found that:

> a. The Consideration to be received by the ESOP in accordance with the terms of the Stock Purchase Agreement is not less than the Fair Market Value (as such term is used in section 3(18)(B) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA")) of the ESOP shares; and
>
> b. The terms and conditions of the Transaction, taken as a whole, contemplated in accordance with the Stock Purchase Agreement are fair to the ESOP from a financial point of view.

### C. Plaintiffs' Second Cause Of Action Fails Because ESOP Participants Do Not Have A Right To Vote On Transactions Involving A Stock Sale

Count II is based exclusively on the allegation that "Defendant Brozen breached his fiduciary duties under ERISA § 404(a)(1)(D) by failing to provide Plan participants and beneficiaries with a ballot by which they could indicate whether they favored or opposed the sale of the Company shares." (Compl. ¶ 82). This

[8] The Court can consider the Fairness Opinion on motion to dismiss because Plaintiffs put the Fairness Opinion at issue in their Complaint by alleging that Brozen did not engage a third-party valuation expert. (Compl. ¶ 45); *see supra* n. 1; *see also In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997) (a "document integral to or explicitly relied upon in the complaint" may be considered "without converting the motion [to dismiss] into one for summary judgment.").

allegation is fundamentally false and directly contradicted by the law and the ESOP plan documents. Brozen did not violate his fiduciary duties when Plaintiffs did not vote on this Transaction because, under the Internal Revenue Code, Plaintiffs did not have a right to vote on this type of transaction. *See* I.R.C. 409(e)(3). Under the Internal Revenue Code, shareholders are entitled to vote on certain actions by a corporation such as approval or disapproval of any corporate merger or consolidation, recapitalization, reclassification, liquidation, dissolution, sale of substantially all assets of a trade or business. *See* I.R.C. 409(e)(3). Notably, a sale of stock is not an action by the corporation and thus does not require shareholder vote. *Id.*; *see also* Michael A. Hart, *ESOPs in Corporate Acquisitions: What Every Buyer Should Know about the Target Company's ESOP,* 14.1 Benefits L.J. , 15 (Spring, 2001) ("However, in the case of a sale of the target company's stock, a pass-through tender is never required and is always within the control of the target company.").

Plaintiffs point to a cherry-picked provision in the Summary Plan Description to support their argument that they should have been entitled to vote on this Transaction. (Compl. ¶ 53). But the Plan Document, which actually governs the ESOP, states, "The Trustee shall vote all shares of Company Stock held by the Plan with respect to all *corporate matters* upon which Company shareholders are entitled or permitted to vote." (Ex. 1 at 11.7(a)). A stock sale is not a "corporate matter." *See*

*supra,* ESOPs in Corporate Acquisitions. Simply put, the ESOP participants had no ability to vote on the Transaction.

### D. Plaintiffs Fail To Allege A Prohibited Transaction Under ERISA § 406(b)(2)

Plaintiffs' Third Cause of Action is premised on ERISA § 406(b)(2) which prohibits transactions between fiduciaries and parties whose interests are adverse to the interest of the plan. (Compl ¶ 85) ERISA § 406(b) prohibits certain transactions between a "plan" and a "fiduciary." ERISA § 406(b)(2) then specifically provides:

> A fiduciary with respect to a plan shall not—
>
> (2)in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries

Relevant to the current case, ERISA § 406(b)(2) prevents Brozen (as trustee for the Asbury Carbons ESOP) from acting *on behalf of* any party whose interests are adverse the Asbury Carbons ESOP participants. Nothing in Plaintiffs' Complaint alleges that Brozen was acting on behalf of anyone but the ESOP participants, nor could it.

The Transaction was between the Company and a *third-party*, Mill Rock. Brozen *acted solely on behalf of the Plan* in connection with a transaction with the same third-party. (Compl. ¶ 9). Brozen is not alleged to have acted on behalf of himself or any other party during the Transaction. And there was no transaction

between the "plan" and a "fiduciary" as required to state a claim under ERISA § 406(b). Plaintiffs' third cause of action therefore fails on the face of the statutory language.

### E. **Plaintiffs Fail To State A Claim For Co-Fiduciary Liability**

Plaintiffs final cause of action, for co-fiduciary liability under ERISA § 405, also fails. Where the substantive allegations of a primary fiduciary breach fail, the co-fiduciary breach claims likewise cannot succeed. *Keegan v. Steamfitters Local No. 420 Pension Fund*, 174 F. Supp. 2d 332, 341 (E.D. Pa. 2001) ("Absent any breach of fiduciary duty, the [plan] trustees…do not meet the ERISA requirements for finding liability for a breach by a co-fiduciary."). Plaintiffs fail to plausibly allege any cause of action against any of the Defendants and therefore cannot state a claim for co-fiduciary liability.

Moreover, co-fiduciary liability "requires an allegation of knowing participation in or facilitation of the underlying breach" and that the allegations must "specify which breaches by which putative fiduciaries were known of and/or facilitated by which co-fiduciaries." *Stein v. Smith*, 270 F. Supp. 2d 157, 175 (D. Mass 2003) (overruled on other grounds). The allegation that putative co-fiduciaries "knew or should have known of alleged breaches" by others does "not me[e]t the standard set forth in ERISA ..." *Id*. Plaintiffs make just this sort of generic allegation, i.e., that "Defendant Brozen and the Plan Administrator Defendants 'participate[d]

knowingly' in the breaches of each other's fiduciary duties to the Asbury ESOP" and are thus "jointly and severally liable for these breaches." (Compl. ¶ 91). This is insufficient to provide fair notice of the conduct in which each Defendant is alleged to have engaged.

## VI. CONCLUSION

Plaintiff's Complaint is based on an implausible theory that is riddled with falsities. For the reasons above, Neil Brozen respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety and with prejudice.

Dated: July 28, 2023

Respectfully submitted,

By: */s/ Jessica Greer Griffith*
Jessica Greer Griffith
(Bar No. 126432014)
MCDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue
New York, New York 10017
Tel.: (212) 547-5400
ggriffith@mwe.com

*Attorney for Defendant Neil Brozen*

## CERTIFICATE OF SERVICE

I, Jessica Greer Griffith, an attorney admitted to practice in the District Court for the District of New Jersey, hereby certify that on July 28, 2023, a true and correct copy of the foregoing was filed and served electronically by the Court's CM/ECF system upon all registered users in this action.

*/s/ Jessica Greer Griffith*
Jessica Greer Griffith