# EXHIBIT A

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

MARTIN J. WALSH,
Secretary, United States Department of Labor,

Plaintiff,

v.

ROBERT PETERSON, VASILIA PETERSON, PAUL GENERALE, NEIL BROZEN, NICOLE PETERSON 2012 IRREVOCABLE TRUST, BROOKE PETERSON 2012 IRREVOCABLE TRUST, RVNB HOLDINGS, INC. EMPLOYEE STOCK OWNERSHIP PLAN,

Defendants.

Civil Action No. 4:21-cv-00867

COMPLAINT FOR
ERISA VIOLATIONS
(29 U.S.C. § 1001 et seq.)

**COMPLAINT FOR ERISA VIOLATIONS**

Plaintiff Martin J. Walsh, Secretary of the United States Department of Labor (the "Secretary"), alleges as follows:

**PRELIMINARY STATEMENT**

1. The purpose of an employee stock ownership plan is to provide retirement income to plan participants. An employee stock ownership plan seeks to achieve this objective by having employees buy company stock, which hopefully appreciates over time and is available for use at retirement. The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., requires plan fiduciaries, when buying or selling company stock on behalf of the plan, to act prudently and with undivided loyalty, and, when selling stock owned by the ESOP, to obtain fair market value. Here, the ESOP received $12.5 million for stock that was worth $44.8 to $58.2 million.

2. In 2012, the RVNB Holdings, Inc. ESOP (“ESOP”) bought 100% of the common stock in RVNB Holdings, Inc. (“RVNB” or the “Company”) from Robert and Vasilia Peterson (the “Petersons”), the Company’s founders. Just five years later, in 2017, the RVNB Board of Directors, consisting of the Petersons and Paul Generale (“RVNB Board”)[1], and dominated by the Petersons, engineered a stock repurchase transaction to terminate the ESOP, buy back the ESOP’s shares for a fraction of their value, and then sell RVNB’s assets to a third party. The transactions were designed to enrich the Petersons at the ESOP’s expense, and caused the ESOP and its participants to suffer millions of dollars of losses. As a result of this scheme, as much as $45 million dollars of the value of the ESOP’s stock was transferred to the Petersons and their children’s trusts. Neil Brozen (“Brozen”), who RVNB retained as the ESOP’s trustee just after firing its existing trustee, approved it.

3. By his actions and omissions, Brozen breached his duties of prudence and loyalty and failed to follow the plan documents, in violation of ERISA sections 404(a)(1)(A), (B), and (D), 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D), and entered into a non-exempt prohibited transaction, in violation of ERISA section 406(a), 29 U.S.C. § 1106(a), when he caused the ESOP to enter into the 2017 transaction that resulted in it forfeiting millions of dollars it could have received for its shares.

4. By engineering and exerting control over the stock repurchase agreement, the management of the ESOP, and the ESOP’s assets, the Petersons and Paul Generale violated their fiduciary duties of loyalty and prudence and, with Brozen, caused the Plan to engage in a non-exempt prohibited transaction. They also failed to satisfy their fiduciary duty to monitor the

---

[1] Michal Paxton was also on the RVNB Board through June 2017. However, he is not named as a Defendant because prior to the critical decision points on August 3, 2017 and beyond, Michael Paxton was no longer an active and voting Board member.

actions of Brozen, in violation of ERISA sections 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B). In addition, Brozen, the Petersons, and Generale are liable as co-fiduciaries pursuant to ERISA section 405, 29 U.S.C. § 1105 for each other's fiduciary breaches.

5. The Secretary brings this action against, among others, Brozen, the RVNB Board, and its individual members to obtain relief under ERISA sections 409 and 502(a)(2) and (5), 29 U.S.C. §§ 1109, 1132(a)(2), (5), to redress violations of the statute and enforce the provisions of Title I of ERISA.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over this action pursuant to ERISA section 502(e)(1), 29 U.S.C. § 1132(e)(1).

