# EXHIBIT C

AGREEMENT CONCERNING FIDUCIARY ENGAGEMENTS AND PROCESS REQUIREMENTS FOR EMPLOYER STOCK TRANSACTIONS

The Secretary of the United States Department of Labor (the "Secretary") and GreatBanc Trust Company ("the Trustee"), by and through their attorneys, have agreed that the policies and procedures described below apply whenever the Trustee serves as a trustee or other fiduciary of any employee stock ownership plan subject to Title I of ERISA ("ESOP") in connection with transactions in which the ESOP is purchasing or selling, is contemplating purchasing or selling, or receives an offer to purchase or sell, employer securities that are not publicly traded.

A. Selection and Use of Valuation Advisor – General. In all transactions involving the purchase or sale of employer securities that are not publicly traded, the Trustee will hire a qualified valuation advisor, and will do the following:

1. prudently investigate the valuation advisor's qualifications;
2. take reasonable steps to determine that the valuation advisor receives complete, accurate and current information necessary to value the employer securities; and
3. prudently determine that its reliance on the valuation advisor's advice is reasonable before entering into any transaction in reliance on the advice.

B. Selection of Valuation Advisor – Conflicts of Interest. The Trustee will not use a valuation advisor for a transaction that has previously performed work – including but not limited to a "preliminary valuation" – for or on behalf of the ESOP sponsor (as distinguished from the ESOP), any counterparty to the ESOP involved in the transaction, or any other entity that is structuring the transaction (such as an investment bank) for any party other than the ESOP or its trustee. The Trustee will not use a valuation advisor for a transaction that has a familial or corporate relationship (such as a parent-subsidiary relationship) to any of the aforementioned persons or entities. The Trustee will obtain written confirmation from the valuation advisor selected that none of the above-referenced relations exist.

C. Selection of Valuation Advisor – Process. In selecting a valuation advisor for a transaction involving the purchase or sale of employer securities, the Trustee will prepare a written analysis addressing the following topics:

1. The reason for selecting the particular valuation advisor;
2. A list of all the valuation advisors that the Trustee considered;
3. A discussion of the qualifications of the valuation advisors that the Trustee considered;
4. A list of references checked and discussion of the references' views on the valuation advisors;
5. Whether the valuation advisor was the subject of prior criminal or civil proceedings; and
6. A full explanation of the bases for concluding that the Trustee’s selection of the valuation advisor was prudent.

If the Trustee selects a valuation advisor from a roster of valuation advisors that it has previously used, the Trustee need not undertake anew the analysis outlined above if the following conditions are satisfied: (a) the Trustee previously performed the analysis in connection with a prior engagement of the valuation advisor; (b) the previous analysis was completed within the 15 month period immediately preceding the valuation advisor’s selection for a specific transaction; (c) the Trustee documents in writing that it previously performed the analysis, the date(s) on which the Trustee performed the analysis, and the results of the analysis; and (d) the valuation advisor certifies that the information it previously provided pursuant to item (5) above is still accurate.

D. <u>Oversight of Valuation Advisor – Required Analysis</u>. In connection with any purchase or sale of employer securities that are not publicly traded, the Trustee will request that the valuation advisor document the following items in its valuation report,[1] and if the valuation advisor does not so document properly, the Trustee will prepare supplemental documentation of the following items to the extent they were not documented by the valuation advisor:

---

[1] As used herein, "valuation report" means the final valuation report as opposed to previous versions or drafts.

1. Identify in writing the individuals responsible for providing any projections reflected in the valuation report, and as to those individuals, conduct reasonable inquiry as to: (a) whether those individuals have or reasonably may be determined to have any conflicts of interest in regard to the ESOP (including but not limited to any interest in the purchase or sale of the employer securities being considered); (b) whether those individuals serve as agents or employees of persons with such conflicts, and the precise nature of any such conflicts: and (c) record in writing how the Trustee and the valuation advisor considered such conflicts in determining the value of employer securities;
2. Document in writing an opinion as to the reasonableness of any projections considered in connection with the proposed transaction and explain in writing why and to what extent the projections are or are not reasonable. At a minimum, the analysis shall consider how the projections compare to, and whether they are reasonable in light of, the company's five-year historical averages and/or medians and the five-year historical averages and/or medians of a group of comparable public companies (if any exist) for the following metrics, unless five-year data are unavailable (in which case, the analyses shall use averages extending as far back as possible):
    a. Return on assets
    b. Return on equity
    c. EBIT margins
    d. EBITDA margins
    e. Ratio of capital expenditures to sales
    f. Revenue growth rate
    g. Ratio of free cash flows (of the enterprise) to sales
3. If it is determined that any of these metrics should be disregarded in assessing the reasonableness of the projections, document in writing both the calculations of the metric (unless calculation is impossible) and the basis for the conclusion that the

