# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PIETRANGELO | : | CIVIL ACTION NO. 04-cv-3223 |
| v. | : | (GEB) |
| NUI CORPORATION, et al. | : | |

DECLARATION OF ALBERT J. GANTER

STATE OF NEW JERSEY )
) ss.
COUNTY OF UNION )

ALBERT J. GANTER, hereby declares under penalty of perjury:

1. I am the Director of Human Resources of NUI Corporation ("NUI"). I have responsibility to oversee the day-to-day administration of the NUI Corporation Savings And Investment Plan For Collective Bargaining Employees and the NUI Corporation Savings And Investment Plan (collectively, the "Plans") under the direction of the Savings and Investment Plan Committee, the committee appointed by NUI to administer the Plans.

2. Annexed hereto as Exhibit 1 is a true and accurate copy of the NUI Corporation Savings And Investment Plan For Collective Bargaining Employees, including amendments that were in effect during the alleged class period.

3. Annexed hereto as Exhibit 2 is a true and accurate copy of the NUI Corporation Savings And Investment Plan, including amendments that were in effect during the alleged class period.

Albert J. Ganter

1

# NUI CORPORATION
# SAVINGS AND INVESTMENT PLAN
# FOR COLLECTIVE BARGAINING EMPLOYEES

Plan and Trust Agreement

As Amended and Restated
Effective January 1, 1997

NUI Corporation Savings and Investment Plan for Collective Bargaining Employees and Trust

As Amended and Restated Effective January 1, 1997

NUI Corporation established the NUI Corporation Savings and Investment Plan for Collective Bargaining Employees (the "Plan") effective April 1, 1995 for the benefit of eligible employees of the Company and its participating affiliates. The Plan is intended to constitute a qualified profit sharing plan, as described in Code section 401(a), which includes a qualified cash or deferred arrangement, as described in Code section 401(k).

The provisions of this Plan and Trust relating to the Trustee constitute the trust agreement which is entered into by and between NUI Corporation and Merrill Lynch Trust Company, as successor trustee to Wells Fargo Bank, National Association. The Trust is intended to be tax exempt as described under Code section 501(a).

The Plan as set forth in this document, is hereby amended and restated effective as of January 1, 1997 to with the Uruguay Round Agreements Act, the Uniformed Services Employment and Reemployment Rights Act of 1994, the Small Business Job Protection Act of 1996, the Taxpayer Relief Act of 1997, the Internal Revenue Service Restructuring and Reform Act of 1998, the Community Renewal Relief Act of 2000 and subsequent legislation.

Benefits for any Participant, or Beneficiary of such Participant, who retired, died or terminated employment at any time prior to January 1, 1997 will be determined under the provisions of the Plan as in effect on the date of the Participant's retirement, death, or termination, unless additional benefits are specifically provided by a subsequent amendment to the Plan.

IN WITNESS WHEREOF, NUI Corporation has caused this instrument to be executed by its duly authorized officers this _____ day of __________, 2002 to be effective as of ______________.

NUI Corporation

By:____________________________

Title:___________________________

## TABLE OF CONTENTS

**ARTICLE 1**
DEFINITIONS ....................................................................1

**ARTICLE 2**
ELIGIBILITY ....................................................................8
2.1 Eligibility ....................................................................8
2.2 Ineligible Employees ....................................................................8
2.3 Ineligible or Former Participants ....................................................................8

**ARTICLE 3**
PARTICIPANT CONTRIBUTIONS ....................................................................9
3.1 Pre-Tax Contribution Election ....................................................................9
3.2 After-Tax Contribution Election ....................................................................9
3.3 Changing a Contribution Election ....................................................................9
3.4 Revoking and Resuming a Contribution Election ....................................................................9
3.5 Contribution Percentage Limits ....................................................................10
3.6 Refunds When Contribution Dollar Limit Exceeded ....................................................................10
3.7 Timing, Posting and Tax Considerations ....................................................................11

**ARTICLE 4**
ROLLOVERS & TRUST-TO-TRUST TRANSFERS ....................................................................12
4.1 Rollovers ....................................................................12
4.2 Transfers From Other Qualified Plans ....................................................................12

**ARTICLE 5**
EMPLOYER CONTRIBUTIONS ....................................................................13
5.1 Company Match Contributions ....................................................................13

**ARTICLE 6**
ACCOUNTING ....................................................................14
6.1 Individual Participant Accounting ....................................................................14
6.2 Sweep Account is Transaction Account ....................................................................14
6.3 Trade Date Accounting and Investment Cycle ....................................................................14
6.4 Accounting for Investment Funds ....................................................................14
6.5 Payment of Fees and Expenses ....................................................................14
6.6 Accounting for Participant Loans ....................................................................15
6.7 Error Correction ....................................................................15
6.8 Participant Statements ....................................................................16
6.9 Accounts for QDRO Beneficiaries ....................................................................16

**ARTICLE 7**
INVESTMENT FUNDS AND ELECTIONS ....................................................................17
7.1 Investment Funds ....................................................................17
7.2 Investment Fund Elections ....................................................................17

7.3 Responsibility for Investment Choice ....17
7.4 Default if No Election ....17
7.5 Timing ....17
7.6 Investment Fund Election Change Fees ....18

**ARTICLE 8**
VESTING & FORFEITURES ....19
8.1 Fully Vested Contribution Accounts ....19
8.2 Full Vesting upon Certain Events ....19
8.3 Vesting Schedule ....19
8.4 Forfeitures ....19
8.5 Rehired Employees ....20
8.6 Military Service ....20

**ARTICLE 9**
PARTICIPANT LOANS ....21
9.1 Participant Loans Permitted ....21
9.2 Loan Application, Note and Security ....21
9.3 Spousal Consent ....21
9.4 Loan Approval ....21
9.5 Loan Funding Limits ....21
9.6 Maximum Number of Loans ....22
9.7 Source and Timing of Loan Funding ....22
9.8 Interest Rate ....22
9.9 Repayment ....22
9.10 Repayment Hierarchy ....22
9.11 Repayment Suspension ....23
9.12 Loan Default ....23
9.13 Call Feature ....23

**ARTICLE 10**
IN-SERVICE WITHDRAWALS ....24
10.1 In-Service Withdrawals Permitted ....24
10.2 In-Service Withdrawal Application and Notice ....24
10.3 Spousal Consent ....24
10.4 In-Service Withdrawal Approval ....24
10.5 Minimum Amount, Payment Form and Medium ....24
10.6 Source and Timing of In-Service Withdrawal Funding ....25
10.7 Hardship Withdrawals ....25
10.8 After-Tax Accounts Withdrawals ....26
10.9 Rollover Account Withdrawals ....27
10.10 Over Age 59½ Withdrawals ....27
10.11 Distributions on and after January 1, 1993 ....27

**ARTICLE 11**

DISTRIBUTIONS ONCE EMPLOYMENT ENDS OR AS REQUIRED BY......29

11.1 Benefit Information, Notices and Election......29
11.2 Spousal Consent......29
11.3 Payment Form and Medium......29
11.4 Distribution of Small Amounts......30
11.5 Source and Timing of Distribution Funding......30
11.6 Deemed Distribution......30
11.7 Latest Commencement Permitted......30
11.8. Payment Within Life Expectancy......31
11.9 Incidental Benefit Rule......31
11.10 Payment to Beneficiary......31
11.11 Beneficiary Designation......32
11.12 Distributions on and after January 1, 1993......32

**ARTICLE 12**

ADP AND ACP TESTS......33

12.1 Salary Reduction Discrimination Limitation......33
12.2 Limitations on Matching Contributions......34
12.3 Correction of ADP and ACP Tests......36

**ARTICLE 13**

MAXIMUM CONTRIBUTION AND BENEFIT LIMITATIONS......39

13.1 "Annual Addition" Defined......39
13.2 Maximum Annual Addition......39
13.3 Avoiding an Excess Annual Addition......39
13.4 Correcting an Excess Annual Addition......39
13.5 Correcting a Multiple Plan Excess......40
13.6 "Defined Benefit Fraction" Defined......40
13.7 "Defined Contribution Fraction" Defined......40
13.8 Combined Plan Limits and Correction......40

**ARTICLE 14**

TOP HEAVY RULES......42

14.1 Top Heavy Definitions......42
14.2 Special Contributions......44
14.3 Special Vesting......44
14.4 Adjustment to Combined Limits for Different Plans......45

**ARTICLE 15**

PLAN ADMINISTRATION......46

15.1 Plan Delineates Authority and Responsibility......46
15.2 Fiduciary Standards......46
15.3 Company is ERISA Plan Administrator......46
15.4 Administrator Duties......47
15.5 Advisors May Be Retained......47

15.6 Delegation of Administrator Duties ....48
15.7 Committee Operating Rules ....48

**ARTICLE 16**
MANAGEMENT OF INVESTMENTS ....49
16.1 Trust Agreement ....49
16.2 Investment Funds ....49
16.3 Authority to Hold Cash ....49
16.4 Trustee to Act Upon Instructions ....50
16.5 Administrator Has Right to Vote Registered Investment Company Shares ....50
16.6 Custom Fund Investment Management ....50
16.7 Authority to Segregate Assets ....51
16.8 Maximum Permitted Investment in NUI Stock ....51
16.9 Participants Have Right to Vote and Tender NUI Stock ....51
16.10 Registration and Disclosure for NUI Stock ....52

**ARTICLE 17**
TRUST ADMINISTRATION ....53
17.1 Trustee to Construe Trust ....53
17.2 Trustee To Act As Owner of Trust Assets ....53
17.3 United States Indicia of Ownership ....53
17.4 Tax Withholding and Payment ....54
17.5 Trustee Duties and Limitations ....54
17.6 Trust Accounting ....54
17.7 Valuation of Certain Assets ....55
17.8 Legal Counsel ....55
17.9 Fees and Expenses ....55

**ARTICLE 18**
RIGHTS, PROTECTION, CONSTRUCTION AND JURISDICTION ....56
18.1 Plan Does Not Affect Employment Rights ....56
18.2 Limited Return of Contributions ....56
18.3 Assignment and Alienation ....56
18.4 Facility of Payment ....57
18.5 Reallocation of Lost Participant's Accounts ....57
18.6 Claims Procedure ....57
18.7 Construction ....58
18.8 Jurisdiction and Severability ....58
18.9 Indemnification by Employer ....58

**ARTICLE 19**
AMENDMENT, MERGER AND TERMINATION ....60
19.1 Amendment ....60
19.2 Merger ....60
19.3 Plan Termination ....61
19.4 Amendment and Termination Procedures ....61

19.5 Termination of Employer's Participation ....................62
19.6 Replacement of the Trustee ....................62
19.7 Final Settlement and Accounting of Trustee ....................62

ARTICLE 1
**DEFINITIONS**

When capitalized, the words and phrases below have the following meanings unless different meanings are clearly required by the context:

1.1 "Account" shall mean the records maintained for purposes of accounting for a Participant's interest in the Plan." Account" may refer to one or all of the following accounts which have been created on behalf of a Participant to hold specific types of Contributions under the Plan:

(a) "After-Tax Account" shall mean the account created to hold After-Tax Contributions.

(b) "Company Match Account" shall mean the account created to hold Company Match Contributions.

(c) "Pre-Tax Account" shall mean the account created to hold Pre-Tax Contributions.

(d) "Rollover Account" shall mean the account created to hold Rollover Contributions.

1.2 "ACP" or "Average Contribution Percentage" shall mean the percentage calculated in accordance with Section 12.2.

1.3 "Administrator" shall mean the Company, which may delegate all or a portion of the duties of the Administrator under the Plan to a Committee in accordance with Section 15.6.

1.4 "ADP" or "Average Deferral Percentage" shall mean the percentage calculated in accordance with Section 12.1.

1.5 "Beneficiary" shall mean the person (s) who is to receive benefits after the death of the Participant pursuant to the "Beneficiary Designation" paragraph in section 11, or as a result of a QDRO.

1.6 "Board of Directors" shall mean the board of directors of the Company.

1.7 "Break in Service" shall mean the fifth anniversary (or sixth anniversary if absence from employment was due to a Parental Leave) of the date on which a Participant's employment ends, as determined in accordance with Section 1.39.

1.8 "Code" shall mean the Internal Revenue Code of 1986, as amended. Reference to any specific Code section shall include such section, any valid regulation promulgated thereunder, and any comparable provision of any future legislation amending, supplementing or superseding such section.

1.9 "Committee" shall mean, if applicable, the committee which has been appointed by the Board of Directors to administer the Plan in accordance with Section 15.6.

1.10 "Company" shall mean NUI Corporation or any successor by merger, purchase or otherwise.

1.11 "Compensation" shall mean the sum of a Participant's Taxable Income and salary reductions, if any, pursuant to Code sections 125, 402(e)(3), 402(h), 403(b), 414(h)(2) or 457 and elective amounts that are not includible in the Participant's Taxable Income by reason of Code section 132(f)(4)..

Effective for Plan Years beginning after December 31, 1993, for purposes of determining benefits under this Plan, Compensation is limited to $150,000 (as indexed for the cost of living pursuant to Code sections 401(a)(17) and 415(d)) per Plan Year.

For the purpose of determining HCEs and key employees, Compensation for the entire Plan Year shall be used. For the purpose of determining ADP and ACP, Compensation shall be limited to amounts paid to an Eligible Employee while a Participant.

