# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LANCE MILLER et al., | |
| Plaintiffs, | Civil Action No. 23-2540 (RK) (JTQ) |
| v. | **OPINION** |
| NEIL BROZEN et al., | |
| Defendants. | |

## KIRSCH, District Judge

**THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendant Neil Brozen ("Brozen"), (ECF Nos. 21 & 22), and a Motion to Dismiss filed by Defendants Patrick Sook, Defendant Asbury Carbons, Inc., and Asbury Carbons, Inc. Employee Stock Ownership Plan (together, the "Asbury Defendants"), (ECF Nos. 17 & 18). Plaintiffs Lance Miller and Larry Richardson (together, the "Plaintiffs") filed briefs in opposition, (ECF Nos. 26 & 27), and Brozen and the Asbury Defendants filed reply briefs, (ECF Nos. 33 & 34). Also pending is Plaintiffs' Motion to Strike exhibits attached to both Motions to Dismiss, (ECF Nos. 24 & 25), to which Defendants filed oppositions (ECF Nos. 35 & 36), and Plaintiffs replied (ECF No. 38). The Court has considered the Complaint and Defendants' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Brozen's Motion to Dismiss is **DENIED** in part and **GRANTED** in part, and Asbury Defendants' Motion to Dismiss is **DENIED** in part and **GRANTED** in part.

## I.   BACKGROUND

### A.   ASBURY AND THE EMPLOYEE STOCK OPTION PLAN

The following facts are taken from Plaintiffs' Complaint and the judicially noticeable documents attached to Defendants' Motions.[1] Defendant Asbury Carbons, Inc. ("Asbury" or the "Company"), a private corporation founded by the Riddle Family, is one of the largest graphite producers in the United States. (Complaint ("Compl.") ¶ 15, ECF No.1.) In 1984, the Riddle Family established the Defendant Employee Stock Option Plan (the "Plan" or "Asbury ESOP") for the benefit of its employees under Section 3(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(3).  ("Adoption Agmt.", Ex. 2 to ECF No. 18 at 1; Compl. ¶ 14.) Prior to the sale of all the Company's common stock to Mill Rock (the "Mill Rock Transaction"), the Riddle Family owned 80.3% of Asbury's stock and the participants in the Asbury ESOP (the "Plan Participants")[2] owned the remaining 19.7%. (Compl. ¶¶ 15, 43.)

The Asbury ESOP's primary asset is Asbury common stock. (ECF No. 18 at 6.) As required by ERISA, the Asbury ESOP is governed by several documents. (*See* 29 U.S.C. §§ 1102(a)(1), 1103(a).)  Included are the Asbury Carbons, Inc. Non-Standardized, Non-Mass Submitter Employee Stock Ownership Plan (the "Plan Document") and the Adoption Agreement to the Plan Document (the "Adoption Agreement"), which comprise the Plan Documents establishing the Asbury ESOP. (*See* 29 U.S.C. §§ 1102(a)(1); the "Plan Doc.", Ex. 1 to ECF 18 and Ex.1 to ECF

---

[1] As discussed below in the Motion to Strike section, *see* Section III.A, *infra*, certain documents can be properly considered at a motion to dismiss posture because Plaintiffs' claims are based on these documents despite not referencing them in the Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

[2] This Opinion refers to the Plan Participants interchangeably with Plaintiffs because Plaintiffs are both participants in the Asbury ESOP and make claims on behalf of the entire class of Plan Participants.

23; "Adoption Agmt.", Ex. 2 to ECF No. 18.)[3]  Additionally, the "Trust Agreement" establishes the trust to hold the ESOP's assets, appoint a trustee, and define the scope of the responsibilities of the trustee. (*See generally* "Trust Agmt.", Ex. 3 to ECF No. 18 and Ex. 2 to ECF No. 23.)[4]

The Plan Document established the Asbury ESOP. As the employer and sponsor of the Plan, Asbury was the Plan's "Named Fiduciary." (Plan Doc. § 2.43.) As the Named Fiduciary, Asbury had the power to designate a Plan Administer and Trustee for the Plan. (*Id.*) As outlined in the Plan Document, the Plan Administrator "shall have exclusive discretionary responsibility and authority to control and manage the operation and administration of the Plan . . . except to the extent such responsibility . . . [is] otherwise specifically [ ] allocated to the Company or the Trustee under the Plan or Trust Agreement . . . ." (Plan Doc § 10.1.) Asbury designated Defendant Patrick Sook ("Sook") as Plan Administer to oversee the day-to-day functions of the Plan and designated Defendant Brozen as Trustee of the Plan. (Compl. ¶¶ 9, 13.) As Trustee, Brozen was "a fiduciary with respect to the management and control of Trust Assets" with exclusive authority to invest Trust Assets in accordance with the Trust Agreement. (Plan Doc. § 11.4.) Brozen was not a Company employee and specializes in providing services to ESOPs and acting as a trustee. (Compl. ¶ 9.)

**B.    THE MILL ROCK TRANSACTION**

The Company had a long history of successful profitability which included, "in recent years, annual sales in the range of $160 to $200 million, and annual profits [ranging from] $15 to $20 million." (*Id.* ¶ 16.) The Company had no debt and significant growth potential. (*Id.*) Stephen

---

[3] Both Brozen and Asbury Defendants attach the same Plan Document and Trust Agreement to their respective Motions.

[4] As discussed below in the Motion to Strike section, the Complaint explicitly references the Plan Document but Plaintiffs seek to bar consideration of the Trust Agreement.

Riddle ran the Company until April 2020 when he stepped down as a result of intra-family disputes. (*Id.* ¶ 19.) Turmoil within the family pushed the Riddles to consider selling the Company to preserve family harmony. (*Id.* ¶ 25.) An Executive Committee, made up of several Company employees and no independent members was formed in 2020 to find potential buyers for Asbury. (*Id.* ¶¶ 22, 35.) The Executive Committee estimated the value of the Company between $150 million - $180 million. (*Id.*) In the latter part of 2020, Stephen Riddle offered to buy the Company for $3,000 per share, which would have valued the company at $150 million. (*Id.* ¶ 23.) The Executive Committee rejected Stephen Riddle's offer because it opined it was too low and that he had not demonstrated his ability to obtain financing for his offer. (*Id.* ¶ 24.)

By August 2021, the Riddle Family appeared intent on selling the Company, and undertook measures to seek to do so. (*Id.* ¶ 26.) The Executive Committee reassigned its duties for investigating all strategic options for a sale to a new, single-purpose Strategic Initiative Committee. (*Id.* ¶ 27.) The Strategic Initiative Committee consisted of only Company employees and had no independent members. (Id. ¶ 35.) The Strategic Initiative Committee hired Deloitte to facilitate the sale transaction. (*Id.* ¶ 28.) Deloitte was not tasked to prepare a valuation of the Company before or during this process. (*Id.*) Deloitte received multiple bids for Asbury, the highest of which was $105 million offered by Mill Rock Capital ("Mill Rock"). (*Id.* ¶ 29.)[5] During an exclusivity period, Mill Rock conducted due diligence on the Company. (*Id.* ¶ 31.) During the due diligence period, Mill Rock continued lowering its offer, citing deteriorating financial market conditions. (*Id.* ¶ 32.) In light of Mill Rock's decreased offer and the generally poor environment for acquisitions due to an interest rate hike and heightened macroeconomic uncertainty, members of the Executive

---

[5] The Complaint alleges that Unimetal, the rival bidder, was only given three days to counter Mill Rock's bid, and when they did not return with an offer in three days, Mill Rock was given exclusivity to conduct due diligence. (*Id.* ¶ 30.)