7. Venue with respect to this action lies in the United States District Court for the Eastern District of Texas, pursuant to ERISA section 502(e)(2), 29 U.S.C. § 1132(e)(2), because at all relevant times the ESOP was administered in Carrollton, Texas, within this district, and the fiduciary breaches at issue in this Complaint occurred within this district.

**PARTIES**

8. Plaintiff, the Secretary, is vested with authority to enforce Title I of ERISA by, among other things, filing and prosecuting claims against fiduciaries and other parties who violate ERISA. 29 U.S.C. §§ 1132(a)(2) and (5).

9. Defendant Neil Brozen was, at all relevant times, the ESOP's trustee and (1) exercised discretionary authority or discretionary control respecting management of the ESOP; (2) exercised authority or control respecting management or disposition of the ESOP's assets; and/or (3) had discretionary authority or discretionary responsibility in the administration

of the ESOP, and therefore was a fiduciary of the ESOP pursuant to ERISA sections 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii).

10. Defendants Robert Peterson, Vasilia Peterson, and Paul Generale ("Generale") were, at all relevant times, members of RVNB's Board of Directors. The Board acted on behalf of the Company, which was the plan administrator for the ESOP. Moreover, as members of the Board, Robert Peterson, Vasilia Peterson, and Paul Generale, among other things: (a) engineered and consummated the plan to terminate the ESOP, repurchase its shares without paying fair value for them, and then sell the company's assets to a third party in a transaction that benefitted the Petersons at the expense of the ESOP; (b) fired Argent Trust Company, the ESOP trustee from the time of its inception, after Argent raised questions about the fairness to the ESOP of the proposed transactions; and (c) selected and appointed Brozen as the ESOP's trustee after determining to fire Argent. Therefore, at all relevant times, the RVNB Board, the Petersons and Generale were fiduciaries to the ESOP under ERISA sections 3(21)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii). Furthermore, as members of the RVNB Board and fiduciaries to the Plan, the Petersons and Generale are parties in interest to the Plan pursuant to ERISA sections 3(14)(A) and (H), 29 U.S.C. §§ 1002(14)(A) and (H).

11. Defendants the Nicole Peterson 2012 Irrevocable Trust and the Brooke Peterson 2012 IrrevocableTrust (the "Peterson Trusts") were assigned 300,000 warrants to acquire shares of RVNB by their parents, Robert and Vasilia Peterson, following the 2012 ESOP stock purchase transaction. At all relevant times, Vasilia Peterson was the trustee of the Peterson Trusts. The Peterson Trusts received more than $28.5 million for their warrants as a result of the 2017 repurchase of the ESOP's stock and the sale of RVNB's assets.

12. The RVNB Holdings, Inc. ESOP was an employee benefit plan as defined by ERISA section 3(3), 29 U.S.C. § 1002(3), and was subject to coverage under ERISA pursuant to section 4(a)(1) of ERISA, 29 U.S.C. § 1003(a)(1). The ESOP also included the RVNB Holdings, Inc. Employee Stock Ownership Trust, which held the ESOP's assets. The ESOP is joined as a party defendant pursuant to Rule 19(a) of the Federal Rules of Civil Procedure solely to assure that complete relief can be granted.

## FACTUAL BACKGROUND

### The ESOP Purchased 100% of RVNB in 2012

13. In 2012, Robert and Vasilia Peterson formed RVNB.

14. In December 2012, RVNB redeemed all of the issued and outstanding common stock owned by the Petersons for about $129 million, which included:

a. $30 million cash to the Petersons;

b. $81.2 million primary promissory note to the Petersons;

c. $17.5 million subordinate note to the Petersons; and

d. 400,000 warrants to the Petersons that, when exercised, amounted to 40% of the fully diluted common stock of RVNB.

15. At the same time, the ESOP purchased 100% of RVNB's equity (520,000 common shares) for $85 million from RVNB. The ESOP financed its purchase with an $85 million note ("ESOP Loan") to RVNB. The redemption of shares from the Petersons and the purchase of those shares by the ESOP described in paragraph 14 and here, occurred simultaneously and is hereinafter referred to as the "Initial ESOP Transaction."