metric should be disregarded. The use of additional metrics to evaluate the reasonableness of projections other than those listed in section D(2)(a)-(g) above is not precluded as long as the appropriateness of those metrics is documented in writing. If comparable companies are used for any part of a valuation – whether as part of a Guideline Public Company method, to gauge the reasonableness of projections, or for any other purpose – explain in writing the bases for concluding that the comparable companies are actually comparable to the company being valued, including on the basis of size, customer concentration (if such information is publicly available), and volatility of earnings. If a Guideline Public Company analysis is performed, explain in writing any discounts applied to the multiples selected, and if no discount is applied to any given multiple, explain in significant detail the reasons.

4. If the company is projected to meet or exceed its historical performance or the historical performance of the group of comparable public companies on any of the metrics described in paragraph D(2) above, document in writing all material assumptions supporting such projections and why those assumptions are reasonable.
5. To the extent that the Trustee or its valuation advisor considers any of the projections provided by the ESOP sponsor to be unreasonable, document in writing any adjustments made to the projections.
6. If adjustments are applied to the company's historical or projected financial metrics in a valuation analysis, determine and explain in writing why such adjustments are reasonable.
7. If greater weight is assigned to some valuation methods than to others, explain in writing the weighting assigned to each valuation method and the basis for the weightings assigned.
8. Consider, as appropriate, how the plan document provisions regarding stock distributions, the duration of the ESOP loan, and the age and tenure of the ESOP participants, may affect the ESOP sponsor's prospective repurchase obligation, the prudence of the stock purchase, or the fair market value of the stock.

9. Analyze and document in writing (a) whether the ESOP sponsor will be able to service the debt taken on in connection with the transaction (including the ability to service the debt in the event that the ESOP sponsor fails to meet the projections relied upon in valuing the stock); (b) whether the transaction is fair to the ESOP from a financial point of view; (c) whether the transaction is fair to the ESOP relative to all the other parties to the proposed transaction; (d) whether the terms of the financing of the proposed transaction are market-based, commercially reasonable, and in the best interests of the ESOP; and (e) the financial impact of the proposed transaction on the ESOP sponsor, and document in writing the factors considered in such analysis and conclusions drawn therefrom.

E. Financial Statements.

1. The Trustee will request that the company provide the Trustee and its valuation advisor with audited unqualified financial statements prepared by a CPA for the preceding five fiscal years, unless financial statements extending back five years are unavailable (in which case, the Trustee will request audited unqualified financial statement extending as far back as possible).

2. If the ESOP Sponsor provides to the Trustee or its valuation advisor unaudited or qualified financial statements prepared by a CPA for any of the preceding five fiscal years (including interim financial statements that update or supplement the last available audited statements), the Trustee will determine whether it is prudent to rely on the unaudited or qualified financial statements notwithstanding the risk posed by using unaudited or qualified financial statements.

3. If the Trustee proceeds with the transaction notwithstanding the lack of audited unqualified financial statements prepared by a CPA (including interim financial statements that update or supplement the last available audited statements), the Trustee will document the bases for the Trustee's reasonable belief that it is prudent to rely on the financial statements, and explain in writing how it accounted for any risk posed by using qualified or unaudited statements. If the Trustee does not believe that it can reasonably

conclude that it would be prudent to rely on the financial statements used in the valuation report, the Trustee will not proceed with the transaction. While the Trustee need not audit the financial statements itself, it must carefully consider the reliability of those statements in the manner set forth herein.