1.12 "Contribution" shall mean an amount contributed to the Plan by the Employer or an Eligible Employee, and allocated by contribution type to Participants' Accounts, as described in Section 1.1. Specific types of contribution include:

(a) "After-Tax Contribution" shall mean an amount contributed by an eligible Participant on an after-tax basis.

(b) "Company Match Contribution" shall mean an amount contributed by the Employer on an eligible Participant's behalf based upon the amount contributed by the eligible Participant.

(c) "Pre-Tax Contribution" shall mean an amount contributed by the Employer on an eligible Participants behalf in conjunction with a Participant's Code section 401(k) salary deferral election.

(d) "Rollover Contribution" shall mean an amount contributed by an Eligible Employee which originated from another employer's qualified plan.

1.13 "Contribution Dollar Limit" shall mean the annual limit placed on each Participants Pre-Tax Contributions, which shall be $7,000 per calendar year (as indexed for the cost of living pursuant to Code sections 402(g)(5) and 415(d)). For purposes of this Section, a Participant's Pre-Tax Contributions shall include (i) any employer contribution made under any qualified cash or deferred arrangement as defined in Code section 401(k) to the extent not includible in gross income for the taxable year under code section 402(e)(3) or 402(h)(1)(B) (determined without regard to Code section 402(g)), and (ii) any employer

contribution to purchase an annuity contract under Code section 403 (b) under a salary reduction agreement (within the meaning of Code section 3121(a)(5)(D)).

1.14 "Direct Rollover" shall mean a payment from the Plan to an Eligible Retirement Plan specified by a Distributee.

1.15 "Disability" shall mean a Participant's mental or physical disability as evidenced by the Participant becoming eligible for disability benefits under the Federal Social Security Act.

1.16 "Distributee" shall mean an Employee or former Employee, the surviving spouse of an Employee or former Employee and a spouse or former spouse of an Employee or former Employee determined to be an alternate payee under a QDRO.

1.17 "Effective Date" shall mean January 1, 1997, unless stated otherwise. In general, the provisions of this document only apply to Participants who are Employees on or after the Effective Date. However, investment and distribution provisions apply to all Participants with Account balances to be invested or distributed after the Effective Date.

1.18 "Eligible Employee" shall mean an Employee of an Employer, whose compensation and conditions of employment are covered by a collective bargaining agreement to which an Employer is a party, which agreement calls for the Employee's participation in the Plan.

1.19 "Eligible Retirement Plan" shall mean an individual retirement account described in Code section 408(a), an individual retirement annuity described in Code section 408(b), an annuity plan described in Code section 403(a), or a qualified trust described in Code section 401(a), that accepts a Distributee's Eligible Rollover Distribution, except that with regard to an Eligible Rollover Distribution to a surviving spouse, an Eligible Retirement Plan is an individual retirement account or individual retirement annuity.

1.20 "Eligible Rollover Distribution" shall mean a distribution of all or any portion of the balance to the credit of a Distributes, excluding a distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of a Distributes or the joint lives (or joint life expectancies) of a Distributes and the Distributee's designated Beneficiary, or for a specified period of ten years, or more; a distribution to the extent such distribution is required under Code section 401(a)(9); and the portion of a distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to Employer securities). Effective January 1, 2000, an eligible rollover distribution shall not include any hardship distribution described in Section 401(k)(2)(B)(I)(IV) of the Code.

1.21 "Employee" shall mean an individual who is:

(a) directly employed by any Related Company and for whom any income for such employment is subject to withholding of income or social security taxes, or

(b) a Leased Employee.

1.22 "Employer" shall mean the Company and any Subsidiary or other Related Company of either the Company or a Subsidiary which is a party to a collective bargaining agreement which calls for participation in this Plan and which adopts this Plan with the approval of the Board of Directors.

1.23 "ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended. Reference to any specific section shall include such section, any valid regulation promulgated thereunder, and any comparable provision of any future legislation amending, supplementing or superseding such section.

1.24 "Forfeiture Account" shall mean the account holding amounts forfeited by Participants who have left the Employer, invested in interest bearing deposits of the Trustee, pending disposition as provided in this Plan and Trust and as directed by the Administrator.

1.25 "HCE" or "Highly Compensated Employee" shall mean an Employee who:

(a) (a) at any time during the Plan Year or the preceding year was a 5% owner of the Employer (applying the constructive ownership rules of Section 318 of the Code); or

(b) (b) for the preceding year had Compensation in excess of $80,000 (as adjusted by the Commissioner of Internal Revenue for the relevant year).

1.26 "Hour of Service" shall mean each hour for which an Employee is directly or indirectly paid or entitled to payment from the Company or a Related Company for the performance of duties.

1.27 "Ineligible" shall mean the Plan status of an individual during the period in which he or she in (1) an Employee of a Related Company which is not then an Employer, (2) an Employee, but not an Eligible Employee, or (3) not an Employee.

1.28 "Investment Fund" or "Fund" shall mean an investment fund as described in Section 16.2. The Investment Funds authorized by the Administrator to be offered as of the Effective Date to Participants and Beneficiaries are as set forth in Appendix A.

1.29 "Leased Employee" shall mean an individual who is deemed to be an employee of any Related Company as provided in Code section 414(n).

1.30 "Leave of Absence" shall mean a period during which an individual is deemed to be an Employee, but is absent from active employment, provided that the absence:

(a) was authorized by a Related Company; or

(b) was due to military service in the United States armed forces and the individual returns to active employment within the period during which he or she retains employment rights under federal law.

Leave of Absence includes any leave of absence in accordance with the requirements of the Family and Medical Leave Act of 1993. During this absence, the Employee shall be credited with the Hours of Service which have been credited but for such absence, of if such hours cannot be determined, with eight hours per day.

1.31 "NHCE" or "Non-Highly Compensated Employee" shall mean an Employee described as a Non-Highly Compensated Employee in section 12.

1.32 "Normal Retirement Date" shall mean the date of a Participant's 65th birthday.

1.33 "NUI Stock" shall mean shares of common stock of the Company, its predecessor(s), or its successors or assigns, or any corporation with or into which said corporation may be merged, consolidated or reorganized, or to which a majority of its assets may, be sold.

1.34 "Owner" shall mean a person with an ownership interest in the capital, profits, outstanding stock or voting power of a Related Company within the meaning of Code section 318 or 416 (which exclude indirect ownership through a qualified plan).

1.35 "Parental Leave" shall mean the period of absence from work by reason of pregnancy, the birth of an Employee's child. The placement of a child with the Employee in connection with the child's adoption, or caring for such child immediately after birth or placement as described in Code section 410(a)(5)(E).

1.36 "Participant" shall mean an Eligible Employee who begins to participate in the Plan after completing the eligibility requirements as described in Section 2.1. An Eligible Employee who makes a Rollover Contribution prior to completing the eligibility requirements as described in Section 2.1 shall also be considered a Participant except for purposes of provisions related to Contributions (other than a Rollover Contribution). A Participant's participation continues until his or her employment with all Related Companies ends and his or her Account is distributed or forfeited.

1.37 "Pay" shall mean the base pay and sales commissions paid to an Eligible Employee by an Employer while a Participant during the current period.

Pay is neither increased nor decreased by any salary credit or reduction pursuant to Code sections 125 or 402(e)(3), or by elective amounts that are not includible in the gross income of the Employee by reason of Code Section 132(f)(4). Pay is limited to $150,000 (as indexed for the cost of living pursuant to Code sections 401(a)(17) and 415(d)) per Plan Year.

1.38 "Period of Employment" shall mean the period beginning on the date an Employee first performs an Hour of Service and ending on the date his or her employment ends. Employment ends on the date the Employee quits, retires, in discharged, dies or (if earlier) the first anniversary of his or her absence for any other reason. The period of absence starting with the date an Employee's employment temporarily ends and *ending on* the date he or she is subsequently reemployed is (1) included in his or her Period of Employment if the period of absence does not exceed one year, and (2) excluded if such period exceeds on year.

Period of Employment includes the period prior to a Break in Service.

An Employee's service with a predecessor or acquired company shall only be counted in the determination of his or her Period of Employment for eligibility and/or vesting purposes if (1) the Company directs that credit for such service be granted, or (2) credit for such service must be granted pursuant to Code Section 414 or any other relevant provisions of applicable law.

1.39 "Plan" shall mean the NUI Corporation Savings and Investment Plan for Collective Bargaining Employees set forth in this document, as from time to time amended.

1.40 "Plan Year" shall mean the annual accounting period of the Plan and Trust which ends on each December 31.

1.41 "QDRO" shall mean a domestic relations order which the Administrator has determined to be a qualified domestic relations order within the meaning of Code section 414(p).

1.42 "Related Company" shall mean, with respect to any Employer, that Employer and any corporation, trade or business which is, together with that Employer, a member of the same controlled group of corporations, a trade or business under common control, or an affiliated service group within the meaning of Code section 414(b), (c), (m) or (o).

1.43 "Settlement Date" shall mean, for each Trade Date, the Trustee's next business day.

1.44 "Spousal Consent" shall mean the written consent given by a spouse to a Participant's election or waiver of a specified form of benefit, including a loan or in-service withdrawal, or Beneficiary designation. The spouse's consent must acknowledge the effect on the spouse of the Participant's election, waiver or

designation and be duly witnessed by a notary public. Spousal Consent shall be valid only with respect to the spouse who signs the Spousal Consent and only for the particular choice made by the Participant which requires Spousal Consent. A Participant may revoke (without Spousal Consent) a prior election, waiver or designation that required Spousal Consent at any time before payments begin. Spousal Consent also means a determination by the Administrator that there is no spouse, the spouse cannot be located, or such other circumstances as may be established by applicable law.

1.45 "Subsidiary" shall mean a company which is 50% or more owned, directly or indirectly, by the Company.

1.46 "Sweep Account" shall mean the subsidiary Account for each Participant through which all transactions are processed, which is invested in interest bearing deposits of the Trustee.

1.47 "Sweep Date" shall mean the cut off date and time for receiving instructions for transactions to be processed on the next Trade Date.

1.48 "Taxable Income" shall mean Compensation in the amount reported by the Employer as "Wages, tips, other compensation" on Form W-2, or any successor method of reporting under Code section 6041(d).

1.49 "Trade Date" shall mean each day the Investment Funds are valued, which is normally every day the assets of such Funds are traded.

1.50 "Trust" shall mean the legal entity created by those provisions of this document which relate to the Trustee. The Trust is part of the Plan and holds the Plan assets which are comprised of the aggregate of Participants' Accounts, any unallocated funds invested in deposit or money market type assets pending allocation to Participant's Accounts or disbursement to pay Plan fees and expenses and the Forfeiture Account.

1.51 "Trustee" shall mean Merrill Lynch Trust Company as successor to Wells Fargo Bank, National Association.

"Year of Vesting Service" shall mean a 12 consecutive month Period of Employment. Years of Vesting Service shall include service credited prior to April 1, 1995.

ARTICLE 2
**ELIGIBILITY**

2.1 Eligibility

All Participants as of December 31, 1996 shall continue to be eligible to participate. Each other Eligible Employee shall become a Participant on the first day of the first pay period following of month during which he or she completes a three (3) month Period of Employment.

2.2 Ineligible Employees

If an Employee completes the above eligibility requirements, but is Ineligible at the time participation would otherwise begin (if he or she were not Ineligible), he or she shall become a Participant on the first subsequent date on which he or she is an Eligible Employee, which in the case of an Employee who transfers from a nonunion to union position and becomes covered by a collective bargaining agreement which calls for his or her participation in the Plan after he or she completes such eligibility requirements, such date shall be the date he or she becomes covered by the collective bargaining agreement.

2.3 Ineligible or Former Participants

A Participant may not make or share in Plan Contributions, nor generally be eligible for a new Plan loan, during the period he or she is Ineligible, but he or she shall continue to participate for all other purposes. An Ineligible Participant or former Participant shall automatically become an active Participant on the date he or she again becomes an Eligible Employee.

ARTICLE 3

**PARTICIPANT CONTRIBUTIONS**

3.1 Pre-Tax Contribution Election

Upon becoming a Participant, an Eligible Employee may elect to reduce his or her Pay by an amount which does not exceed the Contribution Dollar Limit, within the limits described in the Contribution Percentage Limits paragraph of this Section 3, and have such amount contributed to the Plan by the Employer an a Pre-Tax Contribution. The election shall be made as a whole percentage of Pay in such manner and with such advance notice an prescribed by the Administrator. In no event shall an Employee's Pre-Tax Contributions under the Plan and comparable contributions to all other plans, contracts or arrangements of all Related Companies exceed the Contribution Dollar Limit for the Employee's taxable year beginning in the Plan Year.

3.2 After-Tax Contribution Election

Upon becoming a Participant, an Eligible Employee may elect to make After-Tax Contributions to the Plan in an amount which does not exceed the limits described in the Contribution Percentage Limits paragraph of Section 3.5. The election shall be made as a whole percentage of Pay in such manner and with such advance notice as prescribed by the Administrator.

3.3 Changing a Contribution Election

The Administrator may establish and change from time to time, without the necessity of amending this Plan and Trust document, the frequency with which a Participant may change his or her Contribution election and/or the dates on which such election shall become effective.

A Participant who is an Eligible Employee may change his or her Pre-Tax and/or After-Tax Contribution election at any time in such manner and with such advance notice an prescribed by the Administrator, and such election shall be effective with the first payroll paid after such date. Participants' Contribution election percentages shall automatically apply to Pay increases or decreases.