Committee recommended to the Board of Directors that the Company not be sold. (*Id.* ¶¶ 33, 51.) The Board ignored this request and proceeded with the sale. (*Id.*) On March 24, 2024, the sale of the Company's stock to Mill Rock for $98 million closed, and the Asbury ESOP received $18.4 million as its proportionate share. (*Id.* ¶ 2.)

Plaintiffs allege that Defendants, acting at the directive of the Riddle Family to sell the Company as quickly as possible, ignored poor market conditions that would have cautioned against the sale. (*Id.* ¶ 34.) Defendants knew during the due diligence process in the second half of 2022 that the acquisitions market was slowing, as evidenced by Mill Rock lowering its proposed offer price from $105 million to $98 million. (*Id.*) Plaintiffs allege that by rushing a sale, Defendants failed to act in the best interests of the Plan Participants, as required by ERISA. (*Id.* ¶¶ 34-36.)

According to the Asbury ESOP's annual statements reported on their "Form 5500", the fair value of its shares in the Company were as follows:

- 2019 Form 5500: July 1, 2019 – June 30, 2020: $23.6 million
- 2020 Form 5500: July 1, 2020 – June 30, 2021: $36.3 million
- 2021 Form 5500: July 1, 2021 – June 30, 2022: $19.1 million

(Ex. 7-9 to ECF No. 23.) While not referenced in Plaintiffs' Complaint, the Company issued a special dividend to all shareholders for $900 per share on December 22, 2021 and a second special dividend on March 10, 2023 for $243 per share. (ECF No. 18 at 11; ECF No. 22 at 9-10.) The initial special dividend was disclosed to the Plan Participants in a letter dated April 14, 2022. (ECF No. 18 at 3.) In a letter dated April 14, 2022, Sook wrote to the Plan Participants that "the Company's performance has been strong" since June 30, 2021. (Compl. ¶ 48.)

On March 29, 2023, Brozen wrote to the Plan Participants that through Mill Rock's purchase of the Company, the Asbury ESOP shares had sold for approximately $18.4 million. (*Id.* ¶ 43.) This represented a 52% decline in value from the value of the shares from the 2020 Form

5500. (*Id.*) Following the sale, on April 18, 2023, the Company issued its Form 5500 for 2021 which valued the Asbury ESOP at $19.1 million (a $17.2 million drop from the 2020 valuation of the same shares). (*Id.*) Mill Rock purchased the Company for an earnings multiple of approximately 5x, which means that the Company's sale price was approximately five times as much as its earnings for one year. (*Id.* ¶ 49.) The Complaint alleges that Defendants knew, or should have known, that the standard earnings multiple for a company like Asbury, which carried no debt, is close to 10x. (*Id.*) In other words, Plaintiffs allege that the Company should have been valued at approximately twice what it actually sold for. In Plaintiffs Complaint, Plaintiffs allege that Defendants did not obtain an independent opinion ensuring the fairness of the sale price. (Id. ¶ 45.)[6]

In sum, the Complaint alleges that Defendants did nothing to stop the Company from being sold to Mill Rock for less than it was worth. Plaintiffs contend that Defendants acted solely in furtherance of the Riddle Family's directive to sell the Company quickly to the detriment of the Plan Participants. In selling the Company for $98 million (of which the Asbury ESOP received $18.4 million), Defendants engaged in a below-market-transaction with Mill Rock in violation of their fiduciary duties owed to Plaintiffs under ERISA.

## C.   PROCEDURAL HISTORY

Plaintiffs filed their Complaint on May 9, 2023. (*See* Compl.) The four-count Complaint alleges various violations under ERISA. Count One alleges that Defendants breached their fiduciary duties of loyalty and prudence owed to Plaintiffs under Sections 404(a)(1)(A) and (B) of ERISA. (Compl. ¶¶ 66–79.) Count Two alleges that Brozen breached his fiduciary duty to abide

---

[6] In Brozen's declaration supporting his Motion to Dismiss, he attached the Fairness Opinion prepared by SC&H Capital in connection with the Mill Rock Transaction. ("Fairness Opinion", Ex. 4 at ECF No. 23.) However, as explained in the Motion to Strike section, this document cannot be considered at a motion to dismiss posture.

by the Asbury ESOP Plan Documents under ERISA's Section 404(a)(1)(D) by failing to provide a ballot to the Plan Participants in connection with obtaining their approval of the Mill Rock Transaction. (*Id.* ¶¶ 81–83.) Count Three alleges that Defendants engaged in a prohibited transaction, i.e. the Mill Rock Transaction, in violation of ERISA's Section 406(b)(2) because Defendants acted in the interest of the Riddle Family, instead of the Plan Participants. (*Id.* ¶¶ 84–88.) Count Four alleges that Brozen and the Asbury Defendants are liable under Section 405(a) of ERISA for the other's fiduciary breach as co-fiduciaries, because each Defendant knew the Company was sold for below fair value. (*Id.* ¶¶ 89–92.) Plaintiffs seek the Court to: (1) declare "this action to be a proper class action under Rule 23 of the Federal Rules of Civil Procedure"; (2) require Defendants "to jointly and severally make good to the Asbury ESOP"; and (3) require Defendants to pay Plaintiffs' attorneys' fees. (*Id.* at 27.)

Defendants filed their pending Motions to Dismiss on July 28, 2023. (ECF Nos. 18 & 22.) Plaintiffs filed their oppositions on August 28, 2023, (ECF Nos. 26–27), as well as a Motion to Strike certain documents attached to both Brozen and Asbury Defendants' Motions, (ECF Nos. 24–25). Defendants opposed Plaintiffs' Motion to Strike, (ECF Nos. 35 & 36), and filed reply briefs in support of their Motions, (ECF Nos. 33 & 34). Plaintiffs filed a sur-reply regarding their Motion to Strike. (ECF No. 38.) The matter was transferred to the Undersigned on July 10, 2024.

## II.   <u>LEGAL STANDARD</u>

### A.   FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1)

"The jurisdictional issue of standing can be raised at any time," either by the court or the parties. *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 280 (3d Cir. 2014) (*quoting United States v. Viltrakis*, 108 F.3d 1159, 1160 (9th Cir. 1997)); *see also, Crisafulli v. Ameritas Life Ins. Co.,* No. 13-5937, 2015 WL 1969176, at *1 n.2 (D.N.J. Apr. 30, 2015) (noting that "because

standing is a constitutional prerequisite for federal court jurisdiction, the issue of standing may be raised by the court" *sua sponte*). Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint based on lack of subject matter jurisdiction. In deciding a Rule 12(b)(1) motion to dismiss, a court must first determine whether the party presents a facial or factual attack to the jurisdiction, because that distinction determines how the pleading is reviewed. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

"A facial attack 'concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites.'" *Young v. United States*, 152 F. Supp. 3d 337, 345 (D.N.J. 2015) (citing *CNA*, 535 F.3d at 139). In reviewing a facial attack, "the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." *U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007) (citation omitted). By contrast, in reviewing a factual attack, the court may weigh and consider evidence outside of the pleadings. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (*quoting Gotha v. United States,* 155 F.3d 176, 178–79 (3d Cir. 1997)). Defendants here assert that they bring a factual challenge to the Court's subject matter jurisdiction. (ECF No. 18 at 5, n 2.) Therefore, the Court views the Complaint's allegations as well as the documents attached to Defendants' Motions to Dismiss.