16. The ESOP Loan was a non-recourse loan. The terms of the ESOP Loan required RVNB to make contributions to the ESOP for the ESOP to make loan payments to RVNB on the ESOP Loan.

**The RVNB Board Agrees To Sell RVNB to Sterling**

17. In 2016, the RVNB Board started looking for a buyer for RVNB, even though RVNB was wholly owned by the ESOP, not by RVNB or its Board members. The RVNB Board consisted of the Petersons, Generale, and Mike Paxton. The Board did not inform or consult the ESOP trustee, Argent, the representatives of the Company's sole owner and single shareholder, prior to doing this.

18. In mid-2016, the Board caused RVNB to hire Chartwell Financial Advisory, Inc. ("Chartwell") to provide services to the RVNB Board, not the ESOP, with respect to a potential sale or recapitalization of RVNB. Chartwell identified six private equity firms with qualifying bids and invited them to make management presentations in October 2016. Three private equity firms made final bids.

19. Sterling Investment Partners III, LP ("Sterling") made the winning bid, offering $200 million for all of RVNB's assets and $50 million for other assets and services from the Petersons, for an aggregate price of $250 million. The actual buyer would be Residential Logistics Solutions ("RLS"), a company wholly owned by Sterling.

20. On December 16, 2016, Sterling sent Chartwell an updated proposal for the purchase of RVNB. Even though the ESOP's trustee, Argent, had never even been informed or consulted, the proposal required that the ESOP be fully terminated prior to the purchase, that the ESOP be paid cash for its 52,000 allocated shares, just 10% of the stock the ESOP owned, and

that the ESOP surrender its remaining 468,000 shares in exchange for cancellation of the ESOP Loan instead of receiving a cash payment for those shares.

21. As part of the same transaction, the Petersons and the Peterson Trusts would then, by exercising the warrants they obtained through the 2012 transaction, become the sole owners of RVNB and obtain the vast majority of the proceeds from Sterling's purchase.

22. On January 27, 2017, the Board entered RVNB into an exclusivity agreement with Sterling which required the termination of the ESOP and the sale of its RVNB stock that comprised the RVNB employees' retirement savings.

**Argent is Fired After Raising Concerns About the Proposed Sale to Sterling**

23. Argent Trust Company had been the ESOP's trustee since 2012. Argent was unaware that the Board was shopping RVNB until February 16, 2017, when it received an overview of the proposed Sterling transaction from Chartwell.

24. Argent thereafter began discussions with Stout Risius Ross, LLC ("Stout"), who had been the ESOP trustee's financial advisor since 2012, to prepare a fairness opinion for the proposed sale of RVNB.

25. Argent engaged Stout to evaluate the proposed sale to Sterling/RLS. On May 12, 2017, Stout provided Argent with its preliminary analysis, which Stout and Argent reviewed on May 15, 2017.

26. Argent identified several concerns with the proposed deal, most notably the proposed treatment of the ESOP's unallocated shares, and the division of the proceeds from the proposed Sterling/RLS sale. Argent also thought the payments to Robert Peterson for both a non-compete agreement and a consulting fee under the proposed Sterling/RLS deal were too high.

27. In late May 2017, Argent advised Chartwell of its concerns with the proposed sale.

28. On June 5, 2017, RVNB's Board appointed Neil Brozen as ESOP Trustee for the purpose of approving the terms of the proposed sale to Sterling/RLS and windup of the ESOP.

29. On June 6, 2017, the Board fired Argent.

**Brozen Ignores SC&H's Analysis**

30. Brozen retained SC&H Group, Inc. ("SC&H") to serve as its independent appraiser in connection with RVNB's proposed purchase of the ESOP's shares. SC&H agreed to provide a written valuation of the common stock of RVNB; a written opinion as to whether the consideration to be paid by RVNB for the allocated ESOP shares was not less than fair market value; whether the outstanding principal and accrued interest owed by the ESOP to RVNB under the exempt loan as of the closing date was not less than fair market value of the unallocated ESOP shares; and whether the terms and conditions of the purchase transaction, taken as a whole, were fair to the ESOP from a financial point of view.