F. <u>Fiduciary Review Process – General</u>. In connection with any transaction involving the purchase or sale of employer securities that are not publicly traded, the Trustee agrees to do the following:

1. Take reasonable steps necessary to determine the prudence of relying on the ESOP sponsor's financial statements provided to the valuation advisor, as set out more fully in paragraph E above;
2. Critically assess the reasonableness of any projections (particularly management projections), and if the valuation report does not document in writing the reasonableness of such projections to the Trustee's satisfaction, the Trustee will prepare supplemental documentation explaining why and to what extent the projections are or are not reasonable;
3. Document in writing its bases for concluding that the information supplied to the valuation advisor, whether directly from the ESOP sponsor or otherwise, was current, complete, and accurate.

G. <u>Fiduciary Review Process – Documentation of Valuation Analysis</u>. The Trustee will document in writing its analysis of any final valuation report relating to a transaction involving the purchase or sale of employer securities. The Trustee's documentation will specifically address each of the following topics and will include the Trustee's conclusions regarding the final valuation report's treatment of each topic and explain in writing the bases for its conclusions:

1. Marketability discounts;
2. Minority interests and control premiums;
3. Projections of the company's future economic performance and the reasonableness or unreasonableness of such projections, including, if applicable, the bases for assuming

that the company's future financial performance will meet or exceed historical performance or the expected performance of the relevant industry generally;

4. Analysis of the company's strengths and weaknesses, which may include, as appropriate, personnel, plant and equipment, capacity, research and development, marketing strategy, business planning, financial condition, and any other factors that reasonably could be expected to affect future performance;
5. Specific discount rates chosen, including whether any Weighted Average Cost of Capital used by the valuation advisor was based on the company's actual capital structure or that of the relevant industry and why the chosen capital structure weighting was reasonable;
6. All adjustments to the company's historical financial statements;
7. Consistency of the general economic and industry-specific narrative in the valuation report with the quantitative aspects of the valuation report;
8. Reliability and timeliness of the historical financial data considered, including a discussion of whether the financial statements used by the valuation advisor were the subject of unqualified audit opinions, and if not, why it would nevertheless be prudent to rely on them;
9. The comparability of the companies chosen as part of any analysis based on comparable companies;
10. Material assumptions underlying the valuation report and any testing and analyses of these assumptions;
11. Where the valuation report made choices between averages, medians, and outliers (e.g., in determining the multiple(s) used under the “guideline company method” of valuation), the reasons for the choices;
12. Treatment of corporate debt;
13. Whether the methodologies employed were standard and accepted methodologies and the bases for any departures from standard and accepted methodologies;

14. The ESOP sponsor's ability to service any debt or liabilities to be taken on in connection with the proposed transaction;

15. The proposed transaction's reasonably foreseeable risks as of the date of the transaction;

16. Any other material considerations or variables that could have a significant effect on the price of the employer securities.

H. <u>Fiduciary Review Process – Reliance on Valuation Report</u>.

1. The Trustee, through its personnel who are responsible for the proposed transaction, will do the following, and document in writing its work with respect to each:

a. Read and understand the valuation report;

b. Identify and question the valuation report's underlying assumptions;

c. Make reasonable inquiry as to whether the information in the valuation report is materially consistent with information in the Trustee's possession;

d. Analyze whether the valuation report's conclusions are consistent with the data and analyses; and

e. Analyze whether the valuation report is internally consistent in material aspects.

2. The Trustee will document in writing the following: (a) the identities of its personnel who were primarily responsible for the proposed transaction, including any person who participated in decisions on whether to proceed with the transaction or the price of the transaction; (b) any material points as to which such personnel disagreed and why; and (c) whether any such personnel concluded or expressed the belief prior to the Trustee’s approval of the transaction that the valuation report's conclusions were inconsistent with the data and analysis therein or that the valuation report was internally inconsistent in material aspects.

3. If the individuals responsible for performing the analysis believe that the valuation report's conclusions are not consistent with the data and analysis or that the valuation report is internally inconsistent in material respects, the Trustee will not proceed with the transaction.