3.4 Revoking and Resuming a Contribution Election

The Administrator may establish and change from time to time, without the necessity of amending this Plan and Trust document, the frequency with which a Participant may revoke a Contribution election, resume Contributions and/or the dates on which such election shall become effective.

A Participant may revoke his or her Contribution election at any time in such manner and with such advance notice as prescribed by the Administrator, and such election shall be effective with the first payroll paid after such date.

A Participant may resume Contributions by making a new Contribution election at any time in such manner and with such advance notice as prescribed by the Administrator, and such election shall be effective with the first payroll paid after such date.

3.5 Contribution Percentage Limits

The Administrator may establish and change from time to time, without the necessity of amending this Plan and Trust document, the separate minimum, if applicable, and maximum Pre-Tax and After-Tax Contribution percentages, and/or a maximum combined Pre-Tax and After-Tax Contribution percentage, prospectively or retrospectively (for the current Plan Year), for all Participants. In addition, the Administrator may establish any lower percentage limits for Highly compensated Employees as it deems necessary. The maximum Contribution percentages are:

| Contribution Type | Highly Compensated Employees | All Other Participants |
|---|---|---|
| Pre-Tax | 10% | 10% |
| After Tax | 10% | 10% |
| Sum of Both | 10% | 10% |

Irrespective of the limits that may be established by the Administrator in accordance with this paragraph, in no event shall the Contributions made by or on behalf of a Participant for a Plan Year exceed the maximum allowable under Code section 415.

3.6 Refunds When Contribution Dollar Limit Exceeded

A Participant who makes Pre-Tax Contributions for a calendar year to this Plan and comparable contributions to any other qualified defined contribution plan in excess of the Contribution Dollar Limit may notify the Administrator in writing by the following March 1 (or as late as April 14 if allowed by the Administrator) that an excess has occurred. In this event, the amount of the excess specified by the Participant, adjusted for investment gain or loss, shall be refunded to him or her by April 15 and shall not be included as an Annual Addition under Code section 415 for the year contributed. Refunds shall be reduced by excess contributions previously distributed pursuant to Section 12.3(a) for the Plan Year beginning in the Participant's taxable year in which the refund was received. Refunds shall not include investment gain or loss for the period between the end of the applicable Plan Year and the date of distribution. Any Company Match Contributions attributable to refunded excess Pre-Tax Contributions as described in this Section shall be forfeited.

3.7 Timing, Posting and Tax Considerations

Participants' Contributions, other than Rollover Contributions, may only be made through payroll deduction. Such amounts shall be paid to the Trustee in cash and posted to each Participant's Account(s) as soon as such amounts can reasonably be separated from the Employer's general assets and balanced against the specific amount made on behalf of each Participant. In no event, however, shall such amounts withheld from a Participant's Pay be remitted to the Trustee later than the 15th business day of the month following the month in which the Participant Contribution amounts are received by the Employer. Pre-Tax Contributions shall be treated as employer contributions in determining tax deductions under Code section 404(a).

ARTICLE 4
**ROLLOVERS & TRUST-TO-TRUST TRANSFERS**

4.1 Rollovers

The Administrator may authorize the Trustee to accept a rollover contribution in cash, within the meaning of Code section 402(c) or 408(d)(3)(A)(ii), directly from an Eligible Employee or as a Direct Rollover from another qualified plan on behalf of the Eligible Employee, even if he or she is not yet a Participant. The Employee shall be responsible for furnishing satisfactory evidence, in such manner as prescribed by the Administrator, that the amount is eligible for rollover treatment. A rollover contribution received directly from an Eligible Employee must be paid to the Trustee in cash within 60 days after the date received by the Eligible Employee from a qualified plan or conduit individual retirement account. Contributions described in this paragraph shall be posted to the applicable Employee's Rollover Account as of the date received by the Trustee.

If it is later determined that an amount contributed pursuant to the above paragraph did not in fact qualify as a rollover contribution under Code section 402(c) or 408(d)(3)(A)(ii), the balance credited to the Employee's Rollover Account shall immediately be (1) segregated from all other Plan assets, (2) treated as a nonqualified trust established by and for the benefit of the Employee, and (3) distributed to the Employee. Any such nonqualifying rollover shall be deemed never to have been a part of the Plan.

A Participant shall be permitted to rollover to the Participant's Plan account any lump sum distribution made to the Participant from a retirement plan sponsored by the Employer.

4.2 Transfers From Other Qualified Plans

The Administrator may instruct the Trustee to receive assets in cash or in kind directly from another qualified plan. The Trustee may refuse the receipt of any transfer if:

(a) the Trustee finds the in-kind assets unacceptable;

(b) instructions for posting amounts to Participants' Accounts are incomplete;

(c) any amounts are not exempted by Code section 401(a)(11)(B) from the annuity requirements of Code section 417; or

(d) any amounts include benefits protected by Code section 411(d)(6) which would not be preserved under applicable Plan provisions.

Such amounts shall be posted to the appropriate Accounts of Participants an of the date received by the Trustee.

ARTICLE 5
**EMPLOYER CONTRIBUTIONS**

5.1 Company Match Contributions

(a) Frequency and Eligibility. For each period for which Participants' Contributions are made, the Employer shall make Company Match Contributions as described in the following Allocation Method paragraph on behalf of each Participant who contributed during the period.

(b) Allocation Method. The Company Match Contributions (including any Forfeiture Account amounts applied as Company Match Contributions in accordance with Section 8.4) for each period shall total 25% of the sum of each eligible Participant's Pre-Tax and After-Tax Contributions for the period, provided that no Company Match Contributions (and Forfeiture Account amounts) shall be made based upon a Participant's Contributions in excess of 6% of his or her Pay, or (2) if different, the amount set forth in the collective bargaining agreement which calls for such eligible Participant's participation in the Plan. Notwithstanding the foregoing, effective January 1, 1999, (1) the Company Match Contributions (including any Forfeiture Account amounts applied as Company Match Contributions in accordance with Section 8.4) for each period shall total 40% of the sum of each eligible Participant's Pre-Tax and After-Tax Contributions for the period for contributions invested in options other than NUI Stock, provided that no Company Match Contributions (and Forfeiture Account amounts) shall be made based upon a Participant's Contributions in excess of 6% of his or her Pay and (2) the Company Match Contributions (including any Forfeiture Account amounts applied as Company Match Contributions in accordance with Section 8.4) for each period shall total 50% of the sum of each eligible Participant's Pre-Tax and After-Tax Contributions for the period for contributions invested in NUI Stock, provided that no Company Match Contributions (and Forfeiture Account amounts) shall be made based upon a Participant's Contributions in excess of 6% of his or her Pay.

(c) Timing, Medium and Posting. The Employer shall make each period's Company Match Contribution in cash as soon as is feasible, and not later than the Employer's federal tax filing date, including extensions, for deducting such Contribution. The Trustee shall post such amount to each Participant's Company Match Account once the total Contribution received has been balanced against the specific amount to be credited to each Participant's Company Match Account.

ARTICLE 6
**ACCOUNTING**

6.1 Individual Participant Accounting

The Administrator shall maintain an individual set of Accounts for each Participant in order to reflect transactions both by type of Contribution and investment medium. Financial transactions shall be accounted for at the individual Account level by posting each transaction to the appropriate Account of each affected Participant. Participant Account values shall be maintained in shares for the Investment Funds and in dollars for their Sweep and Participant loan accounts. At any point in time, the Account value shall be determined using the most recent Trade Date values provided by the Trustee.

6.2 Sweep Account is Transaction Account

All transactions related to amounts being contributed to or distributed from the Trust shall be posted to each affected Participant's Sweep Account. Any amount hold in the Sweep Account will be credited with interest up until the date on which it is removed from the Sweep Account.

6.3 Trade Date Accounting and Investment Cycle

Participant Account values shall be determined as of each Trade Date. For any transaction to be processed as of a Trade Date, the Trustee must receive instructions for the transaction by the Sweep Date. Such instructions shall apply to amounts held in the Account on that Sweep Date. Financial transactions of the Investment Funds shall be posted to Participants' Accounts as of the Trade Date, based upon the Trade Date values provided by the Trustee, and settled on the Settlement Date.

6.4 Accounting for Investment Funds

Investments in each Investment Fund shall be maintained in shares. The Trustee is responsible for determining the share values of each Investment Fund as of each Trade Date. To the extent an Investment Fund is comprised of collective investment funds of the Trustee, or any other fiduciary to the Plan, the share values shall be determined in accordance with the rules governing such collective investment funds, which are incorporated herein by reference. All other share values shall be determined by the Trustee. The share value of each Investment Fund shall be based on the fair market value of its underlying assets.

6.5 Payment of Fees and Expenses

Except to the extent Plan fees and expenses related to Account maintenance, transaction and Investment Fund management and maintenance, as set forth

below, are paid by the Employer directly, or indirectly, through the Forfeiture account as directed by the Administrator, such fees and expenses shall be paid as set forth below.

(a) Account Maintenance: Account maintenance fees and expenses, may include but are not limited to, administrative, Trustee, government annual report preparation, audit, legal, nondiscrimination testing, and fees for any other special services. Account maintenance fees shall be charged to Participants on a per Participant basis provided that no fee shall reduce a Participant's Account balance below zero.

(b) Transaction: Transaction fees and expenses, may include but are not limited to, recurring payment, Investment Fund election change and loan fees. Transaction fees shall be charged to the Participant's Account involved in the transaction provided that no fee shall reduce a Participant's Account balance below zero.

(c) Investment Fund Management and Maintenance: Management and maintenance fees and expenses related to the Investment Funds shall be charged at the Investment Fund level and reflected in the net gain or loss of each Fund.

A breakdown of which Plan fees and expenses shall generally be borne by the Trust (and charged to individual Participants' Accounts) and those that shall be paid by the Employer, directly or indirectly, is set forth in Appendix B and may be changed from time to time, without the necessity of amending this Plan and Trust document.

The Trustee shall have the authority to pay any such fees and expenses, which remain unpaid by the Employer for 60 days, from the Trust.

6.6 <u>Accounting for Participant Loans</u>

Participant loans shall be held in a separate Account of the Participant and accounted for in dollars as an earmarked asset of the borrowing Participant's Account.

6.7 <u>Error Correction</u>

The Administrator may correct any errors or omissions in the administration of the Plan by restoring any Participant's Account balance with the amount that would be credited to the Account had no error or omission been made. Funds necessary for any such restoration shall be provided through payment made by the Employer, or by the Trustee to the extent the error or omission is attributable to actions or inactions of the Trustee, or if the restoration involves an employer contribution account, the Administrator may direct the Trustee to use amounts from the Forfeiture Account.

6.8 Participant Statements

The Administrator shall provide Participants with statements of their Accounts as soon after the end of each quarter of the Plan Year as is administratively feasible.

6.9 Accounts for QDRO Beneficiaries

A separate Account shall be established for an alternate payee entitled to any portion of a Participant's Account under a QDRO an of the date and in accordance with the directions specified in the QDRO. In addition, a separate Account may be established during the period of time the Administrator, a court of competent jurisdiction or other appropriate person is determining whether a domestic relations order qualifies as a QDRO. Such a separate Account shall be valued and accounted for in the same manner as any other Account.

(a) Distributions Pursuant to QDROs. If a QDRO so provides, the portion of a Participant's Account payable to an alternate payee may be distributed, in a form as permissible under Section 11.3, to the alternate payee at the time specified in the QDRO, regardless of whether the Participant is entitled to a distribution from the Plan at such time (to the extent permitted by Code sections 401(k) and 414(p)).

(b) Participant Loans. Except to the extent required by law, an alternate payee, on whose behalf a separate Account has been established, shall not be entitled to borrow from such Account. If a QDRO specifies that the alternate payee is entitled to any portion of the Account of a Participant who has an outstanding loan balance, all outstanding loans shall generally continue to be hold in the Participant's Account and shall not be divided between the Participant's and alternate payee's Accounts.

(c) Investment Direction. Where a separate Account has been established on behalf of an alternate payee and has not yet been distributed, the alternate payee may direct the investment of such Account in the same manner as if he or she were a Participant.

ARTICLE 7
## INVESTMENT FUNDS AND ELECTION

7.1 Investment Funds

Except for Participants' Sweep and loan Accounts, the Trust shall be maintained in various Investment Funds. The Board of Directors (or the Committee if designated by the Board) shall select the Investment Funds offered to Participants and may change the number or composition of the Investment Funds, subject to the terms and conditions agreed to with the Trustee.

7.2 Investment Fund Elections

Each Participant shall direct the investment of all of his or her Contribution Accounts except for the Company Match Account which shall be entirely invested in the NUI Stock Fund, except as otherwise provided as set forth below. However, a Participant who has attained age 55 may direct the investment of the balance in his or her Company Match Account. Future amounts allocated to his or her Company Match Account will continue to be entirely invested in the Investment Fund specified by the Administrator, until otherwise directed by the Participant.

A Participant shall make his or her investment election in any combination of one or any number of the Investment Funds offered in accordance with the procedures established by the Administrator and Trustee. The Administrator may set a maximum percentage of the total election that a Participant may direct into any specific Investment Fund, which maximum, if any, may be changed from time to time, without the necessity of amending this Plan and Trust document.