### B.  FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal under this rule, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, "[a]ll

allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (citations omitted). A court must only consider "the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). A court may consider any document "integral to or explicitly relied upon in the complaint" when ruling on a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## III.   **DISCUSSION**

Both Brozen and the Asbury Defendants argue that the Plaintiffs lack Article III standing and that alternatively, the counts against them should be dismissed for failure to state a claim. Before turning to the merits of the parties' arguments, the Court will consider Plaintiffs' Motion to Strike and the question of what documents may be appropriately considered at this juncture.

### A.   MOTION TO STRIKE

The Asbury Defendants submit (1) the Trust Agreement and (2) the Fiduciary Services Agreement and Addendum to the Fiduciary Services Agreement (together, the "Fiduciary Services Agreements") in support of their motion to dismiss. (*See generally* the Trust Agreement; the "Fid. Serv. Agmt.", Ex. 4 to ECF No. 18; the "Addendum", Ex. 5 to ECF No. 18.) In support of his motion, Brozen submits the same Trust Agreement and Fiduciary Services Agreement as well as the Fairness Opinion prepared by SC&H Capital evaluating whether the Mill Rock Transaction was fair to the Asbury ESOP. (*See generally* ECF No. 23 at Ex. 2, Ex. 3, and Ex. 4.) Plaintiffs

argue that the Court must disregard these documents because the Court should not consider documents outside the complaint on a Rule 12(b)(6) motion. (ECF No. 25 at 1.)

A district court ruling on a motion to dismiss, generally, may not consider matters extraneous to the pleadings. *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426. However, the court may consider "'document[s] integral to or explicitly relied upon in the complaint,' and 'any undisputedly authentic document that a defendant attaches . . . if the plaintiff's claims are based on the document.'" *Schuchardt v. President of the United States*, 839 F.3d 336, 353 (3d Cir. 2016) (quoting *In re Asbestos Prods. Liability Litig.*, 822 F.3d 125, 133 & n.7 (3d Cir. 2016)). What is "critical" to this exception is "whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited" in the complaint. *In re Burlington Coat Factory Sec. Lit.,* 114 F.3d at 1426.

Plaintiffs argue that the documents at issue are not attached to their Complaint, referenced in the Complaint, or "integral to Plaintiffs' allegations of wrongdoing," and thus, "represent an unwarranted and unpermitted attempt by Defendants" to submit documents to the Court not properly considered. (ECF No. 25 at 1.) In response, Defendants argue that the Trust Agreement and Fiduciary Services Agreements play a central role under ERISA's statutory framework because trust instruments are "governing documents" required by ERISA that set forth the scope of a trustee's ERISA fiduciary obligations. (ECF No. 35 at 6.) Accordingly, these documents are "integral" to ERISA fiduciary-breach claims and can be considered on a motion to dismiss. (*Id.*) Defendants assert that the crux of the Complaint implicitly references these documents by alleging that Defendants were ERISA fiduciaries to the Asbury ESOP in connection with the Mill Rock Transaction. (*Id.*) Lastly, Brozen argues that the Fairness Opinion is explicitly referenced in the Complaint and constitutes the core of Plaintiff's claim against him. (ECF No. 36 at 8.)

Although Plaintiffs' Complaint does not explicitly refer to the Trust Agreement or Fiduciary Services Agreement, these documents are nevertheless central to Plaintiffs' claims. As another district court explained, "ERISA's provisions relating to fiduciary duty make explicit and repeated reference to plan documents." *See Kling v. Fidelity Management Trust Co.*, 270 F. Supp. 2d 121, 127 (D. Mass. 2003) (citing 29 U.S.C. §§ 1102, 1103). While the "Plan Document" is not explicitly discussed in the Complaint, the Trust Agreement and Fiduciary Services Agreement are both essential to the governing of the Asbury ESOP. ERISA Section 403(a) requires that "all assets of an employee benefit plan [] be held in trust by one or more trustees," who "shall be either named in the trust instrument or in the plan instrument."[7] ERISA Section 403(a); *see also Jordan v. MEBA Pension, Tr.*, No. 20-3649, 2021 WL 4148460, at *7 (D. Md. Sept. 10, 2021) (noting that "[m]ultiple documents may 'collectively' form an employee benefit plan, and those documents need not 'be formally labeled' as comprising the plan").

Plaintiffs' entire cause of action hinges on the existence of Defendants' fiduciary duties under ERISA, and Plaintiffs reference such duties throughout the Complaint. (*See* Compl. ¶¶ 9–10, 12, 13.)[8] When ruling on a motion to dismiss an ERISA complaint, courts routinely consider the plan documents and trust agreements because the complaint explicitly or implicitly relies on

---

[7] Plaintiffs confuse the Trust Agreement with the Plan Document. Plaintiffs argue that the Trust Agreement is a "purported July 2022 version of the Plan" and "the Complaint [] refers only to the May 2022 Summary Plan Description of the Plan, which obviously is not a summary of a Plan dated July 1, 2022." (ECF No. 25 at 4.) However, the Plan Document, as discussed *supra* in footnote 4, governs the creation of the Asbury ESOP, and is distinct from the Trust Agreement, which is at issue in this Motion to Strike.

[8] Plaintiffs respond that these references in the Complaint say nothing about the documents in question. (ECF No. 25 at 4.) The Complaint does not support this characterization. The Complaint alleges that Brozen was "at all relevant times, the Asbury ESOP's trustee" who "owed fiduciary duties under ERISA to the Plan Participants" and that the Company "had the power to remove Defendant Brozen if the Riddle Family was dissatisfied with his actions on behalf of the Asbury ESOP." (Compl. ¶ 9.) These allegations, without identifying the document, implicitly reference the Trust Agreement and Fiduciary Services Agreement which govern Brozen's fiduciary duties to the Asbury ESOP as Trustee and Special Fiduciary.