31. On August 4, 2017, SC&H completed its valuation work. SC&H valued the ESOP's equity at $44.8 to $58.2 million, including the full dilutive effect of previously issued stock appreciation rights ("SARs") and the warrants previously issued to the Petersons, and subtracting RVNB's outstanding $138 million in external debt from the Initial ESOP Transaction, including the debt incurred to buy the Petersons' stock.

**The ESOP Repurchase Transaction & Sale to Sterling/RLS**

32. On August 6, 2017, the Petersons and the Peterson Trusts exercised their warrants. After giving effect to the surrender of certain shares in payment of the exercise price of such warrants, the warrants were exercised as follows: (1) Nicole Peterson Trust exercised

141,593 shares; (2) Brooke Peterson Trust exercised 141,593 shares; (3) Vasilia Peterson exercised 90,620 shares; and (4) Robert Peterson exercised 3,776 shares.

33. The next day, on August 7, 2017, Brozen caused the ESOP to enter into a Stock Repurchase Agreement whereby RVNB "repurchased" all of the ESOP's shares of RVNB stock on the following terms dictated by the Board: (1) cancellation of the Current ESOP Loan Balance of $81,769,980; (2) $7.0 million in cash; and (3) a Gross Up Amount of $5.5 million upon the closing of the sale of RVNB to Sterling/RLS. Hereinafter referred to as the "Repurchase Transaction."

34. As a result of the Repurchase Transaction and the exercise of the Petersons' and the Peterson Trusts' warrants, the Petersons and the Peterson Trusts became the 100% owners of RVNB.

35. On September 29, 2017, the Petersons (on behalf of themselves and the Peterson Trusts) sold substantially all of their business operations to Sterling/RLS for $252 million, of which $200 million was attributed to the sale of RVNB's equity value formerly owned by the ESOP. The remaining $52 million was attributed to non-RVNB equity items, including a non-compete agreement with Robert Peterson for $4.2 million, a consulting agreement with Robert Peterson for $10 million, and the purchase of an external company for $37.8 million.

**Brozen Approved the ESOP's Sale of Its Shares For Much Less Than Their Value**

36. Although SC&H valued the ESOP's equity at $44.8 to $58.2 million, Brozen sold all of the ESOP's shares, representing its 100% ownership of RVNB, for $12.5 million and cancellation of the ESOP note.

37. The Petersons, Generale, and Brozen approved this underpayment based on the notion that the ESOP was not entitled to full payment for the value of its 100% ownership of

RVNB, but rather was only entitled to payment for the shares representing the percentage of the ESOP loan that had been paid off (the allocated shares), and not for the rest of the shares it owned (the unallocated shares). They took the position that the ESOP was not entitled to payment for those shares, which represented 90% of the shares owned by the ESOP, because of the outstanding amount of the ESOP loan, and that those should be surrendered by the ESOP in exchange for cancelling the loan.

38. But the ESOP loan was a non-recourse loan. RVNB was required to make the contributions to the ESOP to pay for the loan. The ESOP had a right to force a third party (RVNB) to pay off its loan. Cancellation had no economic impact on and no economic value for the ESOP or RVNB because RVNB was required to make the payments (to itself through contributions to the ESOP) to pay off the ESOP Loan.

39. Nor was there any Plan provision justifying an exchange of the ESOP's unallocated shares for cancellation of the note. While unallocated shares were pledged as security in the event the ESOP defaulted on the ESOP Loan, the ESOP never defaulted on the ESOP Loan. In fact, the default provisions of the ESOP Loan contained an exception which prevented the ESOP from being in default if the reason for its failure to make payments on the loan was due to the failure of RVNB to make the required contributions to the ESOP.

40. Selling the ESOP's shares for $12.5 million and surrendering the value of the vast majority of the ESOP's shares in exchange for cancellation of the ESOP loan transferred the overwhelming majority of the $44.8 to $58.2 million economic value of the ESOP's shares to the Petersons and the Peterson Trusts.