I. <u>Preservation of Documents</u>. In connection with any transaction completed by the Trustee through its committee or otherwise, the Trustee will create and preserve, for at least six (6) years, notes and records that document in writing the following:

1. The full name, business address, telephone number and email address at the time of the Trustee's consideration of the proposed transaction of each member of the Trustee's Fiduciary Committee (whether or not he or she voted on the transaction) and any other Trustee personnel who made any material decision(s) on behalf of the Trustee in connection with the proposed transaction, including any of the persons identified pursuant to H(2) above;
2. The vote (yes or no) of each member of the Trustee's Fiduciary Committee who voted on the proposed transaction and a signed certification by each of the voting committee members and any other Trustee personnel who made any material decision(s) on behalf of the Trustee in connection with the proposed transaction that they have read the valuation report, identified its underlying assumptions, and considered the reasonableness of the valuation report's assumptions and conclusions;
3. All notes and records created by the Trustee in connection with its consideration of the proposed transaction, including all documentation required by this Agreement;
4. All documents the Trustee and the persons identified in 1 above relied on in making their decisions;
5. All electronic or other written communications the Trustee and the persons identified in 1 above had with service providers (including any valuation advisor), the ESOP sponsor, any non-ESOP counterparties, and any advisors retained by the ESOP sponsor or non-ESOP counterparties.

J. <u>Fair Market Value</u>. The Trustee will not cause an ESOP to purchase employer securities for more than their fair market value or sell employer securities for less than their fair market value. The DOL states that the principal amount of the debt financing the transaction, irrespective of the interest rate, cannot exceed the securities' fair market value. Accordingly, the Trustee will not cause an ESOP to engage in a leveraged stock purchase transaction in which the

Case 3:12-cv-01648-R-DTB Document 160-1 Filed 06/02/14 Page 22 of 24 Page ID #:3470

principal amount of the debt financing the transaction exceeds the fair market value of the stock acquired with that debt, irrespective of the interest rate or other terms of the debt used to finance the transaction.

K. <u>Consideration of Claw-Back</u>. In evaluating proposed stock transactions, the Trustee will consider whether it is appropriate to request a claw-back arrangement or other purchase price adjustment(s) to protect the ESOP against the possibility of adverse consequences in the event of significant corporate events or changed circumstances. The Trustee will document in writing its consideration of the appropriateness of a claw-back or other purchase price adjustment(s).

L. <u>Other Professionals</u>. The Trustee may, consistent with its fiduciary responsibilities under ERISA, employ, or delegate fiduciary authority to, qualified professionals to aid the Trustee in the exercise of its powers, duties, and responsibilities as long as it is prudent to do so.

M. This Agreement is not intended to specify all of the Trustee's obligations as an ERISA fiduciary with respect to the purchase or sale of employer stock under ERISA, and in no way supersedes any of the Trustee's obligations under ERISA or its implementing regulations.

IN WITNESS WHEREOF, the Secretary and GreatBanc have executed this Agreement in duplicate originals on the dates indicated by their respective signatures.

| FOR THE SECRETARY: | FOR GREATBANC TRUST COMPANY: |
|---|---|
| PATRICIA SMITH<br>Solicitor of Labor | By:____________________ Date:_______ |
| G. WILLIAM SCOTT<br>Acting Associate Solicitor<br>Plan Benefits Security Division | Title:____________________ |

RISA D. SANDLER
Counsel for Fiduciary Litigation

ROBERT L. FURST
Senior Trial Attorney

*Syma Ahmad* Date: *6/2/2014*

SYMA AHMAD
JEFFREY M. HAHN
DAVID M. ELLIS
Attorneys for Plaintiff

IN WITNESS WHEREOF, the Secretary and GreatBanc have executed this Agreement in duplicate originals on the dates indicated by their respective signatures.

FOR THE SECRETARY:

PATRICIA SMITH
Solicitor of Labor

G. WILLIAM SCOTT
Acting Associate Solicitor
Plan Benefits Security Division

RISA D. SANDLER
Counsel for Fiduciary Litigation

ROBERT L. FURST
Senior Trial Attorney

______________________________ Date:_______
SYMA AHMAD
JEFFREY M. HAHN
DAVID M. ELLIS
Attorneys for Plaintiff

FOR GREATBANC TRUST COMPANY:

By: ____________________ Date: 6/1/2014

Title: Chairman