7.3 Responsibility for Investment Choice

Each Participant shall be solely responsible for the selection of his or her Investment Fund choices. No fiduciary with respect to the Plan is empowered to advise a Participant as to the manner in which his or her Accounts are to be invested, and the fact that an Investment Fund is offered shall not be construed to be a recommendation for investment.

7.4 Default if No Election

The Administrator shall specify an Investment Fund for the investment of that portion of a Participant's Account which is not yet held in an Investment Fund and for which no valid investment election is on file.

7.5 Timing

A Participant shall make his or her initial investment election upon becoming a Participant and may change his or her election at any time in accordance with the procedures established by the Administrator and Trustee. Investment elections

received by the Trustee by the Sweep Date will be effective on the following Trade Date.

7.6 Investment Fund Election Change Fees

A reasonable processing fee may be charged directly to a Participant's Account for Investment Fund election changes in excess of a specified number per year as determined by the Administrator.

ARTICLE 8
**VESTING & FORFEITURES**

8.1 Fully Vested Contribution Accounts

A Participant shall be fully vested in these Accounts at all times:

After-Tax Account
Pre-Tax Account
Rollover Account

8.2 Full Vesting upon Certain Events

A Participant's entire Account shall become fully vested once he or she has attained his or her Normal Retirement Date as an Employee or upon his or her leaving the Employer due to his or her Disability or death.

8.3 Vesting Schedule

In addition to the vesting provided above, a Participant's Company Match and Prior Company Match Accounts shall become vested in accordance with the following schedule:

| Years of Vesting Service | Vested Percentage |
|---|---|
| Less than 3 | 0% |
| 3 but less than 4 | 50% |
| 4 but less than 5 | 75% |
| 5 or more | 100% |

If this vesting schedule is changed, the vested percentage for each Participant shall not be less than his or her vested percentage determined as of the last day prior to this change, and for any Participant with at least three Years of Vesting Service when the schedule is changed, vesting shall be determined using the more favorable vesting schedule.

Notwithstanding the foregoing, effective August 1, 2000, a Participant's Company Match and Prior Company Match Accounts shall become fully vested after one Year of Vesting Service.

8.4 Forfeitures

A Participant's, non-vested Account balance shall be forfeited as of the Settlement Date following the Sweep Date on which the Administrator has reported to the Trustee that the Participant's employment has terminated with all

Related Companies. Forfeitures from all Employer Contribution Accounts shall be transferred to and maintained in a single Forfeiture Account, which shall be invested in interest bearing deposits of the Trust. Forfeiture Account amounts shall be utilized to restore Accounts, to pay Plan fees and expenses and to reduce Company Match Contributions as directed by the Administrator.

8.5 Rehired Employees

(a) Service. If a former Employee is rehired, the Period of Employment credited prior to his or her termination of employment shall be counted in determining his or her vested interest.

(b) Account Restoration. If a former Employee is rehired before he or she has a Break in Service, the amount forfeited when his or her employment last terminated shall be restored to his or her Account. The restoration shall include the interest which would have been credited had such forfeiture been invested in the Sweep Account from the date forfeited until the date the restoration amount is determined. The amount shall come from the Forfeiture Account to the extent possible, and any additional amount needed shall be contributed by the Employer. The vested interest in his or her restored Account shall then be equal to:

$$V\% \text{ times } (AB + D) - D$$

where:

V% - current vested percentage
AB - current account balance
D - amount previously distributed

8.6 Military Service

Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with § 414 (u) of the Internal Revenue Code.

ARTICLE 9
**PARTICIPANT LOANS**

9.1 Participant Loans Permitted

Loans to Participants are permitted pursuant to the terms and conditions set forth in this Section.

9.2 Loan Application, Note and Security

A Participant shall apply for any loan in such manner and with such advance notice as prescribed by the Administrator. All loans shall be evidenced by a promissory note, secured only by the portion of the Participant's Account from which the loan is made, and the Plan shall have a lien on this portion of his or her Account.

9.3 Spousal Consent

A Participant is not required to obtain Spousal Consent in order to take out a loan under the Plan.

9.4 Loan Approval

The Administrator, or the Trustee if otherwise authorized by the Administrator and agreed to by the Trustee, is responsible for determining that a loan request conforms to the requirements described in this Section and granting such request.

9.5 Loan Funding Limits

The loan amount must meet all of the following limits as determined as of the Sweep Date the loan is processed:

(a) Plan Minimum Limit. The minimum amount for any loan is $1,000.

(b) Plan Maximum Limit. Subject to the legal limit described in (c) below, the maximum a Participant may borrow, including the outstanding balance of existing Plan loans, is 100% of the following Accounts which are fully vested:

Pre-Tax Account
Rollover Account
After-Tax Account

(c) Legal Maximum Limit. The maximum a Participant may borrow, including the outstanding balance of existing Plan loans, is 50% of his or her vested Account balance, not to exceed $50,000. However, the $50,000

maximum is reduced by the Participant's highest outstanding loan balance during the 12 month period ending on the day before the Sweep Date as of which the loan is made. For purposes of this paragraph, the qualified plans of all Related Companies shall be treated as though they are part of this Plan to the extent it would decrease the maximum loan amount.

9.6 Maximum Number of Loans

A Participant may have a maximum of two loans outstanding at any given time.

9.7 Source and Timing of Loan Funding

A loan to a Participant shall be made solely from the assets of his or her own Accounts. The available assets shall be determined first by Account type and then by investment type within each type of Account. The hierarchy for loan funding by type of Account shall be the order listed in the preceding Plan Maximum Limit paragraph. Within each Account used for funding a loan, amounts shall first be taken from the Sweep Account and then taken by type of investment in direct proportion to the market value of the Participant's interest in each Investment Fund as of the Trade Date on which the loan is processed.

Loans will be funded on the Settlement Date following the Trade Date an of which the loan is processed. The Trustee shall make payment to the Participant as soon thereafter as administratively feasible.

9.8 Interest Rate

The interest rate charged on Participant loans shall be a fixed reasonable rate of interest, determined from time to time by the Administrator, which provides the Plan with a return commensurate with the prevailing interest rate charged by persons in the business of lending money for loans which would be made under similar circumstances. The interest rate shall be equal to the Trustee's prime rate, plus 1%, and may be changed from time to time, without the necessity of amending this Plan and Trust document.

9.9 Repayment

Substantially level amortization shall be required of each loan with payments made at least monthly, through payroll deduction during any period a Participant is an Eligible Employee and receiving pay. Loans may be prepaid in full at any time. The Participant may choose the loan repayment period, not to exceed 5 years.

9.10 Repayment Hierarchy

Loan principal repayments shall be credited to the Participant's Accounts in the inverse of the order used to fund the loan. Loan interest shall be credited to the Participant's Accounts in direct proportion to the principal payment. Loan

payments are credited by investment type based upon the Participant's current investment election for new Contributions.

9.11 Repayment Suspension

The Administrator may agree to a suspension of loan payments for up to 12 months for a Participant who is on a Leave of Absence without pay. Loan repayments will be suspended as permitted under Section 414(u)(4) of the Code. During the suspension period interest shall continue to accrue on the outstanding loan balance. At the expiration of the suspension period all outstanding loan payments and accrued interest thereon shall be due unless otherwise agreed upon by the Administrator.

9.12 Loan Default

A loan is treated as a default if scheduled loan payments are more than 90 days late. A Participant shall then have 30 days from the time he or she receives written notice of the default and a demand for past due amounts to cure the default before it becomes final.

In the event of default, the Administrator may direct the Trusts to report the default as a taxable distribution. An soon as a Plan withdrawal or distribution to such Participant would otherwise be permitted, the Administrator may instruct the Trustee to execute upon its security interest in the Participant's Account by distributing the note to the Participant.

9.13 Call Feature

The Administrator shall have the right to call any Participant loan once a Participant's employment with all Related Companies has terminated or if the Plan is terminated.

## ARTICLE 10
## IN-SERVICE WITHDRAWALS

10.1 In-Service Withdrawals Permitted

In-service withdrawals to a Participant who is an Employee are permitted pursuant to the terms and conditions set forth in this Section and as required by law as set forth in Section 11.7.

10.2 In-Service Withdrawal Application and Notice

A Participant shall apply for any in-service withdrawal in such manner and with such advance notice as prescribed by the Administrator. The Participant shall be provided the notice prescribed by Code section 402(f).

If an in-service withdrawal is one to which Code sections 401(a)(11) and 417 do not apply, such in-service withdrawal may commence less than 30 days after the aforementioned notice is provided, if:

(a) the Participant is clearly informed that he or she has the right to a period of at least 30 days after receipt of such notice to consider his or her option to elect or not elect a Direct Rollover for the portion, if any, of his or her in-service withdrawal which will constitute an Eligible Rollover Distribution; and

(b) the Participant after receiving such notices affirmatively elects a Direct Rollover for the portion, if any, of his or her in-service withdrawal which will constitute an Eligible Rollover Distribution or alternatively elects to have such portion made payable directly to him or her, thereby not electing a Direct Rollover.

10.3 Spousal Consent

A Participant is not required to obtain Spousal Consent in order to make an in-service withdrawal under the Plan.

10.4 In-Service Withdrawal Approval

The Administrator, or the Trustee if otherwise authorized by the Administrator and agreed to by the Trustee, in responsible for determining that an in-service withdrawal request conforms to the requirements described in this Section and granting such request.

10.5 Minimum Amount, Payment Form and Medium

There is no minimum amount for any type of withdrawal.

With regard to the portion of a withdrawal representing an Eligible Rollover Distribution, a Participant may elect a Direct Rollover. The form of payment for an in-service withdrawal shall be a single lump sum and payment shall be made in cash.

10.6 Source and Timing of in-Service Withdrawal Funding

An in-service withdrawal to a Participant shall be made solely from the assets of his or her own Accounts and will be based on the Account values as of the Trade Date the in-service withdrawal is processed. The available assets shall be determined first by Account type and then within each Account used for funding an in-service withdrawal, amounts shall first be taken from the Sweep Account and then taken by type of investment in direct proportion to the market value of the Participant's interest in each Investment Fund (which excludes Participant loans) an of the Trade Date on which the in-service withdrawal is processed.

In-service withdrawals will be funded on the Settlement Date following the Trade Date as of which the in-service withdrawal is processed. The Trustee shall make payment as soon thereafter as administratively feasible.

10.7 Hardship Withdrawals

(a) Requirements. A Participant who is an Employee may request the withdrawal of up to the amount necessary to satisfy a financial need including amounts necessary to pay any federal, state or local income taxes or penalties reasonably anticipated to result from the withdrawal. Only requests for withdrawals (1) on account of a Participant's "Deemed Financial Need" and (2) which are "Deemed Necessary" to satisfy the financial need will be approved.

(b) "Deemed Financial Need". Financial commitments relating to:

(1) the payment of unreimbursable medical expenses described under Code section 213(d) incurred (or to be incurred) by the Employee, his or her spouse or dependents;

(2) the purchase (excluding mortgage payments) of the Employee's principal residence;

(3) the payment of unreimbursable tuition and related educational fees including room and board, for up to the next 12 months of post-secondary education for the Employee, his or her spouse or dependents;

(4) the payment of amounts necessary for the Employee to prevent losing his or her principal residence through eviction or foreclosure on the mortgage; or

(5) any other circumstance specifically permitted under Code section 401(k)(2)(B)(i)(IV) and the regulations thereunder.

(c) "Deemed Necessary". A withdrawal is "deemed necessary" to satisfy the financial need only if the withdrawal amount does not exceed the financial need and all of these conditions are met:

(1) the Employee has obtained all other possible withdrawals and nontaxable loans available from all plans maintained by Related Companies;

(2) the Administrator shall suspend the Employee from making any contributions to this Plan, all other qualified and nonqualified plans of deferred compensation and all stock option or stock purchase plans maintained by Related Companies for 12 months from the date the withdrawal payment is made; and

(3) the Administrator shall reduce the Contribution Dollar Limit for the Employee for the calendar year next following the calendar year of the withdrawal by the amount of the Employee's Pre-Tax Contributions for the calendar year of the withdrawal.

(d) Withdrawal Account Sources and Order of Funding. All available amounts must first be withdrawn from a Participant's After-Tax Account. The remaining withdrawal amount shall come only from the Participants fully vested Accounts, in the following priority order:

Rollover Account
Company Match Account
Pre-Tax Account

The amount that may be withdrawn from a Participant's Pre-Tax Account shall not include any earnings credited to his or her Pre-Tax Account

(e) Permitted Frequency. There is no restriction on the number of Hardship withdrawals permitted to a Participant.

10.8 <u>After-Tax Accounts Withdrawals</u>

Requirements. A Participant who is an Employee may withdraw from the Accounts listed in paragraph (b) below.

(a) Withdrawal Account Sources and Order of Funding. The withdrawal amount shall come from the Participant's fully vested After-Tax Account.

(b) Permitted Frequency. The maximum number of After-Tax Account withdrawals permitted to a Participant in any 12-month period is one.

(c) Suspension from Further Contributions. An After-Tax Accounts withdrawal shall not affect a Participant's ability to make or be eligible to receive further Contributions.

10.9 Rollover Account Withdrawals

(a) Requirements. A Participant who is an Employee may withdraw from the Account listed in paragraph (b) below.

(b) Withdrawal Account Sources and Order of Funding. The withdrawal amount shall come from the Participant's fully vested Rollover Account.

(c) Permitted Frequency. The maximum number of Rollover Account withdrawals permitted to a Participant in any 12-month period is one.