the existence of the fiduciary duties established in these documents.[9] *See e.g.*, *Kling v. Fid. Mgmt.
Tr. Co.*, 270 F. Supp. 2d 121, 128 (D. Mass. 2003) (considering "plan documents" on motion to
dismiss although complaint did not refer to them, because "ERISA's provisions relating to
fiduciary duty make explicit and repeated reference to plan documents"); *Pietrangelo v. NUI
Corp.*, No. 04-3223, 2005 WL 1703200, at *3 (D.N.J. Jul. 20, 2005) (considering ERISA plan
documents "in determining whether Plaintiff has sufficiently alleged Defendants' fiduciary
status"); *Freight Drivers & Helpers Loc. Union No. 557 Pension Fund v. Penske Logistics LLC*,
No. 12-2376, 2013 WL 3895011, at *7 (D. Md. July 25, 2013) (finding complaint relies on the
trust agreement implicitly by "alleging that the Fund qualifies as multiemployer pension plan under
ERISA" and "reflects that the Fund is governed by ERISA's statutory scheme"); *White v. Marshall
& Ilsley Corp.*, 714 F.3d 980, 986 (7th Cir. 2013) ("We can . . . consider ERISA plan documents
that were attached to the complaint or referenced in it without converting the motion to one for
summary judgment."). In *Weiner v. Klais & Co.*, the Sixth Circuit, apropos to the case at bar, held
in pertinent part:

> Plaintiff references the 'plan' numerous times in his complaint.
> Although plaintiff maintains that the complaint referred only to the
> 'plan' as an entity and not to the 'plan documents,' his claims are
> based on rights under the plans which are controlled by the plans'
> provisions as described in the plan documents. Thus, we will
> consider the plan documents along with the complaint, because
> they were incorporated through reference to the plaintiff's rights
> under the plans, and they are central to plaintiff's claims.

---

[9] Plaintiffs seek to distinguish *Pietrangelo*, *Kling*, and *Freight Drivers & Helpers* from the instant case on
the grounds that these cases involve facts where the plaintiffs referenced the judicially noticed documents
in either their complaints or briefing. (ECF No. 38 at 5-6, and 8.) However, the critical analysis is not
whether the complaint implicitly or explicitly references the judicially noticed documents, but whether "the
claims in the complaint are 'based' on an extrinsic document." *In re Burlington Coat Factory Sec. Lit.*, 114
F.3d at 1426. As discussed above, this Court finds the judicially noticed documents as integral to Plaintiffs'
claims.

12

*Weiner,* 108 F.3d 86, 89 (6th Cir. 1997). For these reasons, the Trust Agreement and Fiduciary Services Agreements can be considered on Defendants' Motions to Dismiss.[10]

In contrast to the Trust Agreement and Fiduciary Services Agreement, the Fairness Opinion cannot be considered because it is not integral to Plaintiffs' claims. *See Hall v. Johnson & Johnson,* No. 18-1833, 2019 WL 7207491, at *11 (D.N.J. Dec. 27, 2009) (declining to take judicial notice of a document when the purpose of offering it was specifically to contest the merits of plaintiff's claim and the document "is not relied upon or integral to the [c]omplaint"). Plaintiffs' Complaint specifically alleges that Brozen did not obtain a fairness opinion in support of the breach of fiduciary duty claim, a fact which appears contested. Whether or not Brozen actually obtained a fairness opinion regarding the transaction is not dispositive of whether Brozen violated his fiduciary duties. *See Perez v. First Bankers Trust Services, Inc.*, No. 12-4450, 2017 WL 1232527, at *73 (D.N.J. 2017) (finding a trustee of an ESOP violated its fiduciary duty of prudence despite obtaining a fairness opinion, noting obtaining an "independent appraisal is not a magic wand that fiduciaries may simply wave over a transaction to ensure that their responsibilities are fulfilled" (citations omitted)); *see also id.* ("Regardless of whether a fiduciary retains a third-party valuation expert, ERISA requires a fiduciary 'to evaluate the advice given and 'exercise [its] own judgment' about the transaction." (citation omitted)). Thus, assuming *arguendo* he received a fairness opinion, the relevant question is whether Brozen independently reviewed and evaluated the opinion. *Id.* (citing *Eyler v. Comm'r of Internal Revenue*, 88 F.3d 445, 456 (7th Cir. 1996)).

---

[10] Additionally, Plaintiffs contest the authenticity of the Trust Agreement because it is unsigned and contains an erroneous internal reference. (ECF No. 25 at 4.) Here, Plaintiffs again confuse the Trust Agreement with the Primary Plan Document. Section 2.3(1) of the Trust Agreement refers to Section 11.7 of the Plan Document. (*See* Trust Agreement at § 2.3(1); Plan Document at § 11.7.) Accordingly, there is no erroneous reference in the Trust Agreement indicating it is incomplete. Regarding the fact that the Trust Agreement is unsigned, ERISA does not require trust instruments be signed. *See* 29 U.S.C. §§ 1102(a)(1), 1103(a). Accordingly, Plaintiffs' authenticity arguments are unpersuasive.

Because the Fairness Opinion is not integral to Plaintiffs' claim at this preliminary posture, the Court will not consider it in deciding Brozen's Motion to Dismiss.[11]

## B.    ARTICLE III STANDING

Article III of the United States Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992); *see also* U.S. Const. art. III, § 2, cl. 1. The standing doctrine "serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 154–55 (1990) (citation omitted). Ensuring a plaintiff's Article III standing before reaching the merits of their claim respects the separation of powers embodied in the Constitution. *See Lujan*, 504 U.S. at 559–60; *see also Raines v. Byrd*, 521 U.S. 811, 818 (1997) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." (citation omitted)).

The Supreme Court recognizes three elements constituting the "irreducible constitutional minimum" for establishing a plaintiff's standing. *Lujan*, 504 U.S. at 560. *First*, the plaintiff must have suffered an "injury in fact," *i.e.* "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (citations and quotation marks omitted). *Second*, there must be a "causal connection between the injury and the conduct complained of," such that the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before

---

[11] Even if this Court were to consider the Fairness Opinion and discount the allegations in Plaintiffs' Complaint alleging Brozen did not obtain one, it would not change the Court's conclusion that the Complaint has adequately alleged that Brozen violated his fiduciary duties. Doing so would require the Court, at this preliminary phase, to inquire into the sufficiency of Brozen's evaluation of the Fairness Opinion, necessitating the court to improperly weigh evidence that forms the crux of the parties' dispute. *Hall*, 2019 WL 7207491, at *11 (refraining from taking judicial notice of a document that would "require the court to delve into the scientific evidence that forms the crux of the parties' dispute").

the court." *Id.* at 560–61 (cleaned up) (citing *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). *Third*, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (citing *Simon*, 426 U.S. at 38, 43). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* (citations omitted).