41. Brozen authorized the ESOP to sell all of its shares to RVNB in the August 2017 transaction for significantly less than they were worth.

42. Brozen's sale of the ESOP's shares to RVNB also violated the ESOP Plan Document.

43. The Plan Document has specific provisions governing the sale of company stock as well as the treatment of unallocated shares:

a. Article V, Section 5-2, entitled "Sales of Company Stock," states: "The Trustee may sell shares of Company Stock to any person, including the Company. Any sale must be made at a price not less than the fair market value of the shares sold as of the date of the sale, as determined by the Trustee based upon a valuation by an independent appraiser. The Trustee may not sell shares of Company Stock in a sale that would be a non-exempt 'prohibited transaction' within the meaning of the Code or ERISA."

44. Despite having this information and being mandated by the Plan Document to obtain the value of the shares as valued by an independent appraiser, Brozen acted against the interests of the participants by selling all of the ESOP's shares of RVNB for millions of dollars less than they were worth, as reflected in the SC&H valuation.

**The Petersons and Generale Knew the ESOP Was Not Getting Full Fair Market Value for Its Shares**

45. The Board negotiated with Sterling all of the material terms of the Sterling/RLS transaction.

46. The Petersons and Generale knew all of the material terms of the Sterling/RLS transaction were dictated by the Petersons. The material terms of the transaction included, among other things, that the ESOP would not receive payment for the full fair market value of the majority of its shares.

47. The Petersons and Generale negotiated the terms of the Sterling/RLS sale without knowledge or involvement of the ESOP trustee, Argent, the representative of RVNB's sole shareholder and 100% owner at the time, and against the interests of the ESOP (the owner of RVNB) and its participants.

48. The Petersons, Generale, and the RVNB Board set the terms for the Repurchase Transaction. After Argent raised concerns about the proposed transaction and its fairness to the ESOP, they fired Argent and hired Brozen to approve the deal.

49. The Petersons, Generale, and the Board knew that the ESOP was not going to receive full value for its 100% ownership of RVNB, and that the ESOP was going to surrender most of the value for 90% of its shares in exchange for cancellation of the ESOP loan. In fact, that was their design, with the Petersons becoming the sole owners of RVNB by exercising their warrants, and receiving the bulk of the proceeds from the sale to Sterling/RLS.

50. The Petersons orchestrated the Repurchase Transaction and, as a result of the 2017 transactions, the Petersons and the Peterson Trusts, received approximately $54 million from the sale of RVNB to Sterling/RLS, together with payments to the Petersons of $63.6 million for the outstanding balance on their notes from the 2012 Initial Transaction and $52 million for a non-compete and consulting agreement and other non-RVNB assets.

51. The Petersons, Generale, and the Peterson Trusts (through Vasilia Peterson, their trustee) knew the ESOP was not getting paid the full fair market value for 100% of its equity in RVNB.

## FIRST CLAIM FOR RELIEF

**(Against Defendant Brozen For Breaching Fiduciary Duties Of Loyalty, Prudence, and Adherence To Plan Documents, and For Engaging in a Prohibited Transaction)**

52. Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 51 inclusive.

53. As the ESOP's fiduciary, Brozen had a duty to act prudently and solely in the interest of the ESOP and its participants and beneficiaries. These duties required Brozen to, among other things, undertake a good-faith investigation of the merits of the Repurchase Transaction and the proposed sale of RVNB's assets and any red flags that arose; conduct good faith negotiations over the Repurchase Transaction's price and other material terms; and thoroughly review, analyze, and question any valuation report on which it relied. Brozen failed in each of these respects.

54. Brozen did not negotiate in good faith or prudently or loyally over the stock repurchase price and terms. In fact, there were no negotiations at all regarding returning the ESOP's unallocated shares to RVNB for cancellation of the internal loan between RVNB and the ESOP. The Petersons dictated those terms to Brozen as part of the package and Brozen acquiesced. As a result, Brozen approved the sale of the ESOP's shares for tens of millions of dollars less than they were worth.