(d) Suspension from Further Contributions. A Rollover Account withdrawal shall not affect a Participant's ability to make or be eligible to receive further Contributions.

10.10 Over Age 59½ Withdrawals

(a) Requirements. A Participant who is an Employee and over age 59½ may withdraw from the Accounts listed in paragraph (b) below.

(b) Withdrawal Account Sources and Order of Funding. The withdrawal amount shall come only from the Participant's fully vested Accounts, in the following priority order with the exception that the Participant may instead choose to have amounts taken from his or her After-Tax Account first:

Rollover Account
Pre-Tax Account
Company Match Account

(c) Permitted Frequency. The maximum number of Over Age 59½ withdrawals permitted to a Participant in any 12-month period is one.

(d) Suspension from Further Contributions. An Over Age 59½ withdrawal shall not affect a Participant's ability to make or be eligible to receive further Contributions.

10.11 Distributions on and after January 1, 1993

This Section applies to distributions made on or after January 1, 1993. Notwithstanding any provision of the Plan to the contrary that would otherwise

limit a Distributee's election under this Section, a Distributee may elect, at the time and in the manner prescribed by the Plan Administrator, to have any portion of an Eligible Rollover Distribution paid directly to an Eligible Retirement Plan specified by the Distributee in a Direct Rollover.

ARTICLE 11

## DISTRIBUTIONS ONCE EMPLOYMENT ENDS OR AS REQUIRED BY LAW

11.1 Benefit Information, Notices and Election

A Participant, or his or her Beneficiary in the case of his or her death, shall be provided with information regarding all optional times and forms of distribution available, to include the notices prescribed by Code section 402(f) and Code section 411(a)(11). Subject to the other requirements of this Section, a Participant, or his or her Beneficiary in the case of his or her death, may elect, in such manner and with such advance notice as prescribed by the Administrator, to have his or her vested Account balance paid to him or her beginning upon any Settlement Date following the Participant's termination of employment with all Related Companies or, if earlier, at the time required by law as set forth in Section 11.7.

If a distribution is one to which Code sections 401(a)(11) and 417 do not apply, such distribution may commence less than 30 days after the aforementioned notices are provided, if:

(a) the Participant is clearly informed that he or she has the right to a period of at least 30 days after receipt of such notices to consider the decision as to whether to elect a distribution and if so to elect a particular form of distribution and to elect or not elect a Direct Rollover for all or a portion. If any, of his or her distribution which will constitute an Eligible Rollover Distribution; and

(b) the Participant after receiving such notice, affirmatively elects a distribution and a Direct Rollover for all or a portion, if any, of his or her distribution which will constitute an Eligible Rollover Distribution or alternatively elects to have all or a portion made payable directly to him or her, thereby not electing a Direct Rollover for all or a portion thereof.

11.2 Spousal Consent

A Participant is not required to obtain Spousal Consent in order to receive a distribution under the Plan.

11.3 Payment Form and Medium

A Participant may elect to be paid in any of these forms:

(a) a single lump sum, or

(b) a portion paid in a lump sum, and the remainder paid later, or

(c) periodic installments over a period not to exceed the life expectancy of the Participant and his or her Beneficiary.

Distributions shall generally be made in cash, except to the extent a distribution consists of a loan call as described in Section 9, and with regard to a lump sum payment, except to the extent a Participant, or his or her Beneficiary in the case of his or her death, elects payment in the form of whole shares of NUI Stock (to the extent invested in the NUI Stock Fund). With regard to the portion of a distribution representing an Eligible Rollover Distribution, a Distributes may elect a Direct Rollover for all or a portion of such amount.

11.4 Distribution of Small Amounts

If, at the time a Participants employment with all Related Companies ends, the Participant's vested Account balance is $3,500 or less, or effective July 1, 1999, $5000 or less, the Participant's benefit may be paid as a single lump sum, without his or her consent as soon as administratively feasible, after his or her employment with all Related Companies ends. If at the time a Participant's employment with all Related Companies ends, the Participant's vested Account balance is zero, the Participant shall be deemed to have received a distribution of his or her vested Account balance.

11.5 Source and Timing of Distribution Funding

A distribution to a Participant shall be made solely from the assets of his or her own Accounts and will be based on the Account values as of the Trade Date the distribution in processed. The available assets shall be determined first by Account type and then by investment type within each type of Account. Within each Account used for funding a distribution, amounts shall first be taken from the Sweep Account and then taken by type of investment in direct proportion to the market value of the Participant's interest in each Investment Fund as of the Trade Date on which the distribution is processed.

Distributions will be funded on the Settlement Date following the Trade Date as of which the distribution is processed. The Trustee shall make payment as soon thereafter as administratively feasible.

11.6 Deemed Distribution

For purposes of Section 8.4, vested Account balances will be deemed distributed as of the Settlement Date following the Sweep Date on which the Administrator has reported to the Trustee that the Participant's employment with all Related Companies has terminated.

11.7 Latest Commencement Permitted

In addition to any other Plan requirements and unless a Participant elects otherwise, his or her benefit payments will begin not later than 60 days after the

end of the Plan Year in which he or she attains his or her Normal Retirement Date or retires, whichever is later. However, if the amount of the payment or the location of the Participant (after a reasonable search) cannot be ascertained by that deadline, payment shall be made no later than 60 days after the earliest date on which such amount or location is ascertained but in no event later than an described below.

Prior to January 1, 2002, benefit payments shall begin by the "Required Beginning Date" which shall be the April 1 immediately following the end of the calendar year in which the Participant attains age 70½ (whether or not he or she is an Employee). Effective as of January 1, 2002, the Required Beginning Date shall be the April 1 of the calendar year following the calendar year in which the Participant attains age 70 ½ or retires.

11.8 Payment Within Life Expectancy

The Participant's payment election must be consistent with the requirement of Code section 401(a)(9) that all payments are to be completed within a period not to exceed the lives or the joint and last survivor life expectancy of the Participant and his or her Beneficiary. The life expectancies of a Participant and his or her Beneficiary may not be recomputed annually. Effective January 1, 2002, the Plan will apply the minimum distribution requirements of Section 401(a)(9) of the Internal Revenue Code in accordance with the regulations under Section 401(a)(9) that were proposed on January 17, 2001, notwithstanding any provision of the Plan to the contrary. This provision shall continue in effect until the end of the last calendar year beginning before the effective date of final regulations under Section 401(a)(9) or such other date as may be specified in guidance published by the Internal Revenue Service.

11.9 Incidental Benefit Rule

The Participant's payment election must be consistent with the requirement that, if the Participant's spouse is not his or her sole primary Beneficiary, the minimum annual distribution for each calendar year, beginning with the Participant's Required Beginning Date, shall not be less than the quotient obtained by dividing (a) the Participant's vested Account balance as of the last Trade Date of the preceding year by (b) the applicable divisor as determined under the incidental benefit requirements of Code section 401(a)(9).

11.10 Payment to Beneficiary

Payment to a Beneficiary must either: (1) be completed by the end of the calendar year that contains the fifth anniversary of the Participant's death or (2) begin by the and of the calendar year that contains the first anniversary of the Participant's death and be completed within the period of the Beneficiary's life or life expectancy, except that:

(a) If the Participant dies after his Required Beginning Date, payment to his or her Beneficiary must be made at least as rapidly as provided in the Participant's distribution election;

(b) If the surviving spouse is the Beneficiary, payments need not begin until the end of the calendar year in which the Participant would have attained age 70½ and must be completed within the spouse's life or life expectancy; and

(c) If the Participant and the surviving spouse who is the Beneficiary die (1) before the April 1 immediately following the end of the calendar year in which the Participant would have attained age 70½ and (2) before payments have begun to the spouse, the spouse will be treated as the Participant in applying these rules.

11.11 Beneficiary Designation

Each Participant may complete a beneficiary designation form indicating the Beneficiary who is to receive the Participant's remaining Plan interest at the time of his or her death. The designation may be changed at any time. However, a Participant's spouse shall be the sole primary Beneficiary unless the designation includes spousal consent for another Beneficiary. If no proper designation is in effect at the time of a Participant's death or if the Beneficiary does not survive the Participant, the Beneficiary shall be, in the order listed, the:

(a) Participant's surviving spouse,

(b) Participant's children, in equal shares, per stirpes (by right of representation), or

(c) Participant's estate.

11.12 Distributions on and after January 1, 1993

This Section applies to distributions made on or after January 1, 1993. Notwithstanding any provision of the Plan to the contrary that would otherwise limit a Distributee's election under this Section, a Distributee may elect, at the time and in the manner prescribed by the Plan Administrator, to have any portion of an Eligible Rollover Distribution paid directly to an Eligible Retirement Plan specified by the Distributes in a Direct Rollover.

ARTICLE 12
**ADP AND ACP TESTS**

12.1 Salary Reduction Discrimination Limitation.

The Employer shall not permit a Participant to defer an amount of Compensation that would cause the Plan to not satisfy at least one of the following tests in any Plan Year:

(a) The Actual Deferral Percentage for a Plan Year for the group of Highly Compensated Employees shall not exceed the current year's Actual Deferral Percentage for all other eligible Employees who are Nonhighly Compensated Employees for the current Plan Year multiplied by 1.25; or

(b) The Actual Deferral Percentage for a Plan Year for the group of Highly Compensated Employees shall not exceed the current year's Actual Deferral Percentage for all other eligible Employees who are Nonhighly Compensated Employees for the current Plan Year multiplied by 2.0, provided that the Actual Deferral Percentage for the group of Highly Compensated Employees does not exceed the Actual Deferral Percentage of all other eligible Employees who are Nonhighly Compensated Employees for the current Plan Year by more than two (2) percentage points or such lesser amount as the Secretary of the Treasury shall prescribe to prevent the multiple use of this alternative limitation with respect to any Highly Compensated Employee as set forth in Section 401(m)(9) of the Code, Treasury Regulation Section 1.401(m)-2, and other guidance issued thereunder.

In applying the foregoing limitations, an Employee is a Highly Compensated Employee for a particular Plan Year if he or she meets the definition of a Highly Compensated Employee in effect for that Plan Year. Similarly, an Employee is a Nonhighly Compensated Employee for a particular Plan Year if he or she does not meet the definition of a Highly Compensated Employee in effect for that Plan Year. The Actual Deferral Percentage for a specified group of Employees for an applicable Plan Year shall be the average of ratios (calculated separately for each Employee in such group) of (i) the amount of Salary Reduction Contributions actually paid over to the Trust on behalf of each such Employee for such Plan Year, to (ii) the Employee's Compensation for that portion of the applicable Plan Year during which the Employee was eligible to participate. In computing the Actual Deferral Percentage, Salary Reduction Contributions shall not include any amounts properly returned to (iii) the Participant as excess Annual Additions under Section 12.3; or (iv) a Nonhighly Compensated Employee as excess deferrals under Section 12.3. The Actual Deferral Percentage for a Participant who makes no Salary Reduction Contributions during a Plan Year shall be 0%.

Contributions taken into account for purposes of determining the Actual Deferral Percentage test must be made before the last day of the twelve-month period immediately following the Plan Year to which the contributions relate. In computing the Actual Deferral Percentage, the Committee may include in subparagraph (i) above, the amount of any Employer contributions which are 100% vested when made and are unavailable for withdrawal under any circumstances. Such contributions shall be placed in the Qualified Nonelective Contribution Account. If matching contributions are taken into account for purposes of this subparagraph (i), they must meet the requirements applicable to Employer contributions in the preceding sentence. Such contributions shall be placed in the Qualified Matching Contribution Account. In the event Salary Reduction Contributions are used to satisfy the Average Contribution Percentage test under Section 12.2, the Actual Deferral Percentage test must be satisfied both with and without inclusion of the Salary Reduction Contributions used in the Average Contribution Percentage test.

The Actual Deferral Percentage for any Employee who is a Highly Compensated Employee for the Plan Year and who has Salary Reduction Contributions allocated to his account under two or more plans of the Employer, shall be determined as if all such contributions were made under a single plan. If the above plans have different plan years, all cash or deferred arrangements ending with or within the same calendar year shall be treated as a single arrangement.

In the event that this Plan satisfies the requirements of Section 401(k), 401(a)(4) or 410(b) of the Code only if aggregated with one or more other plans, or if one or more other plans satisfy the requirements of Section 401(k), 401(a)(4) or 410(b) of the Code only if aggregated with this Plan, then this Section shall be applied by determining the Actual Deferral Percentages of Participants as if all such plans were a single plan. Plans may be aggregated to satisfy Section 401(k) of the Code only if they have the same plan year and use the same Actual Deferral Percentage testing method.

The Employer shall maintain records sufficient to demonstrate satisfaction of the Actual Deferral Percentage test. The determination and treatment of the Actual Deferral Percentage amounts of any Participant shall satisfy such other requirements as may be prescribed by the Secretary of the Treasury.

12.2 Limitations on Matching Contributions.

The Employer shall not make matching contributions to the Plan which would cause the Plan not to satisfy at least one of the following tests in any Plan Year:

(a) The Average Contribution Percentage for a Plan Year for the group of Highly Compensated Employees shall not exceed the current year's

Average Contribution Percentage for all other eligible Employees who are Nonhighly Compensated Employees in the current Plan Year multiplied by 1.25; or

(b) The Average Contribution Percentage for a Plan Year for the group of Highly Compensated Employees shall not exceed the current year's Average Contribution Percentage for all other eligible Employees who are Nonhighly Compensated Employees in the current Plan Year multiplied by 2.0, provided that the Average Contribution Percentage for the group of Highly Compensated Employees does not exceed the Average Contribution Percentage for all other eligible Employees who are Nonhighly Compensated employees in the current Plan Year by more than two (2) percentage points or such lesser amount as the Secretary of the Treasury shall prescribe to prevent the multiple use of this alternative limitation with respect to any Highly Compensated Employee as set forth in Section 401(m)(9) of the Code, Treasury Regulation Section 1.401(m)-2, and other guidance issued thereunder.