Defendants' Motions to Dismiss both argue for dismissal of the entire Complaint under Rule 12(b)(1) because Plaintiffs did not suffer an injury-in-fact and thus lack standing. Defendants claim that in preparation for the sale of the Company, Asbury needed to decrease its cash on hand. (ECF No. 18 at 10; ECF No. 22 at 9.) To accomplish this, the Company issued two special dividends in December 2021 for $900 per share and March 2023 for $243 per share. (*Id.*) Because these special dividends were issued in preparation for the sale of the company, Defendants argue that the total consideration Plaintiffs received should be the combined amount of these dividends ($1,143 per share) plus the Mill Rock sale price paid ($1,888.50 per share), totaling $3,031.50 per share. (ECF No. 18 at 11; ECF No. 22 at 10.) Further, the Complaint alleges that internal Company estimates put the fair market value of Asbury at between $150 to $200 million (*i.e.* $3,000 to $4,000 per share). (ECF No. 18 at 16; ECF No. 22 at 15-16.) Defendants point to this to conclude that according to the Complaint itself, the $3031.50 per share the Plan Participants received was more than fair value, and the Plan Participants suffered no injury. (*Id.*)

Plaintiffs respond that the Special Dividend issued in December 2021 for $900 per share should not be included in the consideration the Plan Participants received during the sale because the Mill Rock Transaction occurred almost one and a half years later in March 2023. (ECF No. 26 at 11; ECF No. 27 at 11-12.) Plaintiffs argue that the Plan Participants would have received the December 2021 dividend whether the Mill Rock Transaction occurred or not. (*Id.*) Thus, the

15

amount per share Plaintiffs actually received in connection with the Mill Rock Transaction, even when adding the March 2023 dividend amount (as it occurred simultaneously with the Mill Rock Transaction)[12], was $2,131.50 per share, which is far below fair value. (ECF No. 26 at 12,14; ECF No. 27 at 12-13.)[13]

The Court finds that Plaintiffs have adequately alleged Article III standing. *See Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016) (to establish an injury-in-fact requires a showing that a plaintiff "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'") The bar for finding Article III injury is low. The standard is "very generous" to plaintiffs, requiring only evidence of "some specific, identifiable trifle of injury." *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 162–63 (3d Cir. 2017) (quoting *Bowman v. Wilson*, 672 F.2d 1145, 1151 (3d Cir. 1982)). Even a "small financial loss" is sufficient to make this showing. *Id.* (citing *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016)).

The Defendants argue that Plaintiffs did not suffer an injury-in-fact and thus lack standing. Defendants claim that in preparation for the sale of the Company, Asbury needed to decrease its cash on hand. (ECF No. 18 at 10; ECF No. 22 at 9.) To accomplish this, the Company issued two special dividends in December 2021 for $900 per share and March 2023 for $243 per share. (*Id.*) Because these special dividends were issued in preparation for the sale of the company, Defendants argue that the total consideration Plaintiffs received should be the combined amount of these dividends ($1,143 per share) plus the Mill Rock sale price paid ($1,888.50 per share), totaling $3,031.50 per share. (ECF No. 18 at 11; ECF No. 22 at 10.) Further, the Complaint alleges that

---

[12] While Plaintiffs argue that both the March 2023 and December 2021 dividends should not be considered in calculating the Mill Rock sale price, the focus of Plaintiffs' argument is on discounting the December 2021 Dividend. (ECF No. 26 at 11; ECF No. 27 at 11.)

[13] Plaintiffs also argue that their Complaint does not allege that $3,000 is fair value.

internal Company estimates put the fair value of Asbury at $150 to $200 million (i.e. $3,000 to $4,000 per share). (ECF No. 18 at 16; ECF No. 22 at 15-16.) Defendants point to this as evidence that the Plaintiffs received more than fair value for their shares, and thus suffered no injury. (*Id.*) Plaintiffs Complaint makes no reference to either dividend. (*See* Compl.) In their briefing, Plaintiffs principally argue that the Special Dividend issued in December 2021 for $900 per share cannot be included in the consideration the Plan Participants received during the sale because the Mill Rock Transaction occurred almost one and a half years later in March 2023. (ECF No. 26 at 11; ECF No. 27 at 11-12.)

At this juncture, additional facts need to be developed through discovery, to determine whether these dividends can be considered as part of the Mill Rock Transaction purchase price. Regardless, the Court notes the low bar of standing, which the Plaintiffs have satisfied. The Complaint's allegation that internal Company estimates valued the Company between $150 and $200 million and the possibility that the Company sold for less than the lower bound of this estimated range is enough to establish a financial harm and injury in fact. *See Cottrell*, 874 F.3d at 162–63. Thus, Plaintiffs' Complaint alleges a valid injury-in-fact and the Complaint cannot be dismissed on Article III standing grounds. This Court will turn to Defendants' arguments to dismiss the claims under Rule 12(b)(6).

## C. FAILURE TO STATE A CLAIM

Both Brozen and the Asbury Defendants' seek dismissal of the Complaint's counts against them for failure to state a claim. The Court addresses each of the four Counts of the Complaint below.

### a. Count One – Breach of Fiduciary Duty of Loyalty and Prudence

Under ERISA, a plan participant may bring a civil action for relief against a plan fiduciary for breach of fiduciary duty. *See* 29 U.S.C. § 1004. The elements of an ERISA breach of fiduciary duty claim are: "(1) a plan fiduciary (2) breaches an ERISA-imposed duty (3) causing a loss to the plan." *Leckey v. Stefano*, 501 F.3d 212, 225–26 (3d Cir. 2007). A person or entity may be a plan fiduciary in one of three ways: (i) "being named as the fiduciary in the instrument establishing the employee benefit plan"; (ii) "being named as a fiduciary pursuant to a procedure specified in the plan instrument"; and (iii) "being a fiduciary under the provisions of 29 U.S.C. § 1002(21)(A)." *Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc.,* 93 F.3d 1171, 1179 (3d Cir. 1996). To meet the criteria set out in Section 1002(21)(A), Plaintiffs must show that the Asbury Defendants constitute a "functional fiduciary" by exercising any "discretionary authority or discretionary control respecting management of such plan" or "any discretionary authority or discretionary responsibility in the administration of such plan." § 1002(21)(A).

  i.      *Count One as to Asbury Defendants*

The Asbury Defendants argue that the Plan Documents, Trust Agreement and Fiduciary Services Agreement designate Brozen as Trustee of the Asbury ESOP with authority over the management and disposition of the Asbury ESOP. (ECF No. 18 at 17-23.) Therefore, only Brozen, rather than the Asbury Defendants, are Plan fiduciaries. (*Id.*)

Plaintiffs offer three arguments in response. (ECF No. 27 at 17-21.) First, the Asbury Defendants' argument is based on documents that cannot be considered on a Rule 12(b)(6) motion. Second, despite delegating discretionary authority over the Asbury ESOP to Brozen, the Asbury Defendants still owe a fiduciary duty to the Plan Participants to monitor Brozen. Third, because the Asbury Defendants' arguments contradict Brozen's claims that he had no actual discretionary

authority due to the fact that he could not stop the sale from occurring is evidence of a factual dispute that cannot be resolved at a motion to dismiss.

Regarding Plaintiffs' first argument, the Trust Agreement and Fiduciary Services Agreement and Addendum relied upon by the Asbury Defendants can be considered because Plaintiffs' claims are based on these documents despite not referencing them in the Complaint. *See* Section III.A. The Plan Documents designated Brozen as Trustee of the Plan, delegating authority to administer the Plan from the Asbury Defendants to Brozen. (ECF No. 18 at 20.) The Plan Document gave Brozen authority to "sell, transfer, convey, exchange or otherwise dispose of" any investment held in the Plan. (*Id.* at 20-21.) Further, the Fiduciary Services Agreement made Brozen Special Fiduciary with "the sole power and authority to negotiate the terms of any transaction whereby the Trust acquires or disposes of Company Stock[.]" (*Id.*) Pursuant to the Addendum to the Fiduciary Services Agreement, Brozen "shall evaluate the relative and absolute fairness of the financial terms and conditions of the Transaction" and "shall divest of employer securities to the extent [he], ***in his sole and absolute discretion***, determines that such investment is prudent and consistent with his fiduciary responsibilities under ERISA." (*Id.*) (emphasis added).