55. By failing in all of the foregoing respects, Brozen:

a. caused the surrender of valuable ESOP assets, the Company's stock, for significantly less than fair market value;

b. failed to discharge his duties with respect to the ESOP solely in the interest of the participants and beneficiaries of the ESOP and for the

exclusive purpose of providing benefits and defraying reasonable expenses of plan administration, in violation of ERISA section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

c. failed to act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B); and

d. failed to act in accordance with the documents and instruments governing the ESOP insofar as such documents and instruments are consistent with ERISA, in violation of ERISA section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

56. As a fiduciary to the ESOP, Brozen was prohibited from causing or permitting the ESOP to engage in a non-exempt transaction that constitutes the sale or exchange of property between the ESOP and a "party in interest" to the ESOP, and was prohibited from transferring any assets of the ESOP to a party in interest. 29 U.S.C. §§ 1106(a)(1)(A) and (D).

57. As plan administrator and plan sponsor of the ESOP, the Company is a "party in interest" pursuant to 29 U.S.C. §§ 1002(14)(A) and (C).

58. As members of RVNB's Board of Directors, and thus fiduciaries to the Plan, Robert Peterson and Vasilia Peterson are each a "party in interest" to the ESOP under ERISA sections 3(14)(A) and (H), 29 U.S.C. §§ 1002(14)(A) and (H).

59. By causing the ESOP to engage in a transaction with RVNB and the Petersons and to sell its stock at a price below fair market value, Brozen:

a. caused the ESOP to engage in a transaction that he knew or should have known constituted the sale or exchange, or leasing, of any property between the ESOP and parties in interest, in violation of ERISA section 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A); and

b. caused the ESOP to engage in a transaction that he knew or should have known constituted direct or indirect transfer of the ESOP's assets to, or use of the ESOP's assets by or for the benefit of, parties in interest, in violation of ERISA section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

60. As a result of the conduct described above, Brozen caused losses to the ESOP for which he is liable pursuant to ERISA section 409(a), 29 U.S.C. § 1109(a).

**SECOND CLAIM FOR RELIEF**

**(Against Defendants the Petersons and Generale For Breaching Fiduciary Duties Of Loyalty, Prudence, and Adherence To Plan Documents, and For Engaging in a Prohibited Transaction)**

61. Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 60 inclusive.

62. As fiduciaries to the ESOP, the Petersons and Generale had a duty to act prudently and solely in the interest of the ESOP and its participants and beneficiaries. These duties required, among other things, undertaking a good-faith investigation of the merits of the Repurchase Transaction and the sale of RVNB's assets and any red flags that arose; conducting good faith negotiations over the Repurchase Transaction's price and other material terms; and thoroughly reviewing, analyzing, and questioning any valuation report on which it relied. The Petersons and Generale failed in each of these respects.

63. By failing in these respects, the Petersons and Generale:

a. caused the surrender of valuable ESOP assets, the Company's stock, for significantly less than fair market value;

b. failed to discharge their duties with respect to the ESOP solely in the interest of the participants and beneficiaries of the ESOP and for the exclusive purpose of providing benefits and defraying reasonable expenses of plan administration, in violation of ERISA section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

c. failed to act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B); and

d. failed to act in accordance with the documents and instruments governing the ESOP insofar as such documents and instruments are consistent with ERISA, in violation of ERISA section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

64. By virtue of their decision, as members of the RVNB Board, to appoint Brozen as the ESOP's Trustee, and by their authority to remove Argent as Trustee, the Petersons and Generale had a fiduciary duty to monitor Brozen.

65. The Petersons and Generale knew or should have known that Brozen's investigation of RVNB's application of fair market value of the ESOP's shares was flawed and that the ESOP Transaction was illegal under ERISA. The Petersons and Generale should have fired or replaced the trustee in order to ensure that that the investigation of RVNB's fair market

value and the trustee's representation of the ESOP's interests satisfied ERISA's requirements. Instead, they fired the trustee that questioned the proposed transactions and replaced it with one to their liking—Brozen. As a result, the Petersons and Generale failed to prudently and loyally fulfill their duty to monitor Brozen, the ESOP's Trustee, in violation of ERISA sections 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B).