A Participant is a Highly Compensated Employee for a particular Plan Year if he or she meets the definition of a Highly Compensated Employee in effect for that Plan Year. Similarly, a Participant is a Nonhighly Compensated Employee for a particular Plan Year if he or she does not meet the definition of a Highly Compensated Employee in effect for that Plan Year. For purposes of this Section, the Average Contribution Percentage for a specified group of Employees shall be the average of the ratios (calculated separately for each Employee in the group) of (i) the matching contributions under the Plan on behalf of the Employee for the applicable Plan Year, to (ii) the Employee's Compensation for that portion of the applicable Plan Year during which the Employee was eligible to participate. The Average Contribution Percentage for a Participant who is not allocated a matching contribution shall be 0%. For purposes of determining Contribution Percentages, Salary Reduction Contributions are considered to have been made in the Plan Year in which contributed to the Trust. Employer contributions will be considered made for a Plan Year if made no later than the end of the twelve-month period beginning on the day after the close of the Plan Year. In computing Contribution Percentages, the Committee may include in subparagraph (i) above, Salary Reduction Contributions, except for Salary Reduction Contributions which are properly distributed as excess Annual Additions under Section 12.3, and nonelective Employer contributions which are 100% vested when made and are not available for withdrawal under any circumstances. Such nonelective Employer contributions shall be placed in the Qualified Nonelective Contribution Account.

In computing Contribution Percentages, the Committee shall not include matching contributions that are forfeited either to correct Excess Aggregate Contributions under Section 12.3 or because the contributions

to which the matching contributions relate are excess deferrals, excess contributions or excess aggregate contributions.

The Contribution Percentage for any Employee who is a Highly Compensated Employee for the Plan Year and who has matching contributions allocated to his account under two or more plans of the Employer shall be determined as if all such contributions were made under a single plan. If the above plans have different plan years, the plans ending with or within the same calendar year shall be treated as a single plan.

In the event that this Plan satisfies the requirements of Section 401(m), 401(a)(4) or 410(b) of the Code only if aggregated with one or more other plans, or if one or more other plans satisfy the requirements of Section 401(m), 401(a)(4) or 410(b) of the Code only if aggregated with this Plan, then this Section shall be applied by determining the Contribution Percentages of Employees as if all such plans were a single plan. Plans may be aggregated in order to satisfy Section 401(m) of the Code only if they have the same Plan Year and use the same Actual Contribution Percentage testing method.

The determination and treatment of the Contribution Percentage of any Employee shall satisfy such other requirements as may be prescribed by the Secretary of the Treasury. The Employer shall maintain records sufficient to demonstrate satisfaction of the Average Contribution Percentage test.

12.3 Correction of ADP and ACP Tests

(a) Notwithstanding the foregoing Section 12.1, with respect to any Plan Year in which Salary Reduction Contributions on behalf of Highly Compensated Employees exceed the applicable limit, the Committee shall reduce the amount of the Excess Contributions made on behalf of the Highly Compensated Employees (determined by reducing such contributions in order of actual deferral percentages beginning with the highest), and shall distribute any Excess Contributions which exist after such reduction, as adjusted by the income or loss allocable to such Excess Contributions, to the affected Highly Compensated Employees no later than March 15 of the year following the Plan Year in which any such Excess Contributions arose, but in no event shall such amounts be distributed later than the end of the Plan Year following the Plan Year for which such Excess Contributions were allocated. Excess Contributions are allocated to the Highly Compensated Employees with the largest amount of Salary Reduction Contributions taken into account in calculating the Actual Deferral Percentage test for the year in which the excess arose, beginning with the Highly Compensated Employee with the largest amount of Salary Reduction Contributions and continuing in descending order until all Excess Contributions have been allocated. For

purposes of the preceding sentence, the "largest amount" is determined after distribution of any Excess Contributions.

For this section, "Excess Contributions" shall mean, with respect to any Plan Year, the aggregate amount of Employer contributions actually taken into account in computing the Actual Deferral Percentage of the Highly Compensated Employees over the maximum amount of such contributions permitted by the Actual Deferral Percentage test. The income or loss allocable to the Excess Contributions shall be the amount determined by multiplying the income or loss allocable to the Participant's accounts containing the Excess Contributions for the Plan Year by a fraction, the numerator of which is the Excess Contributions on behalf of the Participant for the Plan Year and the denominator of which is the Participant's account balance in his accounts containing the Excess Contributions as of the Accounting Date of the Plan Year in which the Excess Contribution is made without regard to any gain or loss allocable to such total amount for the Plan Year.

(b) Excess Aggregate Contributions and income allocable thereto shall be distributed no later than March 15 of the Plan Year following the Plan Year for which any such Excess Aggregate Contribution arose, but in no event shall the Excess Aggregate Contributions be distributed later than the last day of the Plan Year following the Plan Year for which the contributions giving rise to the Excess Aggregate Contributions were allocated. If Excess Aggregate Contributions are distributed more than 2½ months after the last day of the Plan Year in which such excess amounts arose, a ten (10) percent excise tax will be imposed on the Employer maintaining the Plan with respect to those amounts. Excess Aggregate Contributions shall be treated as Annual Additions under the Plan.

For purposes of this section, "Excess Aggregate Contributions" shall mean, with respect to any Plan Year, the excess of the aggregate amount taken into account in computing the numerator of the Contribution Percentage actually made on behalf of Highly Compensated Employees for such Plan Year, over the maximum aggregate amount permitted by the Average Contribution Percentage test (determined by reducing contributions made on behalf of Highly Compensated Employees in order of their Compensation Percentages beginning with the highest of such percentages). Excess Aggregate Contributions are allocated to the Highly Compensated Employees with the largest amount taken into account in calculating the Average Contribution Percentage test for the year in which the excess arose, beginning with the Highly Compensated Employee with the largest such amount and continuing in descending order until all the Excess Aggregate Contributions have been allocated. Such determination shall be made after first determining Excess Contributions and then determining Excess Aggregate Contributions pursuant to this section. The Excess Aggregate Contributions to be distributed to a Participant shall be

adjusted by the income or loss allocable to such Excess Aggregate Contribution. The income or loss allocable to the Excess Aggregate Contributions shall be the amount determined by multiplying the income or loss allocable to the Participant's accounts containing the excess amounts for the Plan Year by a fraction, the numerator of which is the Excess Aggregate Contributions on behalf of the Participant for the Plan Year and the denominator of which is the Participant's account balance in the accounts containing the excess amounts as of the Accounting Date of the Plan Year in which the Excess Aggregate Contribution is made without regard to any gain or loss allocable to such total amount for the Plan Year.

ARTICLE 13

**MAXIMUM CONTRIBUTION AND BENEFIT LIMITATIONS**

13.1 "Annual Addition" Defined

The sum of all amounts allocated to the Participant's Account for a Plan Year. Amounts include contributions (except for rollovers or transfers from another qualified plan), forfeitures and, if the Participant is a Key Employee (pursuant to Section 14) for the applicable or any prior Plan Year, medical benefits provided pursuant to Code section 419A(d)(1). For purposes of this Section 13.1, "Account" also includes a Participant's account in all other defined contribution plans currently or previously maintained by any Related Company. The Plan Year refers to the year to which the allocation pertains, regardless of when it was allocated. The Plan Year shall be the Code section 415 limitation year.

13.2 Maximum Annual Addition

The Annual Addition to a Participant's accounts under this Plan and any other defined contribution plan maintained by any Related Company for any Plan Year shall not exceed the lesser of (1) 25% of his or her Taxable Income or (2) $30,000 adjusted to reflect cost of living and other increases, from time to time, in accordance with regulations prescribed by the Secretary of the Treasury or his or her delegate.

13.3 Avoiding an Excess Annual Addition

If, at any time during a Plan Year, the allocation of any additional Contributions would produce an excess Annual Addition for such year, Contributions to be made for the remainder of the Plan Year shall be limited to the amount needed for each affected Participant to receive the maximum Annual Addition.

13.4 Correcting an Excess Annual Addition

Upon the discovery of an excess Annual Addition to a Participant's Account (resulting from forfeitures, allocations, reasonable error in determining Participant compensation or the amount of elective contributions, or other facts and circumstances acceptable to the Internal Revenue Service) the excess amount (adjusted to reflect investment gains) shall first be returned to the Participant to the extent of his or her After-Tax Contributions, and then to the extent of his or her Pre-Tax Contributions (however to the extent After-Tax and/or Pre-Tax Contributions were matched, the applicable Company Match Contributions shall be forfeited in proportion to the returned matched After-Tax and/or Pre-Tax Contributions) and the remaining excess, if any, shall be forfeited by the Participant and together with forfeited Company Match Contributions used to reduce subsequent Contributions as soon as is administratively feasible.

13.5 Correcting a Multiple Plan Excess

If a Participant, whose Account is credited with an excess Annual Addition, received allocations to more than one defined contribution plan, the excess shall be corrected by reducing the Annual Addition to this Plan only after all possible reductions have been made to the other defined contribution plans.

13.6 "Defined Benefit Fraction" Defined

The fraction, for any Plan Year, where the numerator is the "projected annual benefit" and the denominator is the greater of 125% of the "protected current accrued benefit" or the normal limit which is the lesser of (1) 125% of the maximum dollar limitation provided under Code section 415(b)(1)(A) for the Plan Year or (2) 140% of the amount which may be taken into account under Code section 415(b)(1)(B) for the Plan Year, where a Participant's:

(a) "projected annual benefit" is the annual benefit provided by the Plan determined pursuant to Code section 415(e)(2)(A), and

(b) "protected current accrued benefit" in a defined benefit plan in existence on (1) July 1, 1982. shall be the accrued annual benefit provided for under Public Law 97-248, section 235(g)(4), as amended, or (2) on May 6, 1986, shall be the accrued annual benefit provided for under Public Law 99-514, section 1106(i)(3).

13.7 "Defined Contribution Fraction" Defined

The fraction where the numerator is the sum of the Participant's Annual Addition for each Plan Year to date and the denominator is the sum of the "annual amounts" for each year in which the Participant has performed service with a Related Company. The "annual amount" for any Plan Year is the lesser of (1) 125% of the Code section 415(c)(1)(A) dollar limitation (determined without regard to subsection (c)(6)) in effect for the Plan Year and (2) 140% of the Code section 415(c)(1)(B) amount in effect for the Plan Year, where:

(a) each Annual Addition is determined pursuant to the Code section 415(c) rules in effect for such Plan Year, and

(b) the numerator is adjusted pursuant to Public Law 97-248, section 235(g)(3), as amended, or Public Law 99-514, section 1106(i)(4).

13.8 Combined Plan Limits and Correction

If a Participant has also participated in a defined benefit plan maintained by a Related Company, the sum of the Defined Benefit Fraction and the Defined contribution Fraction for any Plan Year may not exceed 1.0. If the combined fraction exceeds 1.0 for any Plan Year, the Participant's benefit under any defined benefit plan (to the extent it has not been distributed or used to purchase an

annuity contract) shall be limited so that the combined fraction does not exceed 1.0 before any defined contribution limits will be enforced. Effective as of January 1, 2000, the combined fraction shall no longer be applicable and the foregoing Section 13.8 shall be of no force or effect.

ARTICLE 14
**TOP HEAVY RULES**

14.1 Top Heavy Definitions

When capitalized, the following words and phrases have the following meanings when used in this section:

(a) "Aggregation Group" shall mean the group consisting of each qualified plan of an Employer (and its Related Companies) (1) in which a Key Employee is a participant or was a participant during the determination period (regardless of whether such plan has terminated), or (2) which enables another plan in the group to meet the requirements of Code sections 401(a)(4) and 410(b). The Employer may also treat any other qualified plan as part of the group if the group would continue to meet the requirements of Code sections 401(a)(4) and 410(b) with such plan being taken into account.

(b) "Determination Date" shall mean the last Trade Date of the preceding Plan Year or, in the case of the Plan's first year, the last Trade Date of the first Plan Year.

(c) "Key Employee" shall mean any Employee, including former Employees under the Plan who, at any time during the Plan Year containing the Determination Date or during any of the four (4) preceding Plan Years, is or was one of the following:

(1) an officer of an Affiliated Employer, having annual compensation from the Affiliated Employer greater than fifty percent (50%) of the dollar amount in effect under Code Section 415(b)(1)(A). Whether an individual is an officer shall be determined by the Committee on the basis of all the facts and circumstances, such as an individual's authority, duties and term of office, not on the mere fact that the individual has the title of an officer. For any such Plan Year, there shall be treated as officers no more than the lesser of (i) fifty (50) Employees, or (ii) the greater of three (3) Employees or ten percent (10%) of the greatest number of Employees. For this purpose, the highest paid officers shall be selected.