Thus, pursuant to the Plan Documents, the Asbury Defendants delegated discretionary authority over the Asbury ESOP in connection with the Mill Rock Transaction to Brozen, which means the Asbury Defendants were not fiduciaries regarding "the particular activity in question" and thus, not liable under ERISA for breach of fiduciary duties with respect to the transaction. *See, e.g.*, *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co.*, 768 F.3d 284, 294-97 (3d Cir. 2014) (affirming dismissal of ERISA claims and stating that plaintiff "must plead that the defendant was acting as a fiduciary when taking the action subject to complaint"); *Danza v. Fid. Mgmt. Tr. Co.*, 533 F. App'x 120, 124 (3d Cir. 2013) (affirming defendant was not a fiduciary as

defined under ERISA where it did not exercise discretion over "challenged conduct"); *Ass'n of N.J. Chiropractors v. Data iSight, Inc.*, No. 19-21973, 2022 WL 45141, at \*4 (D.N.J. Jan. 5, 2022) (dismissing ERISA claim where plaintiffs "fail[ed] to adequately allege that the [defendants] performed any discretionary role").

Second, Plaintiffs argue that even if the Court considers the documents just mentioned, the Asbury Defendants are still fiduciaries to the Asbury ESOP because they owed a continuing duty to monitor Brozen. However, Plaintiffs' Complaint neither mentions a failure-to-monitor claim nor specifically alleges how the Asbury Defendants failed in their duty to monitor Brozen with regard to the Mill Rock Transaction. (*See generally*, Compl.); *see also, Penn. ex rel. Zimmerman v. Pepsico, Inc.,* 836 F.2d 173, 181 (3d Cir. 1988) (holding a "complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

The Court disagrees with Plaintiffs' argument that a failure-to-monitor claim can be inferred from the facts alleged in the Complaint. Plaintiffs point to the following facts as evidence that the Complaint implies a failure-to-monitor claim: (1) "all Defendants jointly approved and facilitated a below-value sale," (2) "Sook failed to object to the sale even though he had stated only months earlier that the company's financial position was strong," and (3) Sook knew the market conditions for acquisitions were poor in the second half of 2022. (ECF No. 27 at 22.)

However, none of these facts allege that the Asbury Defendants failed to monitor Brozen's performance with regard to the Mill Rock Transaction. *See Seibert v. Nokia of Am. Corp.*, No. 21-20478, 2023 WL 5035026, at \*12 (D.N.J. Aug. 8, 2023) (regarding a failure-to-monitor claim, "an appointing authority must at reasonable intervals review the performance of its appointees in such manner as may be reasonably expected to ensure that their performance has been in compliance

with the terms of the plan and statutory standards"). Here, Plaintiffs have failed to allege that the Asbury Defendants did not monitor Brozen's performance.

Plaintiffs' final argument is that the Asbury Defendants' fiduciary duty argument "presents an issue of fact because it is inconsistent with Brozen's own proffered defense." (ECF No. 27 at 21.) This argument fails because there is no support for Brozen's defense. As discussed below, the Court finds Brozen's argument that he had no ability to stop the sale unconvincing given the Mill Rock Transaction was governed by a Stock Purchase Agreement. As a result, the Asbury Defendants' argument is consistent with this Court's determination that Brozen is a fiduciary with respect to the Asbury ESOP.

Courts commonly dismiss ERISA claims when a plaintiff asserts fiduciary duty breaches against a plan administrator of an ESOP that has delegated authority to an independent fiduciary regarding the ESOP's company stock. *See In re RCN Litig.,* No. 04-5068, 2006 WL 753149, at *6 (D.N.J. Mar. 21, 2006) ("ERISA also allows the allocation of fiduciary duties among various actors and, in most cases, liability for a breach of fiduciary duty is limited to the actor(s) to whom the responsibilities have been so allocated."); *see also Burke v. Boeing Co.,* 42 F.4th 716, 724 (7th Cir. 2022) (noting where "company insiders who manage ESOPs are willing to give up control to avoid potential conflicts between duties under ERISA and their duties under corporation and federal securities laws, we see no legal obstacles"). Pursuant to the Plan Documents, the Asbury Defendants did not exercise any discretionary authority over the assets of the Asbury ESOP or its management with regard to the Mill Rock Transaction – the particular activity in question. (*See generally* Fid. Serv. Agmt. and Addendum.)

Accordingly, the Asbury Defendants were not fiduciaries to the Asbury ESOP with respect to the Mill Rock Transaction, and thus Count One, Count Three, and Count Four of Plaintiffs' Complaint **as** against the Asbury Defendants are dismissed.

  ii.    *Count One as to Brozen*

Brozen also seeks dismissal of Count One. As a threshold matter, the Plan Documents and Trust Agreement name Brozen as the fiduciary to the Asbury ESOP. As such, the first element for pleading an ERISA fiduciary breach claim is met. Plaintiffs must therefore establish the remaining elements, that (1) defendant breached an ERISA-imposed fiduciary duty and (2) that such a breach caused a loss to the plan. *See Leckey*, 501 F.3d at 225–26. As applied to the instant case, Plaintiffs need to establish that Brozen breached his fiduciary duties of loyalty and prudence by pleading that the Mill Rock Transaction was below fair market value and that Brozen's approval of the transaction caused loss to the Plan Participants.

Brozen argues that Plaintiffs fail to show that he breached his fiduciary duties of loyalty and prudence because the Mill Rock transaction was for fair value. (ECF No. 22 at 19.) Brozen argues that the decrease in value of the Asbury ESOP shares from the 2020 Form 5500 ($36.3 million) to the 2021 Form 5500 ($19.1 million) is a direct reflection of the special dividends issued by the Company and deteriorating market conditions. (ECF No. 22 at 15.) Thus, the Company's sale to Mill Rock of the ESOP shares for approximately $18.4 million was in line with the Company's fair market value.[14] (*Id.*) Plaintiffs allege that the Company has no debt and is highly profitable, generating $15 to $20 million of profit annually. (Compl. ¶ 16.) Further, Plaintiffs note that the market standard for an earnings multiple for the "sale of a stable profitable company" with

---

[14] As discussed above in the Motion to Strike section, see III.A, supra, even if this Court were to consider the existence of the Fairness Opinion and discount the allegations in Plaintiffs' Complaint alleging Brozen did not obtain one, it would not change the Court's conclusion that the Complaint has adequately alleged that Brozen violated his fiduciary duties.

no debt is more than 9x earnings. (*Id.* ¶ 49.) The sale price in the Mill Rock Transaction of $98 million represents a 4x to 6x earnings multiple, which they claim is below market. (*Id.*)

Plaintiffs also claim the sale process was flawed because the Company did not give the competing bidder to Mill Rock "a reasonable time to improve its offer" and the Executive Committee and Strategic Initiative Committee did not have any independent members. (*Id.* ¶ 35.) Lastly, Plaintiffs argue that the dramatic drop in valuation of the Asbury ESOP shares from the 2020 Form 5500 to the 2021 Form 5500 cannot be directly attributable to the issuance of the special dividends because such a contention "assumes the Company did not add to its cash position post-dividend" and such an assumption was contrary to Sook's April 2022 letter stating "the Company's performance has been strong." (ECF No. 26 at 21; Compl. ¶ 17.)