66. As fiduciaries of the ESOP, the Petersons and Generale were prohibited from causing or permitting the ESOP to engage in a non-exempt transaction that constitutes the sale or exchange of property between the ESOP and a "party in interest" to the ESOP, and were prohibited from transferring any assets of the ESOP to a party in interest. 29 U.S.C. §§ 1106(a)(1)(A) and (D).

67. By causing the ESOP to engage in a transaction with RVNB and the Petersons and to sell its stock for less than full fair market value, the Petersons and Generale:

a. caused the ESOP to engage in a transaction that they knew or should have known constituted the sale or exchange, or leasing, of any property between the ESOP and parties in interest, in violation of ERISA section 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A); and

b. caused the ESOP to engage in a transaction that they knew or should have known constituted direct or indirect transfer of the ESOP's assets to, or use of the ESOP's assets by or for the benefit of, parties in interest, in violation of ERISA section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

68. As a result of the conduct as described above, the Petersons and Generale caused losses to the ESOP for which they are jointly and severally liable pursuant to ERISA section 409(a), 29 U.S.C. § 1109(a).

**THIRD CLAIM FOR RELIEF**

**(Against Defendants the Petersons For Self-Dealing)**

69. Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 68 inclusive.

70. As fiduciaries and members of the RVNB Board, the Petersons entered into the 2017 transaction for the purpose of benefitting themselves and the Peterson Trusts. By these actions and others described above, the Petersons:

a. dealt with the assets of the ESOP in their own interest or for their own account in violation of ERISA section 406(b)(1), 29 U.S.C. § 1106(b)(1); and

b. acted in the transaction involving the ESOP on behalf of a party whose interests were adverse to the ESOP's interests, in violation of ERISA section 406(b)(2), 29 U.S.C. § 1106(b)(2).

71. As a result of the conduct as described above, the Petersons caused losses to the ESOP for which they are jointly and severally liable pursuant to ERISA section 409(a), 29 U.S.C. § 1109(a).

**FOURTH CLAIM FOR RELIEF**

**(Against Defendants Brozen, the Petersons, Generale For Co-Fiduciary Liability For Each Other's Breaches)**

72. Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 71 inclusive.

73. Brozen, the Petersons, and Generale are also liable as fiduciaries for the fiduciary breaches of their co-fiduciaries under ERISA section 405(a), which makes a fiduciary "liable for

a breach of fiduciary responsibility of another fiduciary with respect to the same plan . . . (1) if he participates knowingly in . . . an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." 29 U.S.C. §§ 1105(a)(1), (2), and (3).

74. As set forth above, Brozen, the Petersons, and Generale knew that the negotiations over the Repurchase Transaction were flawed and not an arms-length negotiation, and that the Repurchase Transaction caused the ESOP to give up its RVNB stock for less than its full fair market value. Yet, they did not take any action to prevent or remedy these breaches. As a result, Brozen, the Petersons, and Generale "participate[d] knowingly" in the breaches of each other's fiduciary duties to the ESOP, and are jointly and severally liable for these breaches pursuant to ERISA section 405(a)(1), 29 U.S.C. § 1105(a)(1).

75. By failing in their duty to monitor each other in their violations of ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1), Brozen, the Petersons, and Generale enabled each other to engage in a prohibited transaction and breach their fiduciary duties to the ESOP, and are jointly and severally liable for each other's breaches pursuant to ERISA section 405(a)(2), 29 U.S.C. § 1105(a)(2).

76. Despite knowing that Brozen, the Petersons, and Generale had breached fiduciary duties to the ESOP as set forth above, Brozen, the Petersons, and Generale failed to make reasonable efforts to fully remedy the breaches, and are jointly and severally liable for each other's breaches pursuant to ERISA section 405(a)(3), 29 U.S.C. § 1105(a)(3).