(2) One of ten (10) Employees having annual compensation greater than the dollar limitation in effect under Code Section 415(c)(1)(A) and owning (or considered as owning, within the meaning of the constructive ownership rules of the Code) more than one-half percent (.5%) interest in the value and the largest percentage interests in an Affiliated Employer. An Employee who

has such ownership interest is considered to have one (1) of the largest interest in the Affiliated Employer unless at least ten (10) other Employees own a greater interest than that Employee during any year in the testing period and such other employees have annual compensation during such Plan Year or ownership greater than the dollar limitation in effect under Code Section 415(c)(1)(A) for the Plan Year. Ownership shall be determined on the basis of percentage of ownership interest in total ownership value and not dollar amounts.

(3) Any person who owns (or considered as owning, within the meaning of the constructive ownership rules of the Code) more than five percent (5%) of the outstanding stock of an Affiliated Employer or possessing more than five percent (5%) of the combined total voting power of an Affiliated Employer.

(4) A one percent (it) owner of outstanding stock of an Affiliated Employer having an annual compensation from the Affiliated Employer of more than $150,000.

For purposes of this Section 14.1(c), compensation shall mean compensation as defined in section 414(q)(7) of the Code.

For purposes of Subsections (1), (2), (3) and (4) of this definition, a Beneficiary of a key employee shall be treated as a key employee. For purposes of Subsection (3) and (4), each Affiliated Employer is treated separately in determining ownership percentages; but in determining the amount of compensation, each Affiliated Employer is taken into account.

(d) "Plan Benefit". The sum as of the Determination Date of (1) an Employee's Account, (2) the present value of his or her other accrued benefits provided by all qualified plans within the Aggregation Group, and (3) the aggregate distributions made within the five year period ending on such date. Plan Benefits shall exclude rollover contributions and plan to plan transfers made after December 31, 1983 which are both employee initiated and from a plan maintained by a non-related employer.

(e) "Top Heavy". The Plans status when the Plan Benefits of Key Employees account for more than 60% of the Plan Benefits of all Employees who have performed services at any time during the five year period ending on the Determination Date. The Plan Benefits of Employees who were, but are no longer, Key Employees (because they have not been an officer or Owner during the five year period), are excluded in the determination. Top Heavy Determination is made without regard to Plan Benefits of an Employee who has not performed services for the Employer at any time during the five year period ending on the Determination Date. Solely for the purpose of determining if the Plan, or any other plan included in a

required aggregation group of which this Plan is a party, is Top Heavy (within the meaning of Section 416(q) of the Code) the accrued benefit of an Employee other than a Key Employee (within the meaning of Section 416(1)(1) of the Code) shall be determined under (a) the method, if any, that uniformly applies for accrual purposes under all plans maintained by the Affiliated Employers, or (b) if there is no such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under the fractional accrual rate of Section 411(b)(1)(C) of the Code.

14.2 Special Contributions

(a) Minimum Contribution Requirement. For each Plan Year in which the Plan is Top Heavy, the Employer shall not allow any contributions (other than a Rollover Contribution) to be made by or on behalf of any Key Employee unless the Employer makes a contribution (other than Pre-Tax and Company Match contributions) on behalf of all Participants who were Eligible Employees an of the last day of the Plan Year in an amount equal to at least the lesser of (1) 3% of each such Participant's Taxable Income or (ii) the largest percentage of Taxable Income contributed by or on behalf of any Key Employee for that Plan Year. The Administrator shall remove any such contributions (including applicable investment gain or loss) credited to a Key Employee's Account in violation of the foregoing rule and return them to the Employer or Employee to the extent permitted by the Limited Return of Contributions paragraph of Section 18.

(b) Overriding Minimum Benefit. Notwithstanding, contributions shall be permitted on behalf of Key Employees if the Employer also maintains a defined benefit plan which automatically provides a benefit which satisfies the Code section 416(c)(1) minimum benefit requirements, including the adjustment provided in code section 416(h)(2)(A), if applicable. If this Plan is part of an aggregation group in which a Key Employee is receiving a benefit and no minimum is provided in any other plan, a minimum contribution of at least equal to the lesser of (1) 3% of Taxable Income or (ii) the largest percentage of Taxable Income contributed by or on behalf of any Key Employee, shall be provided to the Employees specified in the preceding paragraph of this plan. In addition, the Employer may offset a defined benefit minimum by contributions (other than Pre-Tax and Company Match Contributions) made to this Plan.

14.3 Special Vesting

If the Plan becomes Top Heavy after the Effective Date, vesting for all Employees shall thereafter be accelerated to the extent the following vesting schedule produces a greater vested percentage for the Employee than the normal vesting schedule at any relevant time:

| Years of Vesting Service | Vested Percentage |
|---|---|
| Less than 2 | 0% |
| 2 but less than 3 | 20% |
| 3 but less than 4 | 50% |
| 4 but less than 5 | 75% |
| 5 or more | 100% |

14.4. Adjustment to Combined Limits for Different Plans

For each Plan Year in which the Plan is Top Heavy, 100% shall be substituted for 125% in determining the Defined Benefit Fraction and the Defined Contribution Fraction. Effective as of January 1, 2000, the combined limit shall no longer be applicable and the foregoing Section 14.4 shall be of no force or effect.

## ARTICLE 15
## PLAN ADMINISTRATION

15.1 Plan Delineates Authority and Responsibility

Plan fiduciaries include the Company, the Administrator, the Committee and/or the Trustee, an applicable, whose specific duties are delineated in this Plan and Trust. In addition, Plan fiduciaries also include any other person to whom fiduciary duties or responsibility is delegated with respect to the Plan. Any person or group may serve in more than one fiduciary capacity with respect to the Plan. To the extent permitted under ERISA section 405, no fiduciary shall be liable for a breach by another fiduciary.

15.2 Fiduciary Standards

Each fiduciary shall:

(a) discharge his or her duties in accordance with this Plan and Trust to the extent they are consistent with ERISA;

(b) use that degree of care, skill, prudence and diligence that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(c) act with the exclusive purpose of providing benefits to Participants and their Beneficiaries, and defraying reasonable expenses of administering the Plan;

(d) diversify Plan investments, to the extent such fiduciary is responsible for directing the investment of Plan assets, so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(e) treat similarly situated Participants and Beneficiaries in a uniform and nondiscriminatory manner,

15.3 Company is ERISA Plan Administrator

The Company is the plan administrator, within the meaning of ERISA section 3 (16), which is responsible for compliance with all reporting and disclosure requirements, except those that are explicitly the responsibility of the Trustee under applicable law. The Administrator and/or Committee shall have any necessary authority to carry out such functions through the actions of the Administrator, duly appointed officers of the Company, and/or the Committee.

15.4 Administrator Duties

The Administrator shall have the discretionary authority to construe this Plan and Trust, other than the provisions which relate to the Trustees and to do all things necessary or convenient to effect the intent and purposes of the Plan, whether or not such powers are specifically set forth in this Plan and Trust. Actions taken in good faith by the Administrator shall be conclusive and binding on all interested parties, and shall be given the maximum possible deference allowed by law. In addition to the duties listed elsewhere in this Plan and Trust, the Administrator's authority shall include, but not be limited to, the discretionary authority to:

(a) determine who is eligible to participate, if a contribution qualifies as a rollover contribution, the allocation of Contributions, and the eligibility for loans, withdrawals and distributions;

(b) provide each Participant with a summary plan description no later than 90 days after he or she has become a Participant (or such other period permitted under ERISA section 104(b)(1)), as well as informing each Participant of any material modification to the Plan in a timely manner;

(c) make a copy of the following documents available to Participants during normal work hours: this Plan and Trust (including subsequent amendments), all annual and interim reports of the Trustee related to the entire Plan, the latest annual report and the summary plan description;

(d) determine the fact of a Participant's death and of any Beneficiary's right to receive the deceased Participant's interest based upon such proof and evidence as it deems necessary;

(e) establish and review at least annually a funding policy bearing in mind both the short-run and long-run needs and goals of the Plan. To the extent Participants may direct their own investments, the funding policy shall focus on which Investment Funds Participants are available for Participants to use; and

(f) adjudicate claims pursuant to the claims procedure described in Section 18.

15.5 Advisors May Be Retained

The Administrator may retain such agents and advisors (including attorneys, accountants, actuaries, consultants, record keepers, investment counsel and administrative assistants) as it considers necessary to assist it in the performance of its duties. The Administrator shall also comply with the bonding requirements of ERISA section 412.

15.6 Delegation of Administrator Duties

The Company, as Administrator of the Plan, has by action of the Board of Directors appointed a Committee to administer the Plan on its behalf. The Company shall provide the Trustee with the names and specimen signatures of any persons authorized to serve as Committee members and act as or on its behalf. Any Committee member appointed by the Company shall serve at the pleasure of the Company, but may resign by written notice to the Company. Committee members shall serve without compensation from the Plan for such services. Except to the extent that the Company otherwise provides, any delegation of duties to a Committee shall carry with it the full discretionary authority of the Administrator to complete such duties.

15.7 Committee Operating Rules

(a) Actions of majority. Any act delegated by the Company to the Committee may be done by a majority of its members. The majority may be expressed by a vote at a meeting or in writing without a meeting, and a majority action shall be equivalent to an action of all Committee members.

(b) Meetings. The Committee shall hold meetings upon such notice, place and times as it determines necessary to conduct its functions properly.

(c) Reliance by Trustee. The Committee may authorize one or more of its members to execute documents on its behalf and may authorize one or more of its members or other individuals who are not members to give written direction to the Trustee in the performance of its duties. The Committee shall provide such authorization in writing to the Trustee with the name and specimen signatures of any person authorized to act on its behalf. The Trustee shall accept such direction and rely upon it until notified in writing that the Committee has revoked the authorization to give such direction. The Trustee shall not be deemed to be on notice of any change in the membership of the Committee, parties authorized to direct the Trustee in the performance of its duties, or the duties delegated to and by the Committee until notified in writing.

# ARTICLE 16
## MANAGEMENT OF INVESTMENTS

16.1 Trust Agreement

All Plan assets shall be held by the Trustee in trust, in accordance with those provisions of this Plan and Trust which relate to the Trustee, for use in providing Plan benefits and paying Plan expenses not paid directly by the Employer. Plan benefits will be drawn solely from the Trust and paid by the Trustee as directed by the Administrator. Notwithstanding, the Administrator may appoint, with the approval of the Trustee, another trustee to hold and administer Plan assets which do not meet the requirements of Section 16.2.

16.2 Investment Funds

The Administrator is hereby granted authority to direct the Trustee to invest Trust assets in one or more Investment Funds. The number and composition of Investment Funds may be changed from time to time, by amending this Plan and Trust document. The Trustee may establish reasonable limits on the number of Investment Funds as well as the acceptable assets for any such Investment Fund. Each of the Investment Funds may be comprised of any of the following:

(a) shares of a registered investment company, whether or not the Trustee or any of its affiliates is an advisor to, or other service provider to, such company;

(b) collective investment funds maintained by the Trustee, or any other fiduciary to the Plan, which are available for investment by trusts which are qualified under Code sections 401(a) and 501(a);

(c) individual equity and fixed income securities which are readily trade able on the open market;

(d) guaranteed investment contracts issued by a bank or insurance company;

(e) interest bearing deposits of the Trustee; and

(f) NUI Stock.

Any Investment Fund assets invested in a collective investment fund, shall be subject to all the provisions of the instruments establishing and governing such fund. These instruments, including any subsequent amendments, are incorporated herein by reference.

16.3 Authority to Hold Cash

The Trustee shall have the authority to cause the investment manager of each Investment Fund to maintain sufficient deposit or money market type assets in

each Investment Fund to handle the Fund's liquidity and disbursement needs. Each Participant's and Beneficiary's Sweep Account, which is used to hold assets pending investment or disbursement, shall consist of interest bearing deposits of the Trustee.

16.4 Trustee to Act Upon Instructions

The Trustee shall carry out instructions to invest assets in the Investment Funds as soon as practicable after such instructions are received from the Administrator, Participants, or Beneficiaries. Such instructions shall remain in effect until changed by the Administrator, Participants or Beneficiaries.

16.5 Administrator Has Right to Vote Registered Investment Company Shares

The Administrator shall be entitled to vote proxies or exercise any shareholder rights relating to shares held on behalf of the Plan in a registered investment company. Notwithstanding, the authority to vote proxies and exercise shareholder rights related to such shares held in a Custom Fund is vested as provided otherwise in Section 16.

16.6 Custom Fund Investment Management

The Administrator may designate, with the consent of the Trustee, an investment manager for any Investment Fund established by the Trustee solely for Participants of this Plan (a "Custom Fund"). The investment manager may be the Administrator, Trustee or an investment manager pursuant to ERISA section 3(38). The Administrator shall advise the Trustee in writing of the appointment of an investment manager and shall cause the investment manager to acknowledge to the Trustee in writing that the investment manager is a fiduciary to the Plan.

A Custom Fund shall be subject to the following:

(a) Guidelines. Written guidelines, acceptable to the Trustee, shall be established for a Custom Fund. If a Custom Fund consists solely of collective investment funds or shares of a registered investment company (and sufficient deposit or money market type assets to handle the Fund's liquidity and disbursement needs), its' underlying instruments shall constitute the guidelines.

(b) Authority of Investment Manager. The investment manager of a Custom Fund shall have the authority to vote or execute proxies, exercise shareholder rights, manage, acquire, and dispose of Trust assets. Notwithstanding, the authority to vote proxies and exercise shareholder rights related to shares of NUI Stock held in a Custom Fund is vested as provided otherwise in Section 16.