Accepting the facts set forth in the Complaint as true, the Court will not adjudicate whether the Mill Rock Transaction was for fair value at this premature posture and declines to dismiss the case on these grounds.[15] *See D'Agostino v. Appliances Buy Phone, Inc.*, 633 F.App'x 88, 94 (3d Cir. 2015) (holding it inappropriate for the court to make a determination that "requires a resolution of factual issues" on "a motion to dismiss."); *see also Perez,* 2017 WL 1232527 at *72 (evaluating fiduciary duty ERISA claim following a trial noting "the definition of 'prudent behavior' is an evolving concept that is given meaning by the facts and circumstances of each case.")(citations omitted.) It is clear to the Court that the parties are entitled to develop facts pertaining to this issue through discovery.

Next, Brozen argues that Plaintiffs cannot establish that he caused a loss to the Asbury ESOP because Brozen had no authority to stop the transaction from occurring. (ECF No. 22 at 17.)

---

[15] The Court takes no position at this juncture as to whether the Mill Rock transaction occurred at fair value. It may be demonstrated that following discovery, it becomes clear Brozen approved the sale because it was fair to the Asbury ESOP. The Court only maintains that at a motion to dismiss posture, it cannot make this determination.

Brozen cites to a provision in the Trust Agreement that gives the Company the right to terminate the Asbury ESOP and repurchase the shares at anytime as evidence that "his 'vote' was effectively irrelevant" as representative of the Asbury ESOP, which is a minority shareholder to the Company that "did not have the shares to change the trajectory of the [Mill Rock] Transaction." (ECF No. 22 at 17.) In response, Plaintiffs argue that the Mill Rock Transaction was a stock sale, not a merger, and the "Riddle Family had absolutely no contractual rights to dictate a sale of the ESOP shares to Mill Rock." (ECF No. 26 at 20.) Plaintiffs further contend that the Mill Rock Transaction always contemplated the sale of 100% of the Asbury common stock, and if Brozen refused to vote the Asbury ESOP's share, the transaction would likely have been stopped. (Compl. ¶ 25; ECF No. 26 at 17.)

The Court finds that Plaintiffs have adequately alleged loss causation. The Complaint alleges that the Mill Rock Transaction always contemplated a sale of 100% of the Asbury common stock. (Compl. ¶ 25.) It follows logically then that Brozen could stop the sale by refusing to vote the Asbury ESOP's shares. (*Id.*) Further, Brozen only cites to caselaw supporting the proposition that the trustee of minority shareholders in a *merger* context is not liable for fiduciary breaches on account of not being able to stop the transaction. *See Cohn v. SunCoke Energy Partners, L.P.,* No. 20-3069, 2021 WL 3877885 No. 20-3069 at *2(3d Cir. Aug. 31, 2021)(involving a merger that required approval of majority of the limited partnership shareholders); *Boone v. Carlsbad Bancorporation, Inc.,* 902 F.2d 1545, 1556 (10th Cir. 1992)( where the approval of the minority voting shares was unnecessary for the merger under Virginia law). However, the instant case is a *stock sale* not a *merger*, and governed by a stock purchase agreement that cannot be reviewed on this motion to dismiss. (*See* ECF No. 26 at 20 n. 13.) Thus, these merger cases bear little weight on the instant matter. *See Cohn v. SunCoke Energy Partners, L.P.,* No. 20-3069, 2021 WL 3877885

No. 20-3069 at *2(3d Cir. Aug. 31, 2021) (holding no transaction causation because the minority shareholders "votes were not needed to authorize the merger."); *see also Boone v. Carlsbad Bancorporation, Inc.,* 972 F.2d 1545 (10th Cir. 1992) (same).

Because the court is limited to the facts alleged in the Complaint and the judicially noticed documents, the Court cannot consider the transaction documents between the Company and Mill Rock outlining the Asbury shareholder rights in connection with the transaction. *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426. This reaffirms the Court's conclusion that the loss causation issue should not be resolved at this posture as more fact discovery is needed. *See Bing Li v. Aeterna Zentaris, Inc.*, 2016 WL 827256 No. 3:14-cv-7081(PGS)(TJB) (D.N.J. Mar. 2, 2016) (noting the "'issue of loss causation is usually not resolved on a motion to dismiss,' because more factual discovery is often necessary.")(quoting Dudley v. Haub, 2013 WL 1845519 at *18 (D.N.J. 2013).   Thus, the Court accepts as true Plaintiffs' contention that Brozen had authority to stop the Mill Rock Transaction by refusing to vote the Asbury ESOP shares, and Plaintiffs successfully plead that Brozen "caused loss to the Plan." (Compl. ¶¶ 74, 79); *see also Leckey,* 501 F.3d at 225–26. Because Plaintiffs present sufficient facts alleging that Brozen breached his fiduciary duties and caused the Asbury ESOP harm, Count One against Brozen remains.

**b.      Count Two – Brozen's Failure to Abide by Plan Documents**

Brozen moves to dismiss Count Two, which alleges that he violated the terms of the Plan Documents, and thus his fiduciary duties under ERISA Section 406(b)(2), by failing to provide the Plan Participants with a ballot to vote on the Mill Rock Transaction. (Compl. ¶ 82.) He argues that the Plan Participants are not entitled to vote on the sale of the Company's stock, and therefore he

did not err by not providing a ballot to the Plan Participants. Plaintiffs do not respond to this argument in their opposition brief. (*See* ECF No. 26.)

The Plan Document states that the "Trustee shall vote all shares of Company Stock held by the Plan with respect to all corporate matters upon which Company shareholders are entitled or permitted to vote." (Plan Doc. § 11.7(a)) According to the Plan, the corporate matters that shareholders are entitled to vote on include the "approval or disapproval of any corporate merger or consolidation, recapitalization, reclassification, liquidation, dissolution, or sale of substantially all assets of the business." *See* I.R.C. 409(e)(3). Notably, a stock sale is carved out from this list of corporate matters entitled to a shareholder vote. *Id.; see also Ruefenacht v. O'Halloran,* 737 F.2d 320, 333 (3d Cir. 1984)(noting that a stock sale is distinct from an asset sale whereby "one who purchase the assets of a business is not liable for its debts and liabilities" while "one who purchases the stock in a corporation – a separate legal entity – assumes ownership of a business with both assets and liabilities.")(citations omitted.) Because the Plan Participants were not entitled to vote on the sale, Brozen was not required to send a ballot to the Plan Participants in connection with the Mill Rock Transaction. Further, Plaintiffs fail to respond to these arguments. *See Dreibelbis v. Scholton,* 274 F. App'x 183, 185 (3d Cir. 2008) (affirming district court's grant of a motion to dismiss on grounds raised in defendants' motion but not addressed in plaintiff's opposition despite "ample opportunity" to contest it (citations omitted)). For the reasons mentioned above, Count Two is dismissed against Brozen.