77. As a result of the conduct as described above, Brozen, the Petersons, and Generale caused losses to the ESOP for which they are jointly and severally liable pursuant to ERISA section 409(a), 29 U.S.C. § 1109(a).

**FIFTH CLAIM FOR RELIEF**

**(Against Defendants the Petersons and the Peterson Trusts For Knowingly Participating in a Prohibited Transaction)**

78. Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 77 inclusive.

79. The Petersons and the Peterson Trusts knew or should have known about the circumstances that rendered the Repurchase Transaction illegal under ERISA. Specifically, the Peterson, and the Peterson Trusts knew that Brozen failed to adequately review and question the terms of the Repurchase Transaction and the sale to Sterling/RLS, failed to negotiate in good faith, and caused the ESOP to exchange RVNB stock for less than its full fair market value. Yet, they did not take any action to prevent or remedy the Repurchase Transaction. The Petersons should have declined to participate in the illegal Repurchase Transaction. The Petersons, as controlling members of the Board as well as responsible for the Peterson Trusts, should have replaced Brozen as ESOP Trustee to ensure that that the investigation of the Repurchase Transaction was correct and the ESOP received fair market value and that Brozen's representation of the ESOP's interests had satisfied ERISA's requirements. Instead, the Petersons and the Peterson Trusts actively supported the transaction, knowing of Brozen's fiduciary breaches, and obtained millions of dollars of benefits from them.

80. Therefore, the Petersons and the Peterson Trusts knowingly participated in Brozen's violation of ERISA sections 404(a)(1)(A), (B), and (D), 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D) and sections 406(a)(1)(A) and (D), 29 U.S.C. §§ 1106(a)(1)(A) and (D).

81. The Petersons and the Peterson Trusts benefitted from the ESOP's sale of its RVNB stock in the Repurchase Transaction and are liable to disgorge or otherwise restore to the ESOP the excessive amount under ERISA section 502(a)(5), 29 U.S.C. § 1132(a)(5).

**PRAYER FOR RELIEF**

WHEREFORE, the Secretary of Labor prays that this Court enter an Order:

1. Requiring Defendants to restore all losses caused to the ESOP and its former participants as a result of their fiduciary breaches, plus interest.

2. Requiring Defendants to disgorge, and restore to the ESOP and its former participants, all fees earned from the ESOP Transaction.

3. Enjoining Defendants from acting as trustee, fiduciary or service provider in any ESOP transaction.

4. Requiring Defendants to restore all losses caused to the ESOP and its former participants as a result of each other's fiduciary breaches, plus interest.

5. Requiring the Petersons and the Peterson Trusts to disgorge, and restore to the ESOP and its former participants, all unjust profits realized from the ESOP Transaction.

6. Granting such other relief as may be equitable, just and proper.

Dated: October 29, 2021

Respectfully Submitted,

SEEMA NANDA
Solicitor of Labor

G. WILLIAM SCOTT
Associate Solicitor

JOHN RAINWATER
Regional Solicitor
Dallas Regional Office

WAYNE R. BERRY
Deputy Associate Solicitor

ROBERT A. GOLDBERG
Counsel for ERISA

By:

TINA D. DAVILA
Lead Attorney
Senior Trial Attorney
Texas Bar No. 24027549
Davila.Tina.D@dol.gov
Direct: 972-850-3124

STEPHEN SILVERMAN
Senior Trial Attorney
Maryland Bar No. 0712120277
Silverman.Stephen@dol.gov
Direct: 202-693-5623

Allyson D. Gault
ALLYSON D. GAULT
Trial Attorney
Texas Bar No. 24093773
Gault.Allyson.D@dol.gov
Direct: 972-850-3148

ALYSSA C. GEORGE
Trial Attorney
D.C. Bar No. 187659
George.Alyssa.C@dol.gov
Direct: 202-693-5609

United States Department of Labor
Office of the Solicitor
525 South Griffin Street, Suite 501
Dallas, TX 75202-5020
Facsimile: 972-850-3101

Attorneys for Plaintiff,
Martin J. Walsh, Secretary,
U.S. Department of Labor