(c) Custody and Trade Settlement. Unless otherwise expressly agreed to by the Trustee, the Trustee shall maintain custody of all Custom Fund assets and be responsible for the settlement of all Custom Fund trades. For purposes of this section, shares of a collective investment fund, shares of a registered investment company and guaranteed investment contracts issued by a bank or insurance company, shall be regarded as the Custom Fund assets instead of the underlying assets of such instruments.

(d) Limited Liability of Co-Fiduciaries. Neither the Administrator nor the Trustee shall be obligated to invest or otherwise manage any Custom Fund assets for which the Trustee or Administrator is not the investment manager nor shall the Administrator or Trustee be liable for acts or omissions with regard to the investment of such assets except to the extent required by ERISA.

16.7 Authority to Segregate Assets

The Company may direct the Trustee to split an Investment Fund into two or more funds in the event any assets in the Fund are not liquid or the value is not readily determinable. In the event of such segregation, the Company shall give instructions to the Trustee on what value to use for the split-off assets, and the Trustee shall not be responsible for confirming such value, except to the extent required by ERISA.

16.8 Maximum Permitted Investment in NUI Stock

The NUI Stock Fund may be comprised entirely of NUI Stock or NUI Stock together with deposit or money market type assets. The Fund may be as large as necessary to comply with Participants' and Beneficiaries' investment elections as well the total investment of Participants' and Beneficiaries' Company Match Accounts.

16.9 Participants Have Right to Vote and Tender NUI Stock

Each Participant or Beneficiary shall be entitled to instruct the Trustee as to the voting or tendering of any full or partial shares of NUI Stock held on his or her behalf in the NUI Stock Fund. Prior to such voting or tendering of NUI Stock, each Participant or Beneficiary shall receive a copy of the proxy solicitation or other material relating to such vote or tender decision and a blank form for the Participant or Beneficiary to complete which confidentially instructs the Trustee to vote or tender such shares in the manner indicated by the Participants or Beneficiaries. Upon receipt of such instructions, the Trustee shall act with respect to such shares as instructed. The Administrator shall instruct the Trustee with respect to how to vote or tender any shares for which instructions are not received from Participants or Beneficiaries.

The Trustee shall hold a Participant's or Beneficiary's instructions in confidence and will not divulge or release specific information regarding a Participant's or

Beneficiary's instructions to any person, including officers or Employees of the Company, except to the extent necessary to comply with Federal laws or state laws not preempted by ERISA.

16.10 Registration and Disclosure for NUI Stock

The Administrator shall be responsible for determining the applicability (and, if applicable, complying with) the requirements of the Securities Act of 1933, as amended, the California Corporate Securities Law of 1968, as amended, and any other applicable blue sky law. The Administrator shall also specify what restrictive legend or transfer restriction, if any, is required to be set forth on the certificates for the securities and the procedure to be followed by the Trustee to effectuate a resale of such securities.

ARTICLE 17
**TRUST ADMINISTRATION**

17.1 Trustee to Construe Trust

The Trustee shall have the discretionary authority to construe those provisions of this Plan and Trust which relate to the Trustee and to do all things necessary or convenient to the administration of the Trust, whether or not such powers are specifically set forth in this Plan and Trust. Actions taken in good faith by the Trustee shall be conclusive and binding on all interested parties, and shall be given the maximum possible deference allowed by law.

17.2 Trustee To Act As Owner of Trust Assets

Subject to the specific conditions and limitations set forth in this Plan and Trust, the Trustee shall have all the power, authority, rights and privileges of an absolute owner of the Trust assets and, not in limitation but in amplification of the foregoing, may:

(a) receive, hold, manage, invest and reinvest, sell, tender, exchange, dispose of, encumber, hypothecate, pledge, mortgage, lease, grant options respecting, repair, alter, insure, or distribute any and all property in the Trust;

(b) borrow money, participation in reorganizations, pay calls and assessments, vote or execute proxies, exercise subscription of conversion privileges, exercise options and register any securities in the Trust in the name of the nominee, in federal book entry form or in any other form as will permit title thereto to pass by delivery;

(c) renew, extend the due date, compromise, arbitrate, adjust, settle, enforce or foreclose, by judicial proceedings or otherwise, or defend against the same, any obligations or claims in favor of or against the Trust; and

(d) lend, through a collective investment fund, any securities held in such collective investment fund to brokers, dealers or other borrowers and to permit such securities to be transferred into the name and custody and be voted by the borrower or others.

17.3 United States Indicia of Ownership

The Trustee shall not maintain the indicia of ownership of any Trust assets outside the jurisdiction of the United States, except as authorized by ERISA section 404(b).

17.4 Tax Withholding and Payment

(a) Withholding. The Trustee shall calculate and withhold federal (and, if applicable, state) income taxes with regard to any Eligible Rollover Distribution that is not paid as a Direct Rollover in accordance with the Participant's withholding election or as required by law if no election is made or the election is less than the amount required by law. With regard to any taxable distribution that is not an Eligible Rollover Distribution, the Trustee shall calculate and withhold federal (and, if applicable, state) income taxes in accordance with the Participant's withholding election or as required by law if no election is made.

(b) Taxes Due From Investment Funds. The Trustee shall pay from the Investment Fund any taxes or assessments imposed by any taxing or governmental authority on such Fund or its income, including related interest and penalties.

17.5 Trustee Duties and Limitations

Unless otherwise agreed to by the Trustee, the Trustee's duties shall be confined to construing the terms of the Plan and Trust as they relate to the Trustee, receiving funds on behalf of and making payments from the Trust, safeguarding and valuing Trust assets, and investing and reinventing Trust assets in the Investment Funds as directed by the Administrator or Participants. The Trustee shall have no duty or authority to ascertain whether Contributions are in compliance with the Plan, to enforce collection or to compute or 'verify the accuracy or adequacy or any amount to be paid to it by the Employer. The Trustee shall not be liable for the proper application of any part of the Trust with respect to any disbursement made at the direction of the Administrator.

17.6 Trust Accounting

(a) Annual Report. Within 60 days (or other reasonable period as agreed to by the Administrator) following the close of the Plan Year, the Trustee shall provide the Administrator with an annual accounting of Trust assets and information to assist the Administrator in meeting ERISA's annual reporting and audit requirements.

(b) Periodic Reports. The Trustee shall maintain records and provide sufficient reporting to allow the Administrator to properly monitor the Trust's assets and activity.

(c) Administrator Approval. Approval of any Trustee accounting will automatically occur 90 days after such accounting has been received by the Administrator, unless the Administrator files a written objection with the Trustee within such time period. Such approval shall be final as to all matters and transactions stated or shown therein and binding upon the Administrator.

17.7 Valuation of Certain Assets

If the Trustee determines the Trust holds any asset which is not readily tradable and listed on a national securities exchange registered under the Securities Exchange Act of 1934 , as amended, the Trustee may engage a qualified independent appraiser to determine the fair market value of such property, and the appraisal fees shall be paid from the Investment Fund containing the asset.

17.8 Legal Counsel

The Trustee may consult with legal counsel of its choice, including counsel for the Employer or counsel of the Trustee, upon any question or matter arising under this Plan and Trust. The Trustee shall notify the Administrator in writing in advance of incurring any legal expense, other than any legal expense to be paid by the Trustee, and shall include in such notice an estimate of the amount of such expenses. When relied upon by the Trustee, the opinion of such counsel shall be evidence that the Trustee has acted in good faith.

17.9 Fees and Expenses

The Trustee's fees for its services as Trustee shall be such an may be mutually agreed upon by the Company and the Trustee. Trustee fees and all reasonable expenses of counsel and advisors retained by the Trustee shall be paid in accordance with Section 6.

ARTICLE 18

**RIGHTS, PROTECTION, CONSTRUCTION AND JURISDICTION**

18.1 Plan Does Not Affect Employment Rights

The Plan does not provide any employment rights to any Employee. The Employer expressly reserves the right to discharge an Employee at any time, with or without cause, without regard to the effect such discharge would have upon the Employee's interest in the Plan.

18.2 Limited Return of Contributions

Except an provided in this paragraph, (1) Plan assets shall not revert to the Employer nor be diverted for any purpose other than the exclusive benefit of Participants or their Beneficiaries; and (2) a Participant's vested interest shall not be subject to divestment. As provided in ERISA section 403(c)(2), the actual amount of a Contribution made by the Employer (or the current value of the Contribution if a net loss has occurred) may revert to the Employer if:

(a) such Contribution is made by reason of a mistake of fact;

(b) initial qualification of the Plan under Code section 401(a) is not received and a request for such qualification is made within the time prescribed under Code section 401(b)(the existence of and Contributions under the Plan are hereby conditioned upon such qualification); or

(c) such Contribution is not deductible under Code section 404 (such Contributions are hereby conditioned upon such deductibility) in the taxable year of the Employer for which the Contribution is made.

The reversion to the Employer must be made (if at all) within one year of the mistaken payment of the Contribution, the date of denial of qualification, or the date of disallowance of deduction, as the case may be. A Participant shall have no rights under the Plan with respect to any such reversion.

18.3 Assignment and Alienation

As provided by Code section 401(a)(13) and to the extent not otherwise required by law, no benefit provided by the Plan may be anticipated, assigned or alienated, except:

(a) to create, assign or recognize a right to any benefit with respect to a Participant pursuant to a QDRO, or

(b) to use a Participant's vested Account balance as security for a loan from the Plan which is permitted pursuant to Code section 4975.

18.4 Facility of Payment

If a Plan benefit is due to be paid to a minor or if the Administrator reasonably believes that any payee is legally incapable of giving a valid receipt and discharge for any payment due him or her, the Administrator shall have the payment of the benefit, or any part thereof, made to the person (or persons or institution) whom it reasonably believes is caring for or supporting the payee, unless it has received due notice of claim therefor from a duly appointed guardian or conservator of the payee. Any payment shall to the extent thereof, be a complete discharge of any liability under the Plan to the payee.

18.5 Reallocation of Lost Participant's Accounts

If the Administrator cannot locate a person entitled to payment of a Plan benefit after a reasonable search, the Administrator may at any time thereafter treat such person's Account as forfeited and use such amount to offset any Employer Contributions or as otherwise provided in Section 8. If such person subsequently presents the Administrator with a valid claim for the benefit, such person shall be paid the amount treated as forfeited, plus the interest that would have been earned in the Sweep Account to the date of determination. The Administrator shall pay the amount through an additional Employer Contribution or direct the Trustee to pay the amount from the Forfeiture Account.

18.6 Claims Procedure

(a) Right to Make Claim. An interested party who disagrees with the Administrator's determination of his or her right to Plan benefits must submit a written claim and exhaust this claim procedure before legal recourse of any type is sought. The claim must include the important issues the interested party believes support the claim. The Administrator, pursuant to the authority provided in this Plan, shall either approve or deny the claim.

(b) Process for Denying a Claim. The Administrator's partial or complete denial of an initial claim must include an understandable, written response covering (i) the specific reasons why the claim is being denied (with reference to the pertinent Plan provisions) and (2) the steps necessary to perfect the claim and obtain a final review.

(c) Appeal of Denial and Final Review. The interested party may make a written appeal of the Administrator's initial decision and the Administrator shall respond in the same manner and form as prescribed for denying a claim initially.

(d) Time Frame. The initial claim, its review, appeal and final review shall be made in a timely fashion, subject to the following time table:

| Action | Days to Respond From Last Action |
|---|---|
| Administrator determines benefit | NA |
| Interested party files initial request | 60 days |
| Administrator's initial decision | 90 days |
| Interested party requests final review | 60 days |
| Administrator's final decision | 60 days |

However, the Administrator may take up to twice the maximum response time for its initial and final review if it provides an explanation within the normal period of why an extension is needed and when its decision will be forthcoming.

18.7 Construction

Headings are included for reading convenience. The text shall control if any ambiguity or inconsistency exists between the headings and the text. The singular and plural shall be interchanged wherever appropriate. References to Participant shall include Beneficiary when appropriate and even if not otherwise already expressly stated.

18.8 Jurisdiction and Severability

The Plan and Trust shall be construed, regulated and administered under ERISA and other applicable federal laws and, where not otherwise preempted, by the laws of the State of California with respect to issues affecting the Trustee's responsibilities and by the laws of the State of New Jersey with respect to all other matters. If any provision of this Plan and Trust shall become invalid or unenforceable, that fact shall not affect the validity or enforceability of any other provision of this Plan and Trust. All provisions of this Plan and Trust shall be so construed as to render then valid and enforceable in accordance with their intent.

18.9 Indemnification by Employer

The Employers hereby agree to indemnify all Plan fiduciaries against any and all liabilities resulting from any action or inaction, (including a Plan termination in which the Company fails to apply for a favorable determination from the Internal Revenue Service with respect to the qualification of the Plan upon its termination), in relation to the Plan or Trust (1) including (without limitation) expenses reasonably incurred in the defense of any claim relating to the Plan or its assets, and amounts paid in any settlement relating to the Plan or its assets, but (2) excluding liability resulting from actions or inactions made in bad faith, or resulting from the Trustee's negligence, willful misconduct, lack of good faith or

breach of its fiduciary duties under the Plan and Trust or ERISA. The Company shall have the right, but not the obligation, to conduct the defense of any action to which this Section applies. The Plan fiduciaries are not entitled to indemnity from the Plan assets relating to any such action.