### c.    Count Three – Prohibited Transaction

All Defendants seek dismissal on the count brought pursuant to ERISA Section 406(b)(2), which prohibits transactions between fiduciaries and a party whose interests are adverse to the interests of the plan. Specifically, Section 406(b)(2) prohibits the fiduciary of the plan from acting

"on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan." Plaintiffs' Complaint alleges that the Company's interests were adverse to those of the Asbury ESOP because the Company wanted to effectuate a sale as quickly as possible.[16] (Compl. ¶ 34.) Brozen argues that the Complaint includes no details that he acted "on behalf of" anyone besides the Plan Participants of the Asbury ESOP. (ECF No. 22 at 22.)

Even taking the allegations in the Complaint as true, the Plaintiffs fail to set forth facts alleging how Brozen engaged in self-dealing or "acted on behalf of" the Company when he was trustee of the Asbury ESOP. *See Savage v. Federated Dep't Stores, Inc. Ret. Income & Thrift Incentive Plan,* 1989 WL 146298, at *7 (D.N.J. May 3, 1989) *aff'd,* 893 F.2d 1331 (3d Cir. 1989)(noting the "absence of anything in the record beyond mere speculation as to a conflict of loyalties by defendants" is insufficient to establish self-dealing.)  With regard to the Asbury Defendants, Plaintiffs cannot sustain a prohibited transaction claim against them "without establishing that [d]efendants were fiduciaries with respect to the" challenged conduct. *Danza v. Fidelity Mgmt. Trust Co.,* 2012 WL 3599362, No. 11-2893 at *3 (D.N.J. Aug. 20, 2012.) Because the Asbury Defendants are not fiduciaries to the Plan with respect to the Mill Rock Transaction, Plaintiffs cannot maintain a prohibited transaction claim against them. (*Id.*) Accordingly, Count Three is dismissed as to Brozen and the Asbury Defendants.

---

[16] The facts of the Complaint belie Plaintiffs' argument that the Company's interests were at odds with the Asbury ESOP as the Mill Rock Transaction cannot be fair to the majority shareholders of the Company and unfair to the minority Asbury ESOP Shareholders when all the shareholders received the same consideration for their respective shares. The Mill Rock Transaction involved the Company selling its shares to an independent third party, and the Asbury ESOP shareholders received the same consideration per share as the majority shareholders. But see Reich v. Compton, 57 F.3d 270, 289 (3d Cir. 1995) (noting 406(b)(2) violations often involve trustees on both sides of the challenged transaction, i.e. when "there are identical decisionmakers on both sides of the transaction.") Further, Plaintiffs claim that the majority shareholders received "likely all profit" from the Mill Rock Transaction because they initially acquired their shares in 1895 "at likely one cent per share." (Compl. ¶ 56.) However, fair market value is determined at the time of the transaction, not retroactively. See 29 U.S.C. § 1002(18)(B).

### d.      Count Four – Co-Fiduciary Liability

Finally, all Defendants seek dismissal on Count Four, Plaintiffs' co-fiduciary liability claim. Where the substantive allegations of a primary fiduciary breach fail, the co-fiduciary breach claims cannot succeed. *See Keegan v. Steamfitters Local No. 420 Pension Fund,* 174 F. Supp. 2d 332, 341 (E.D. Pa. 2001) ("Absent any breach of fiduciary duty, the [plan] trustees . . . do not meet the ERISA requirements for finding liability for a breach by a co-fiduciary.")

Plaintiffs' co-fiduciary duty claim as to Brozen is dismissed because this Court found no underlying breach of fiduciary duty by the Asbury Defendants. *See In re RCN Litig.,* 2006 WL 753149, at *7 (quoting 29 U.S.C. § 1105(c)(2)) ("following [ ] an allocation of fiduciary duties, the named fiduciary 'shall not be liable for an act or omission of such person in carrying out such responsibility' unless the allocation itself was a fiduciary breach or the named fiduciary committed a co-fiduciary breach as to the allocated responsibilities.").

Regarding the co-fiduciary liability claim against the Asbury Defendants, a defendant may have co-fiduciary liability if they have "knowledge of a breach by such other fiduciary, unless [they] make[ ] reasonable efforts under the circumstances to remedy the breach,." *Perrone v. Johnson & Johnson*, 2020 WL 2060324, No. 19-00923 at *14 (D.N.J. 2020) (quoting 29 U.S.C. § 1105.) Plaintiffs allege that the Asbury Defendants knew Brozen violated his duty of prudence by approving the Mill Rock Transaction for below fair value. (ECF No. 27 at 25-26; Compl. ¶ 91.) The Asbury Defendants rely on *In re RCN Litig.* to support a finding of no co-fiduciary liability. (ECF No. 18 at 25.) The court in *In re RCN Litig.* found no co-fiduciary liability where plaintiffs' only allegations for such liability stemmed from defendant's ability to hire and fire the co-fiduciary. *See In RCN Litig.,* 2006 WL 753149 at *7. The instant case is distinguishable because

the Plaintiffs allege that the Asbury Defendants knew Brozen approved the Mill Rock Transaction for below fair value and failed to intervene. (ECF No. 27 at 25.)[17]

The remaining cases cited by the Asbury Defendants argue the co-fiduciary claim must be dismissed because the Plaintiffs failed to allege a breach of fiduciary duty against Brozen. (ECF No. 18 at 25.) However, as discussed in Section Count 1- Breach of Fiduciary Duty of Loyalty and Prudence, see III.C.a.ii, supra, Plaintiffs adequately alleged a claim for breach of fiduciary duty against Brozen, and thus the co-fiduciary claim against the Asbury Defendants cannot be dismissed on these grounds. (*See* ECF No. 18 at 25 quoting (*Perrone*, 2020 WL 2060324 at *19 n. 12.))   As such, on a motion to dismiss posture, Plaintiffs' Complaint sets forth sufficient factual allegations to sustain a claim for co-fiduciary liability against the Asbury Defendants. Count Four as to the Asbury Defendants remains. Count Four as to Brozen is dismissed.

---

[17] The Court notes the distinction between Plaintiffs co-fiduciary liability claim and their failure-to-monitor claim against the Asbury Defendants. Plaintiffs did not allege facts claiming the Asbury Defendants failed to review Brozen's performance at reasonable intervals, as required to establish a failure-to-monitor claim. *See Seibert* 2023 WL 5035026, at *12. Regarding a co-fiduciary liability claim, a plaintiff must allege defendant knew of a co-fiduciary's breach.

## **CONCLUSION**

For the reasons set forth above, Brozen's Motion to Dismiss is **GRANTED** as to Counts Two, Three, and Four and **DENIED** as to Count One, (ECF No. 22), the Asbury Defendants' Motion to Dismiss is **GRANTED** as to Counts One, Two, and Three and **DENIED** as to Count Four, (ECF No. 18), Plaintiff's Motion to Strike is **GRANTED** as to the Fairness Opinion and **DENIED** as to the Trust Agreement and Fiduciary Services Agreements, and the Complaint is **DISMISSED** without prejudice to the extent specified above. An appropriate Order follows.

_____
ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: August 30th, 2024